## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date:  October 16, 2013 |
| | ) | Hearing Time:  9:30 a.m. |
| | ) | |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 16, 2013 at 9:30 a.m., we shall appear before the Honorable Eugene R. Wedoff of the United States Bankruptcy Court, Northern District of Illinois, in Courtroom 744 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF THE DEBTOR FOR THE ENTRY OF AN ORDER: (A) APPROVING THE SALE PROCESS, BIDDING PROCEDURES, BID PROTECTION, BREAK-UP FEE AND FORM OF ASSET PURCHASE AGREEMENT FOR THE SALE OF CERTAIN ASSETS OF THE ESTATE; (B) SCHEDULING A PUBLIC AUCTION AND AUTHORIZING THE SALE OF THE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**, a copy of which is hereby served upon you.

HOWARD L ADELMAN, ESQ. (ARDC# 0015458)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Keywell L.L.C.**

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certify that true and correct copies of this notice and motion were served upon the parties listed on the service list attached hereto via ECF, U.S. Mail, e-mail and/or overnight delivery as indicated below, on September 26, 2013.

By:  /s/ Howard L. Adelman

## SERVICE LIST
## SALE MOTION

*Via ECF*

**Patrick S Layng**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604

NewKey Group, LLC
NewKey Group II, LLC
c/o Gordon E. Gouveia, Esq.
Steven B. Towbin, Esq.
Shaw Fishman Glantz & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654

Mark W. Page, Esq.
Kelley Drye & Warren LLP
333 West Wacker Drive
Chicago, IL 60606

Matthew T. Gensburg, Esq.
Nancy A. Peterman, Esq.
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601

*Additional Notice Parties –*
*Via First Class Mail*

Craig A. Wolfe, Esq.
Benjamin D. Feder, Esq.
Kelly Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Kay E. Tucker, Esq.
Tucker Law Firm
9440 Santa Monica Blvd., Suite 504
Beverly Hills, CA 90210

*Secured Creditors –*
*Via First Class Mail*

AFCO Premium Credit LLC
4501 College Boulevard
Suite 320
Leakwood, KS 66211

Banc of America Leasing &
Capital, LLC/B
125 Dupont Drive
Providence, RI 02907

Midwest Railcar Corporation
4949 Autumn Oaks Drive
Suite B
Maryville, IL 62062

Millis Industries Inc.
Attn: Robert Valchuis
1372 Main Street
Millis, MA 02054

PNC Bank, NA
One Financial Parkway
Kalamazoo, MI 49009

PNC Equipment Finance, LLC
4100 West 150th Street
Cleveland, OH 44135

Wells Fargo Equipment Finance, Inc.
1801 Parkview Drive
Shoreview, MN 55125

Wells Fargo Equipment Finance, Inc.
300 Tri-State International
Suite 400
Lincolnshire, IL 60069

*__20 Largest Unsecured Creditors –__*
*__Via First Class Mail__*

A&L Iron and Metal, Inc.
Attn: Bret Bandt
2000 Milbocker Road
Gaylord, MI 49735

AIM Ontario
Attn: Serge Thibault
75 Windermere Road
Hamilton, ON L8H 3Y2
Canada

Caledonian Alloys Greenville
Attn: Sheila Biblis
99 Crestview Drive Extension
Transfer, PA 16154

Cinelli I & M Co.
Attn: Dave Barteck
290 Secaucus Road
Secaucus, NJ 70940

CMC Recycling
Attn: Donna Humphrey
6565 N. MacArthur Blvd., #800
Irving, TX 75039

Columbus Metal Industries
Attn: Sam Jacobs
3440 15th Street East
Columbus, NE 68601

DH Griffin Wrecking Co., Inc.
Attn: David Griffin
4716 Hilltop Road
Greensboro, NC 27407

FPT Cleveland
Attn: Greg Brock
8550 Aetna Road
Cleveland, OH 44105

Franklin Iron & Metal Corp.
Attn: Greg Clouse
1939 E. First Street
Dayton, OH 45403

John Zubick Limited
Attn: Matt Zubick
105 Clark Side Road
London, ON N5W 5C9
Canada

Joseph Freedman Co.
Attn: Ernie Gagnon
115 Stevens Street
Springfield, MA 11040

Loeb Metal Recycling Co.
Attn: John Morgan
Div. Loeb Industries Inc.
1111 S. Tenth Street, PO Box 229
Watertown, WI 53094

Mervis Industries
d/b/a Sol Tick & Company
Attn: Tom Faiender
1180 N. 22nd Street
Decatur, IL 62521

Newell Recycling of Atlanta Inc.
Attn: Tim Smallwood
1359 Central Avenue
East Point, GA 30344

Omnisource Corporation
Attn: Joseph Castellana
Stainless Steel and Allow Div.
7575 W. Jefferson Blvd.
Fort Wayne, IN 46804

SA Recycling
Attn: Bruce Kiezler
12428 Center Avenue
Southgate, CA 90280

Schnitzer Steel
Attn: Chris Yocom
906 Adamson Street
Atlanta, GA 30315

Schupan & Sons
Attn: Marc Rose
2619 Miller Road
Kalamozoo, MI 49001

SOS Metals Inc.
Attn: Sandy Shadrow
201 E. Gardena Blvd.
Gardena, CA 90248

Terrapin Metals Recycling LLC
Attn: Greg Rochlin
7600 Rolling Mill Road
Baltimore, MD 21224

### *Executory Contract Holders – Via First Class Mail*

Community Dev. Association LLC
2632 S. Work Street, Suite 24
Falconer, NY 14733

CJMJ, LLC
PO Box 23226
Charlotte, NC 28227

Carolina Industrial Truck Inc.
PO Box 411391
Charlotte, NC 28241

RMMC, Inc.
c/o Ty-Par Realty, Inc.
PO Box 748
Monroe, NC 28110

KDB, LLC
30800 Telegraph Road
Suite 3800
Bingham Farms, MI 48075

Integrity Networks
800 Rockmead
Suite 200
Kingwood, TX 77339

Strate Welding Supply Co.
PO Box 570
Buffalo, NY 14207

A-Verdi LLC
14150 Route 31
Savannah, NY 13146

Setco
PO Box 809
Idabel, OK 74745

T.L. Ashford & Associates
626 Buttermilk Pike
Crescent Springs, KY 41017

Computer Keys
21929 Mikah Road
Woodway, WA 98020

International Business Machines
Corporation (IBM)
PO Box 643600
Pittsburgh, PA 15264

Cleo Communications
PO Box 15835
Loves Park, IL 61132

IBM – VAR: G/S Software Solutions
3290 W. Big Beaver
Troy, MI 48075

IBM – VAR: Computer Alliance Inc.
33900 W. 8 Mile Road
Suite 141
Farmington Hills, MI 48335

Prodata Computer Services Inc.
2809 S. 160th Street
Suite 401
Omaha, NE  68130

Vision Solutions Inc.
15300 Barranca Parkway
Irvine, CA  92618

Hawkeye Information Systems Inc.
PO Box 2167
Ft. Collins, CO  80522

Bytware
6533 Flying Cloud Drive
Suite 200
Eden Prairie, MN  55344

Jamestown Industrial Trucks, Inc.
PO Box 613
Frewsburg, NY  14738

Goodman Services, Inc.
PO Box 5232
New York, NY  10087

Key Fasteners, Inc.
525 Key Way
Berne, IN  46711

Comcast Phone LLC
16333 Collections Center Drive
Chicago, IL  60693

Comcast
PO Box 3005
Southeastern, PA  19398

Audubon Metals L.L.C.
3055 Ohio Drive
Henderson, KY  42420

Robert A. Soriano, Esq.
Greenberg Traurig, P.A.
625 East Twiggs Street
Suite 100
Tampa, FL  33602

District Director of IRS
(Illinois District)
230 S. Dearborn Street
Room 2890
Chicago, IL  60604

***Taxing Authorities –
Via First Class Mail***

Alabama Department of Revenue
Property Tax Division, Public Utility Se
PO Box 327210
Montgomery, AL 36132-7210

Arkansas Department of Finance &
Admin
Miscellaneous Tax Section
PO Box 896 – Room 2340
Little Rock, AR 72203-0896

Bureau of Bus Trust Fund Taxes
PO Box 280904
Harrisburg, PA 17128-0904

California Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0601

City of Monroe
PO Box 69
Monroe, NC 28111-0069

City of Southfield
Irv M. Lowenberg, Treasurer
PO Box 369
Southfield, MI 48037-0369

City of Wayne
Treasurer's Office
3355 South Wayne Rd.
Wayne, MI 48184

Coleman A. Young, Municipal Center
2 Woodward Ave.,
Suite 120
Detroit, MI 48226

Comptroller of Maryland
Remittance Processing Center
Annapolis, MD 21411-0002

Comptroller of Maryland
Revenue Administration Division
110 Carroll Street
Annapolis, MD 21411-0001

Confederated Tribes of the Umatilla
Indian Reservation
73239 Confederated Way,
PO Box 638
Pendleton, OR 97801

Cook County Treasurer
PO Box 4488
Carol Stream, IL 60197-4488

Department of the Treasury
Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101

Dept. of Revenue Headquarters
1800 Century Center Blvd.
N.E. Atlanta, GA 30345

E.B.R. Sheriff
Sheriff and Tax Collector
PO Box 91285
Baton Rouge, LA 70821-9285

Employment Development Dept.
PO Box 826880
Sacramento, CA 94280-0001

Frewsburg Central School
PO Box 690
Frewsburg, NY 14738

Fulton County Tax Commissioner
PO Box 105052
Atlanta, GA 30348-5052

Georgia Department of Revenue
Public Utility Section
4245 International Pkwy., Suite A
Hapeville, GA 30354-3918

Glen B Gainer III, WV State Auditor
WV Virginia State Auditor's Office,
Public Building 1, Room W-118,
1900 Kanawha Blvd.,
Charleston, WV 25305-0230

Idaho State Tax Commission
County Support/Property Appraisal
PO Box 36
Boise, ID 83722-0320

IL Department of Employment Security
Benefit Payment
Control Division
PO Box 4385
Chicago, IL 60680

IL Student Assistance Commission
Bankruptcy Department
1755 Lake Cook Road
Deerfield, IL 60015

Illinois Department of Revenue
100 W. Randolph
Bankruptcy Section, Level 7-425
Chicago, IL 60601

Illinois Department of Revenue
Springfield, IL 62726-0001

IN Department of Revenue
PO Box 7087
Indianapolis, IN 46207-7087

Indiana Department of Revenue
100 N. Senate Ave., MS112-Cashier
Indianapolis, IN 46204-2253

Jordan Tax Service
102 Rahway Rd.
McMurray, PA 15317
Kansas Department of Revenue
915 SW Harrison Street
Topeka, KS 66625-0002

Kentucky State Treasurer
Kentucky Department of Revenue
Frankfort, KY 40602

LaFarge North America
Division of LaFarge Corporation
10325 State Route 43
Streetsboro, OH 44241

Los Angeles County Tax Collector
PO Box 54018
Los Angeles, CA 90054-0018

Los Angeles County Tax Collector
PO Box 54027
Los Angeles, CA 90054-0027

MI Department of Treasury
Lansing, MI 48922

Michigan Department of Treasury
Tax Policy Division
Attn: Litigation Liaison, 2nd Floor
430 West Allegan Street
Lansing, MI 48922

Mississippi State Tax Commission
Valuation & Exemption Bureau
PO Box 1033
Jackson, MS 39215-0960

Missouri Department of Revenue
PO Box 453
Jefferson City, MO 65105-0453

Missouri Department of Revenue
PO Box 3375
Jefferson City, MO 65105-3375

Montana Department of Revenue
PO Box 5805
Helena, MT 59604-5805
NC Department of Revenue
PO Box 25000
Raleigh, NC 27640-0640

New York State Department of Taxation
Processing Center
PO Box 4123
Binghamton, NY 13902-4123

North Carolina Department of Revenue
PO Box 25000
Raleigh, NC 27640-0645

NYS LLC/LLPFee
State Processing Center
 PO Box 22076
Albany, NY 12201-2076

Ohio Treasurer of State
Ohio Department of Transportation
PO Box 182101
Columbus, OH 43218-2101

Oregon Department of Revenue
PO Box 14725
Salem, OR 97309-5018

Pennsylvania Department of Revenue
Bureau of Corporate Taxes
Department 280437
Harrisburg, PA 17128-0427

Pennsylvania Department of Revenue
Bureau of Individual Taxes
Department 280502
Harrisburg, PA 17128-0502

Rail Car Tax Expense Fund C/O
Indurante
1930 Village Center Circle
Suite 3 PMB 442
Las Vegas, NV 89134

South Carolina Department of Revenue
Property Division
PO Box 125
Columbia, SC 29214-0030

State of Georgia
Department of Revenue Processing
PO Box 740397
Atlanta, GA 30374-0397

State of Maryland
Dept. of Assessments and Taxation,
Person
301 West Preston Street
Baltimore, MD 21201-2395

State of Michigan
Michigan Department of Treasury,
Dept. 78
PO Box 78000
Detroit, MI 48277-0889

State of Michigan – Public Utility Tax
Michigan Department of Treasury
PO Box 30471
Lansing, MI 48909-7971

State of Nebraska
Department of Revenue,
Property Assessment
301 Centennial Mall South,
PO Box 98919
Lincoln, NE 68509-8919

State of New Jersey
Division of Taxation
PO Box 642
Trenton, NJ 08646-0642

State of NJ, Division of Taxation
Revenue Procession Center
PO Box 111
Trenton, NJ 08645-0111

State Processing Center
PO Box 15555
Albany, NY 12212-5555

Town of Carroll
PO Box 497
Frewsburg, NY 14738

Union County
PO Box 580365
Charlotte, NC 28258-0365

US Environmental Protection Agency
Attn: Richard J. Nagle
US EPA Region 5
Mail Code: C-14J
Chicago, IL 60604

Virginia Department of Taxation
Rolling Stock Tax
PO Box 2369
Richmond, VA 23218-2369

Wyoming Department of Revenue
Ad Valorem Tax Division
122 West 25th Street
Cheyenne, WY 82002-0110

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date:  October 16, 2013 |
| | ) | Hearing Time:  9:30 a.m. |
| | ) | |

**MOTION OF THE DEBTOR FOR THE ENTRY OF AN ORDER:
(A) APPROVING THE SALE PROCESS, BIDDING PROCEDURES, BID
PROTECTION, BREAK-UP FEE AND FORM OF ASSET PURCHASE AGREEMENT
FOR THE SALE OF CERTAIN ASSETS OF THE ESTATE; (B) SCHEDULING A
PUBLIC AUCTION AND AUTHORIZING THE SALE OF THE ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (C)
AUTHORIZING THE ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

NOW COMES, Keywell L.L.C. (the "**Debtor**"), an Illinois limited liability company,

debtor and debtor in possession herein, by and through its undersigned counsel, and hereby

requests the entry of order: (A) approving the sale process, bidding procedures, bid protection,

break-up fee and form of asset purchase agreement between the Debtor and Cronimet (as defined

below) for certain assets of the estate; (B) scheduling a public auction and authorizing the sale of

the assets of the Debtor pursuant thereto free and clear of liens, claims, encumbrances and

interests; and (C) authorizing the assumption and assignment of executory contracts and

unexpired leases, pursuant to Sections 363 and 365 of the Bankruptcy Code and Rules 2002,

6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Motion**"). In support of the

Motion, the Debtor respectfully states as follows:

## I.    FACTUAL BACKGROUND

### A.    The Debtor's Chapter 11 Case

1.    On September 24, 2013 (the "**Petition Date**"), the Debtor filed a voluntary

petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et*

*seq.* (the "**Code**").  Since the Petition Date, the Debtor has remained in possession of its assets

and has continued to operate its business as a debtor in possession in accordance with 11 U.S.C.

§§ 1107 and 1108 in the above-captioned case (the "**Chapter 11 Case**").

2.    There has not been a trustee or a committee of unsecured creditors appointed in

the Chapter 11 Case.

3.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

4.    The statutory predicates for the relief requested herein are Sections 363 and 365

of the Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure

Bankruptcy Rule (the "**Bankruptcy Rules**").

5.    The nature of the Debtor's business and the factual background relating to the

Debtor's commencement of this Chapter 11 Case is set forth in detail in the *Certification and*

*Statement of J. Mark Lozier in Support of Chapter 11 Petition and First-Day Motions* [Docket

Entry No. 6] filed on the Petition Date and incorporated herein by reference.

### B.    Chapter 11 Objectives

6.    After analyzing the ramifications of filing the Chapter 11 Case, and alternatives

thereto, the Debtor believes the Chapter 11 Case will afford the Debtor the best means of

preserving its enterprise value while securing a purchaser that will ensure a maximum recovery

for creditors of the Debtor's estate. The Chapter 11 Case stands to protect the claims and interests of the Debtor's customers, creditors, employees and other parties in interest.

7.     The Debtor has determined that its ability to obtain the necessary long term funding needed to support an internal plan of reorganization will not likely be forthcoming. The Debtor believes that to undertake such effort will seriously impair the value of the assets in its estate and delay and diminish any ultimate distribution to the creditors herein. As a result, the Debtor has concluded that it is advisable to immediately entertain offers to acquire a substantial portion or substantially all of the Debtor's assets as a going concern on an expedited basis. The Debtor believes that any significant delay in embarking upon a sale process is likely to have a material adverse effect on the value of the assets being offered for sale, given what will be the ongoing administrative costs of the Chapter 11 Case, a continuing decline in sales volumes and the resulting limitations on the cash flow needed to continue operations.

**C.     The Assets Offered for Sale**

8.     The property of the Debtor's estate which is being offered for sale hereunder includes a substantial portion of the assets used in the operation of the Debtor's business, and are considered part of and necessary for the continued conduct of the business (collectively, the **"Transferred Assets"**), and can be summarized as follows:

a.     certain contracts and intellectual property licenses, to the extent assignable in accordance with applicable bankruptcy law;

b.     certain intellectual property, to the extent assignable in accordance with applicable bankruptcy law;

c.     rail cars;

d.     certain furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones and other tangible personal property;

e.     the Debtor's owned real property in Monroe, NC (1163 Curtis Street);

3

      f.     the Debtor's real property leases for; Falconer, New York; Indian Trail, North Carolina and Monroe, North Carolina (1157 Curtis Street); and Southfield, Michigan;

      g.     causes of action related to the Transferred Assets or Assumed Liabilities (as defined below), but excluding any avoidance actions;

      h.     certain prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set off, rights of recoupment, deposits, charges, sums and fees;

      i.     certain permits used by the Debtor in the operation of the Transferred Assets, to the extent assignable in accordance with applicable law;

      j.     rights of the Debtor under warranties, indemnities and all similar rights against third parties to the extent related to any Transferred Assets;

      k.     insurance benefits, including rights and proceeds, to the extent related specifically to the Transferred Assets or the Assumed Liabilities;

      l.     the Debtor's books and records related specifically to the Transferred Assets; and

      m.     the Debtor's goodwill and going concern value associated with the Transferred Assets.

9.     The listings of the Transferred Assets are voluminous and are detailed in Section 2.01 of the Cronimet APA (as defined below) and the Disclosure Schedule related thereto.

**D.**     **Prepetition Indebtedness**

10.     As of the Petition Date, the Debtor was indebted to the following secured lenders:

      a.     NewKey Group, LLC ("**NewKey**").

      b.     NewKey Group II, LLC ("**NewKey II**," and together with NewKey, the "**Lenders**").

11.     As of September 22, 2013, the outstanding balance owed by the Debtor to NewKey under the parties' loan documents was $4,538,177.23, plus attorneys' fees, with interest continuing to accrue at a per diem rate of $2,333.33. As of September 22, 2013, the outstanding balance owed by the Debtor to NewKey II under the parties' loan documents was $5,920,000.00, plus attorneys' fees, with interest continuing to accrue at a per diem rate of $3,333.33.

12.     In addition to the secured indebtedness with the Lenders, the Debtor has the following other secured indebtedness:

| SECURED CREDITOR | COLLATERAL |
| --- | --- |
| PNC Bank, N.A. | 114 rail cars |
| PNC Equipment Finance LLC | Hydraulic baler, vapor degreaser and titanium cobbler |
| Wells Fargo Equipment Finance, Inc. | Two lift trucks |
| Banc of America Leasing & Capital, LLC | 93 rail cars |

13.     The Debtor has a network of more than 1,000 regular suppliers, including regional and local recycling yards, industrial plants, governmental agencies, and large mills.  All told, the Debtor currently has approximately 550 trade and other creditors with general unsecured claims totaling approximately $28,000,000, subject to the resolution of claims for leases and executory contracts.

### E.     Cash Collateral

14.     On September 26, 2013, the Debtor will present its motion requesting the entry of an order authorizing the Debtor to use the Lenders' cash collateral for the operation of the Debtor's business on an interim and final basis (the "**Cash Collateral**") to provide necessary liquidity during the sale period.

### F.     The Sale Process and Maximizing Going-Concern Values

15.     As noted above, the Debtor has been unable to obtain alternative sources of working capital from conventional lenders or otherwise attract investors in its present condition. Without such capital, and given the competition in the Debtor's industry, the Debtor is faced with the likely and imminent erosion of its valuable customer base and the almost certain

5

deterioration of the going-concern value of its business and the Transferred Assets. Accordingly, the Debtor commenced the sale process as the optimal means for achieving potentially meaningful distributions to the creditors of the estate.

16.     In order to expedite and maximize its assets sales efforts for the benefit of all of the creditors and other interested parties in this Chapter 11 Case, in connection with this Motion, the Debtor will file an application requesting authorization to retain the investment banking firm of Eureka Capital Markets, LLC (**"Eureka"**) to continue the marketing efforts it had commenced prior to the Petition Date for the solicitation of offers to purchase the Transferred Assets. The Debtor has selected Eureka to serve as its investment banker because Eureka has extensive experience in the metals and metal service industry and experience in Chapter 11 bankruptcy proceedings and related matters. This selection also takes advantage of the efficiencies resulting from Eureka having provided investment banking services on behalf of the Debtor prior to the Petition Date.

17.     Eureka's marketing approach will include, as it did prior to the Petition Date, soliciting interest from qualified financial and strategic purchasers. The Debtor believes the continued marketing efforts of Eureka will greatly assist in a successful and prompt resolution of this Chapter 11 Case for the benefit of all creditors and parties in interest. Given the nature of the Debtor's business, limited funding and fragile customer relationships, the sooner the Transferred Assets can be sold, the better.

## II.     ASSET PURCHASE AGREEMENT FOR STALKING-HORSE BIDDER

18.     Immediately prior to the commencement of the Chapter 11 Case, but subject to the entry of orders of this Court as requested herein, the Debtor executed: (a) that certain Asset Purchase Agreement between Cronimet Holdings, Inc., a Delaware corporation, the Debtor, and

6

J. Mark Lozier and Joel D. Tauber, principals of the Debtor (the "**Principals**"); and (b) that

certain Rail Car Asset Purchase Agreement between Cronimet Corporation, a Pennsylvania

corporation, the Debtor, and the Principals, both of which include a Term Sheet for Contingent

Payment Agreement pursuant to which the Debtor and Cronimet agreed to enter into a

Contingent Payment Agreement (all taken together, the "**Cronimet APA**," copies of which are

attached hereto as <u>Exhibit A</u> and made a part hereof ).

  19. In consultation with Eureka, the Debtor evaluated the terms and benefits of the

Cronimet APA, as well as the benefits of other alternatives.  In its business judgment, the Debtor

has concluded that the Cronimet APA is the highest and best offer to purchase the Transferred

Assets received to date, and provides the best opportunity to initiate a sale process that will

maximize creditor recoveries (both in terms of purchase price and eliminating further operational

losses). The Debtor will continue marketing the Transferred Assets and its business in an effort

to solicit further interest from both strategic and financial buyers pursuant to the bidding process

proposed herein.

  20. The Cronimet APA is subject to higher and better offers and is conditioned in part

upon Cronimet receiving the bid protections provided therein.

  21. The Cronimet APA may be summarized as follows:

  a. <u>Purchase of Transferred Assets</u>. Cronimet proposes to purchase all of the Debtor's

right, title and interest in and to all of the Transferred Assets which are more fully defined and/or

described in the Cronimet APA.

  b. <u>Excluded Assets</u>.  As set forth in the Cronimet APA, the Transferred Assets

expressly exclude specific assets of the Debtor, including the following (collectively, and as

provided in full in Section 2.02 of the Cronimet APA, the "**Excluded Assets**"): (i) all cash and

7

cash equivalents; (ii) all accounts or notes receivable; (iii) all inventory, finished goods, raw

materials, work in progress, packaging, supplies, parts and other inventories; (iv) contracts and

intellectual property licenses to the extent not assignable or included as part of the Transferred

Assets; (v) certain intellectual property to the extent not assignable or included as part of the

Transferred Assets; (vi) all prepaid expenses, credits, advance payments, claims, security,

refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums and

fees not included as part of the Transferred Assets; (vii) the corporate seals, organizational

documents, minute books, stock books, tax returns, books of account or other records having to

do with the corporate organization of the Debtor; (viii) all benefit plans;  (ix) any avoidance

actions; and (x) any assets not included in the Transferred Assets.

  c. <u>Purchase Price</u>. The consideration for the Transferred Assets (**"Purchase Price"**)

shall be a cash payment of approximately $12,500,000 plus the value of the Contingent

Payments, calculated as 30% of EBITDA generated solely from the toll processing business

performed for Allegheny Technologies Inc., and its subsidiaries and affiliates for each of the four

years immediately following the closing, inclusive of any applicable Cure Amounts (as defined

below) and the assumption of certain liabilities described in Section 2.03 of the Cronimet APA

(collectively, the **"Assumed Liabilities"**).

  d. <u>Deposit</u>.  Cronimet has remitted an earnest-money deposit in the amount of

$1,000,000, which is being held pursuant to the terms of an escrow agreement with PNC Bank,

N.A. (the **"Deposit"**).  In the event that Cronimet defaults under the Cronimet APA, as more

fully described therein, the Deposit shall be available to the Debtor in full or in part to the extent

of any damages suffered by the Debtor on account of Cronimet's default.

  e. <u>Liabilities Assumed and Not Assumed</u>. In addition to the Assumed Liabilities,

Cronimet shall assume the Debtor's obligations under the "Assigned Contracts" (as more

8

particularly described in Section 2.01(a) of the Cronimet APA) arising after the closing and the

Debtor's liabilities with respect to the business and the Transferred Assets arising after closing.

Moreover, various "Excluded Liabilities," which are not being assumed by Cronimet, are

specifically set forth in Section 2.04 of the Cronimet APA.

      f.    <u>Representations and Warranties</u>. The Cronimet APA contains such

representations and warranties of the Debtor and Cronimet as are customary for transactions of

this type and size.  Most of the representations and warranties shall expire one hundred (120)

days from closing.  Except as expressly set forth in the Cronimet APA, the Transferred Assets

are being sold "AS IS, WHERE IS".

      g.    <u>Conditions of Closing / Termination Events</u>. In light of the urgency of the

financial issues facing the Debtor, the Cronimet APA requires the Debtor to: (i) file this Motion

within three (3) business days of the Petition Date; (ii) obtain the entry of the Bidding Procedures

Order (as defined below) within twenty-five (25) days of the Petition Date; (iii) conduct the

"Auction" following all requisite and appropriate notice to the creditors and other interested

parties in the Chapter 11 Case, and such other parties as are deemed necessary; (iv) obtain the

entry of the Sale Order (as defined below) within seventy-five (75) days of the Petition Date; and

(v) consummate the transactions contemplated in the Cronimet APA (presuming it is the winning

bid at the Auction and approved by this Court pursuant to the terms and conditions of the Sale

Order) as expeditiously as possible following entry of the Sale Order, unless otherwise agreed in

writing by the parties. In addition thereto, the Cronimet APA contains such other closing

conditions and termination events that are customary for transactions of this type and size.

      h.    <u>Insider and Employee Matters</u>. The Cronimet APA provides that Cronimet is

under no obligation to offer employment to any or all of the Debtor's employees, including its

9

management or other "insiders" as that term is defined by Section 101 of the Code. In the event

Cronimet elects to offer employment to any or all of the Debtor's employees, including its

management or other insiders, Cronimet will disclose to the Court the material terms and

conditions of any contemplated employment, consulting and/or other agreement.

     i.     Executory Contracts. The Cronimet APA sets forth the "Assigned Contracts"

which Cronimet requires to be assumed and assigned at closing pursuant to Section 365 of the

Code (the **"Cronimet Executory Contracts"**). Any Cure Amounts are to be paid by Cronimet

as part of the Purchase Price.

     j.     Bid Protection and Break-Up Fee. In consideration of Cronimet submitting the

Cronimet APA and serving as the stalking horse for purposes of further competitive bidding for

the Transferred Assets, and as more fully described therein, the Cronimet APA requires the

Court's approval of: (i) a "Break-Up Fee" payable to Cronimet equal to $500,000 in the event

that the Court approves a higher and better offer as a result of the Auction, and such competing

bid closes; and (ii) bid protection in the additional amount of $50,000, such that the first

competing qualifying bid that the Debtor may consider must be at least $13,050,000.

## III.    PROPOSED SALE PROCESS, BIDDING PROCEDURES, BID PROTECTION AND BREAK-UP FEE, AND FORM OF ASSET PURCHASE AGREEMENT

     22.     The Debtor requests the entry of an order approving the entire sale process as set

forth in this Motion (**"Bidding Process"**), including the proposed bidding procedures (**"Bidding**

**Procedures"**), bid protection, break-up fee, and form of a proposed asset purchase agreement

substantially similar in form to the Cronimet APA attached hereto as Exhibit A (**"Competing**

**Bid Asset Purchase Agreement"**) for the contemplated sale of the Transferred Assets set forth

herein. A copy of the proposed Bidding Procedures is attached hereto as Exhibit B and made a

part hereof.

23.    The Debtor also requests the entry of an order setting an auction date ("**Auction**") and sale hearing ("**Sale Hearing**") to approve the sale of the Transferred Assets pursuant to the Bidding Process (the "**Bidding Procedures Order**").  The Debtor requests that at the Sale Hearing, the Court enter an order, *inter alia*: (a) authorizing the Debtor to sell the Transferred Assets free and clear of any and all liens, claims, encumbrances and interests in accordance with the highest and best offer(s) submitted at the Auction pursuant to the Bidding Process (the "**Prevailing Bid**") and approved by this Court at the Sale Hearing; (b) enjoining any and all holders of Interests (as defined below) from pursuing said Interests against the purchaser; and (c) authorizing the Debtor to assume and assign the Executory Contracts identified in the Prevailing Bid.

24.    In order to facilitate the Bidding Process, the Debtor, in consultation with Eureka and Cronimet, has developed the Bidding Procedures for use in connection with the sale of the Transferred Assets. In order to expedite the comparison of competing bids, the Bidding Procedures require that any qualifying and competing bids utilize a form of asset purchase agreement substantially similar to the form of the Cronimet APA.

25.    As discussed above, exigent circumstances exist warranting the sale of the Transferred Assets as a going concern on an expedited basis.  A sale of the Transferred Assets pursuant to Section 363 of the Code appears to be the best mechanism to maximize the value of the Debtor's estate and the distribution to creditors in this Chapter 11 Case.  As prospective purchasers are likely to pay the highest purchase price for the Transferred Assets if they can benefit from the continuation of the Debtor's highly valuable customer relationships and pending and upcoming orders, it is therefore essential to promptly offer the Transferred Assets for sale as a going concern.

A.      **The Bidding Procedures**

26.     The Debtor proposes a sale process to be completed subject to and in accordance

with the following Bid Procedures:

a.      Potential Bidder.  Each person wishing to participate in the Bidding Process

(**"Potential Bidder(s)"**) must deliver a satisfactory confidentiality agreement to Eureka (which

has set up a secured virtual data room) prior to gaining any access to any proprietary information

for due diligence purposes. The form of confidentiality agreement shall be substantially similar

to that previously executed by Cronimet.

b.      Due Diligence and Bid Deadline. Potential Bidders shall be authorized to perform

due diligence with respect to the acquisition of the Transferred Assets at their sole cost and

expense to be completed on or before the close of business on November 20, 2013 (**"Bid

Deadline"**).

c.      Qualifying Bids. For purposes of the Bidding Process, a "Qualifying Offer" shall

mean a bona fide, binding, and duly executed written offer(s) to purchase at least all of the

Transferred Assets (along with any Excluded Assets the Potential Bidder desires to acquire)

received on or before the Bid Deadline, which is: (i) in the form and substance substantially

similar to the Cronimet APA; (ii) irrevocable until the conclusion of the Sale Hearing, subject

only to the provisions concerning the Prevailing Bid and the Back-Up Bid (as defined below);

(iii) accompanied by a cashiers' check or wire transfer to be held as an earnest-money deposit by

the Debtor's counsel in an amount equal to or greater than the Deposit under the Cronimet APA;

(iv) accompanied by such evidence reasonably acceptable to the Debtor demonstrating such

bidder's ability to close the proposed transaction and as otherwise described in the Bidding

Procedures; and (v) served upon the Debtor, its counsel, counsel to the Committee (as defined

below), and Eureka.  All Qualifying Bids must disclose the material terms and conditions of any

contemplated employment, consulting and/or other agreement with any former or current insider

of the Debtor.

d.      <u>Determination of Qualifying Bid</u>.  The Debtor shall, within one (1) business day

of receipt of any competing bid, inform the Lenders, any appointed committee of unsecured

creditors (the "**Committee**"), and Cronimet whether such competing bid(s) is a Qualifying Bid.

The Debtor will promptly so notify the party submitting same (each, a **"Qualifying Bidder"**).

Notwithstanding anything herein to the contrary: (i) all bids submitted prior to the Bid Deadline

as set forth above are subject to the approval of this Court after taking into account the best

interests of the Debtor's estate; and (ii) the Cronimet APA shall constitute a Qualifying Bid.

e.      <u>Auction and Sale Hearing</u>.  The Debtor shall conduct the Auction of the

Transferred Assets on December 2, 2013, at 10:00 a.m. (Central) at the offices of Patzik, Frank

& Samotny Ltd., 150 South Wacker Drive, Suite 1500, Chicago, Illinois 60606, or at such later

time or other place as the Debtor shall advise all Qualifying Bidders.  The Debtor intends to

publish notice of the Auction in one or more of the following: the national edition of *The Wall

Street Journal*, the *Chicago Tribune*, and/or nationally circulated trade publications.  Only

Qualifying Bidders shall be entitled to make a bid at the Auction.  Prior to the Auction, the

Debtor, in consultation with the Committee, the Lenders and Cronimet, shall evaluate each

Qualifying Bid received and select the highest and best offer so submitted, which shall constitute

the opening bid for the Transferred Assets at the Auction.  All bids made at Auction for the

Transferred Assets shall be in increments of at least $50,000.  All such bids shall be made as a

matter of record.  Upon the conclusion of the Auction, the Debtor, in consultation with the

Committee, shall identify the Prevailing Bid and the Back-Up Bid, if any.  At the Sale Hearing,

the Debtor shall present to the Court the Prevailing Bid, and if applicable, the Back-Up Bid, and

request the entry of an approval of such bid(s) subject to the terms thereof in a form reasonably

satisfactory to counsel for the party who submitted the Prevailing Bid (the **"Prevailing Bidder"**)

and/or Back-Up Bid (the **"Back-Up Bidder"**), as the case may be and substantially in the form

attached as Exhibit D to the Cronimet APA (the **"Sale Order"**).   In the event no competing bid

is presented at the Auction, then the Cronimet APA shall be deemed the highest and best offer

for the Transferred Assets and shall constitute the Prevailing Bid.

f.      Back-Up Bid.  The Debtor, after consultation with the Committee, may, but shall

not be obligated to, request that the Court determine at the Sale Hearing the next highest and best

bid for the Transferred Assets other than the Prevailing Bid (the **"Back-Up Bid"**).  In the event

the Prevailing Bidder refuses or is otherwise unable to close in accordance with the terms of the

Prevailing Bid within fifteen (15) business days after the entry of the Sale Order, then, in such

event, the Back-Up Bidder shall be required to consummate the transactions contemplated in the

Back-Up Bid at the purchase price so offered without further act, deed or order of Court within

the following fifteen (15) business days unless the Debtor provides written notice to the Back-Up

Bidder of its intent not to accept the Back-Up Bid (a **"Declination Notice"**).  The Back-Up

Bidder shall be obligated to hold open the Back-Up Bid until the completion of the earlier of: (i)

a closing of the transaction under the Prevailing Bid; or (ii) thirty-five (35) business days after

the entry of the Sale Order.

g.      Assets Sold As Is, Where Is.  The Transferred Assets shall be sold on an "AS IS,

WHERE IS" basis and without representations or warranties of any kind, nature, or description

by the Debtor, its agents or estate except to the extent expressly set forth in the Prevailing Bid,

and if applicable, the Back-Up Bid.  Except as otherwise provided in such agreement(s), all of

14

the Debtor's right, title and interest in and to the Transferred Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the **"Interests"**) in accordance with Section 363 of the Code, with all such valid Interests, including but not limited to any adequate protection liens of the Lenders, to attach to the net proceeds of the sale of the Transferred Assets.

h.    <u>Application or Return of Earnest Money Deposits</u>.   All deposits will be held if practicable in segregated, non-interest-bearing trust accounts maintained by Patzik, Frank & Samotny Ltd., and shall be returned to the Qualifying Bidders as soon as practicable following conclusion of the Sale Hearing except for the deposit of the Prevailing Bidder, which shall be applied to the purchase price, and the deposit received under the Back-Up Bid, which shall continue to be held pending the closing of the Prevailing Bid.  Upon the completion of the closing of the Prevailing Bid, the Debtor shall return the deposit provided by the Back-Up Bidder, and the deposit received in connection with the Prevailing Bid shall be applied to the purchase price thereunder at the closing.  In the event of a closing of a transaction under the Back-Up Bid, the deposit of the Back-Up Bidder shall be applied to the purchase price under the Back-Up Bid at such closing.

i.    <u>Buyer's Inspection Rights</u>.   Each Qualifying Bidder shall be deemed to acknowledge and represent in its Qualifying Bid that it has had an opportunity to inspect and examine the Transferred Assets and to conduct any and all due diligence regarding the Transferred Assets prior to making its offer to the extent it has deemed necessary and appropriate, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Transferred Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties

whatsoever, whether express, implied, by operation of law or otherwise, regarding the

Transferred Assets, or the completeness of any information provided in connection therewith or

the Auction, except as expressly stated in its Qualifying Bid.

   j. <u>Disclosure of Employment of Insiders</u>. If the Prevailing Bidder or the Back-Up

Bidder has reached, or contemplates reaching, an employment, consulting or other agreement

with any former or current insider of the Debtor, the material terms and conditions of any and all

such employment, consulting and/or other agreements shall be disclosed to the Court prior to the

entry of the Sale Order.

   k. <u>Sale Hearing</u>.  The Debtor requests the Sale Hearing take place on December 4,

2013, with the closing of the Prevailing Bid to occur within fifteen (15) business days following

the entry of the Sale Order.

   l. <u>Sale Objections</u>.  Any objection to the sale of the Transferred Assets must be filed

in writing with the Clerk of the United States Bankruptcy Court, Northern District of Illinois,

Eastern Division, on or before 5:00 p.m. (Central time) on November 20, 2013 (the **"Sale**

**Objection Deadline"**), with copies served upon counsel for: (i) the Debtor, Adelman &

Gettleman, Ltd.; (ii) the Office of the United States Trustee; (iii) the Lenders, Shaw Fishman

Glantz & Towbin LLC; (iv) Cronimet, Greenberg Traurig, P.A.; and (v) the Committee, if and

when such Committee is appointed.

   **B.** **<u>The Proposed Bid Protections</u>**

   27. In order to induce Cronimet to expend the time, energy and resources necessary to

submit a "stalking-horse bid," the Debtor has agreed to request that this Court approve bid

protections to Cronimet generally described below and as more fully set forth in the Cronimet

APA.

28.     The Debtor requests that this Court approve the following incentives for

Cronimet's participation in the Bidding Process and submission of the Cronimet APA: (a) the

payment of a break-up fee to Cronimet in an amount equal to $500,000, if a person other than

Cronimet or any of its affiliates submits the winning bid which is approved by this Court and

such competing bid closes (the **"Break-Up Fee"**); and (b) bid protection in the additional

amount of $50,000 such that the Debtor will not seek the approval of any competing offer at the

Sale Hearing which is less than $13,050,000 plus the value of the Contingent Payments (**"Bid**

**Protection"**).

29.     Furthermore, the Debtor proposes that in the event it is obligated to pay the

Break-Up Fee, the fee will be paid at closing out of the Debtor's proceeds from the sale of the

Transferred Assets, provided, however, that to the extent the proceeds are insufficient to pay the

Break-Up Fee in full, the unpaid portion of the fee shall be entitled to treatment as an allowed

administrative priority claim under Sections 503(b)(1)(A) and 507(a)(2) of the Code.

## IV.    ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

30.     As part of the Motion, the Debtor seeks authority to assume and assign the

executory contracts and unexpired leases identified in the Prevailing Bid.  Following the Bid

Deadline but prior to the Auction, the Debtor intends to send notice to all non-Debtor parties to

those executory contracts and unexpired leases which the Debtor may elect to assume and assign

in conjunction with the Asset Sale (the "**Executory Contracts**").  The Executory Contracts

include, but may not be limited to, the Cronimet Executory Contracts.  The Cronimet Executory

Contracts consist of, among others: (a) leases for certain of the Debtor's rail cars where the

Debtor is the lessor; (b) leases of real property on which the Debtor operates its business; (c)

17

certain personal property; and (d) and certain intellectual property licenses, as further detailed on

Schedule 2.01(a) of the Disclosure Schedules to the Cronimet APA.

31.    If a party submitting a Qualifying Bid, in its sole discretion, elects to waive any

condition precedent regarding the Debtor's assumption of the Executory Contracts, such bidder

must have confirmed such waiver(s) in writing on or before the Bid Deadline.

32.    Because of the need to close any transactions as quickly as possible in order to

maximize value, the Debtor proposes the following procedures for assuming and assigning

executory contracts and unexpired leases:

a.    Within two (2) business days of the Bid Deadline, the Debtor will file a notice in

the form attached hereto as Exhibit C (the **"Assumption Notice"**) with the Court and serve same

on each non-Debtor party to the Executory Contracts. The Assumption Notice shall: (i) identify

the Qualifying Bidders; (ii) state the cure amounts that the Debtor believes are necessary to

assume and assign such Executory Contracts pursuant to Section 365 of the Code (the "**Cure**

**Amount(s)**"); and (iii) notify the non-Debtor party that such party's contract or lease may be

assumed and assigned to a purchaser of the Transferred Assets to be identified at the conclusion

of the Auction (the **"Proposed Assumption/Assignment"**).  In addition, if the Debtor identifies

additional Executory Contracts that might be assumed by the Debtor and assigned to the

Prevailing Bidder not set forth in the original Assumption Notice, the Debtor will promptly send

a supplemental notice (a **"Supplemental Assumption Notice"**) to the applicable counterparties

to such additional Executory Contracts.

b.    Unless the non-debtor party to an Executory Contract files an objection (the

"**Cure Amount/Assignment Objection**") to (a) their scheduled Cure Amount and/or (b) the

Proposed Assumption/Assignment on or before the later of (i) 5:00 p.m. (prevailing Central

time) on December 2, 2013, or (ii) to the extent applicable, five (5) business days after service of

the relevant Supplemental Assumption Notice (the "**Cure/Assignment Objection Deadline**")

with the Court Clerk, and serves a copy of the Cure Amount/Assignment Objection upon, so as

to be received no later than the Cure/Assignment Objection Deadline by, the Noticed Parties,

then such non-debtor party (A) will be forever barred from objecting to the Cure Amount and

from asserting any additional cure or other amounts with respect to such Executory Contract and

the Debtor shall be entitled to rely solely upon the Cure Amount, and (B) will be deemed to have

consented to the assumption, assignment and/or transfer of such Executory Contract, and will be

forever barred and estopped from asserting or claiming against the Debtor, the Prevailing Bidder

and/or the Back-Up Bidder, or any other assignee of the relevant Executory Contract that any

additional amounts are due or defaults exist, or conditions to assumption, assignment and/or

transfer must be satisfied, under such Executory Contract.  Notwithstanding the foregoing, each

such non-debtor party shall retain the right to object to the assumption, assignment or transfer of

its Executory Contract based solely on the issue of whether the Prevailing Bidder or Back-Up

Bidder can provide adequate assurance of future performance as required by Section 365 of the

Code ("**Adequate Assurance Objection(s)**").

      c.     If an objection challenges a Cure Amount, the objection must set forth the cure

amount being claimed by the objecting party (the "**Claimed Cure Amount**") with the

appropriate documentation in support thereof.  Upon receipt of a Cure Amount/Assignment

Objection, the Debtor requests that it be authorized, but not directed, to resolve any Cure

Amount/Assignment Objection by mutual agreement with the objecting party to any Executory

Contract without further order of the Court.  In the event that the Debtor and any objecting party

are unable to consensually resolve any Cure Amount/Assignment Objection prior to the Sale

Hearing, the Debtor requests that the Court resolve any such Cure Amount/Assignment Objection at the Sale Hearing. The Debtor also requests that the Court resolve any Adequate Assurance Objections at the Sale Hearing.

d.      A hearing to determine any objections to the Cure Amount or proposed assumption will be set to run concurrently with the Sale Hearing.

e.      At the Sale Hearing, the Debtor shall request entry of an order approving the assumption and assignment of any Executory Contracts to the Prevailing Bidder upon terms which the Prevailing Bidder agrees to accept and assume.

## V.      RELIEF REQUESTED AND AUTHORITY THEREFOR

### A.      The Proposed Sale of the Transferred Assets Satisfies the Business Judgment Rule.

33.      Section 363 of the Code provides that the Debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  To approve the use, sale or lease of property outside the ordinary course of business, there must be some "articulated business justification."  See Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) (internal citation omitted); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); see also Stephens Indus., Inc., v. McClung, 789 F.2d 386, 389-90 (6th Cir. 1986); In re Efoora, Inc., 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012); In re Telesphere Commc'ns, Inc., 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991).

34.      Once a valid business justification made in the ordinary course of business is established, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  In re S.N.A. Nut Co., 186 B.R.

98 (Bankr. N.D. Ill. 1995) (internal citation omitted); see also In re Johns-Manville Corp., 60

B.R. 612, 615-616 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a

debtor's management decisions").  Similarly, a court will defer the debtor's judgment to make a

sale outside the ordinary course of business pursuant to Section 363, when the debtor has "sound

business reasons for making the sale." Schipper, 933 F.2d at 515.

35.    Indeed, a debtor-in-possession "has considerable discretion when it comes to the

sale of estate assets, and that discretion is entitled to great judicial deference as long as a sound

business reason is given." Efoora, 472 B.R. at 481.  Therefore, the relief requested in this

Motion should be granted if the Debtor demonstrates a sound business justification therefor.  See

Schipper, 933 F.2d at 515; Lionel Corp., 722 F.2d at 1071; Del. Hudson Ry., 124 B.R. at 179.

36.    As explained above, the Debtor has sound business justifications for selling a

substantial portion of its assets at this time.  The Debtor does not have the financial resources or

access to capital necessary to maintain its operating costs indefinitely.  The uncertainties

concerning the Debtor's financial condition have caused the Debtor to be in jeopardy of losing

its valuable customer base.  The Debtor therefore has determined that, based upon its business

judgment, the most viable option for maximizing the value of its estate is through a sale of the

Transferred Assets.

37.    Based upon these factors and those discussed above, the Debtor has demonstrated

a sound business justification for the proposed sale of the Transferred Assets pursuant to the

Bidding Procedures.

**B.    The Bid Protection and Break-Up Fee are Fair and Reasonable.**

38.    The Debtor believes that a compelling need exists to authorize granting of the Bid

Protection and Break-Up Fee in order to induce Cronimet to submit the Cronimet APA for the

Transferred Assets within the time frame mandated by the Debtor's business circumstances.

Moreover, the Debtor believes that the proposed Bid Protection and Break-Up Fee are fair and reasonable in relation to any Qualifying Bid received and will maximize the benefit to the estate by providing an incentive to potential purchasers to expend the resources necessary to formulate offers for the Transferred Assets in excess of the Cronimet APA.  See, e.g., In re Kmart Corp., Case No. 02-B-02474 (Bankr. N.D. Ill. Aug. 29, 2002) (approving proposed termination fee and authorizing a termination fee and overbid protections for potential bidders).

39.     As has been noted, a break-up fee such as the proposed fee herein "is an incentive payment to a prospective purchaser with which a company fails to consummate a transaction." S.N.A. Nut, 186 B.R. at 101.  "Agreements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers.'" Id. (internal citation omitted); see also In re Marrose Corp., Nos. 89 B 12171-12179 (CB), 1992 WL 33848, at *5 (Bankr. S.D.N.Y. Feb. 15, 1992) ("[bidding incentives] are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers"); In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentive may "be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (internal citation omitted).

40.     In the bankruptcy context, the test for determining whether a proposed break-up fee should be approved is whether it is in the best interests of the estate.  See S.N.A. Nut, 186 B.R. at 104; see also In re Tiara Motorcoach Corp., 212 B.R. 133, 137 (Bankr. N.D. Ind. 1997) (adopting the standard set forth in S.N.A. Nut); In re Am. W. Airlines, Inc., 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (bidding incentives should benefit the interests of the debtor, its creditors and equity holders alike).  In particular, a court should evaluate whether a break-up fee will

22

maximize revenues and the value to be brought into the debtor's estate.  See S.N.A. Nut, 186

B.R. at 104; Tiara Motorcoach, 212 B.R. at 137.

41.     The Debtor believes that the proposed Break-Up Fee satisfies this standard.  The

primary circumstances compelling allowance of the Break-Up Fee is to entice Cronimet to

facilitate the commencement of the bidding process as quickly as possible, so that a transaction

can be consummated promptly in light of the Debtor's ongoing financial difficulties and

pressures.  There are "safeguards beneficial" to the Debtor's estate insofar as the Break-Up Fee

will be awarded only if the Debtor closes on a competing bid.  S.N.A. Nut, 186 B.R. at 103 n.5,

106 (internal citation omitted) (denying break-up fee in the absence of any consummated sale).

42.     The amount of the Bid Protection constitutes "a fair and reasonable percentage of

the proposed purchase price." Id. at 103 n.5 (internal citation omitted).  Indeed, the amount is

customary for similar transactions of this type in the bankruptcy context and therefore is not "so

substantial that it provides a 'chilling effect' on other potential bidders." Id. (internal citation

omitted).  In sum, the Debtor's ability to offer the Bid Protection enables it to ensure the sale of

the Transferred Assets to Cronimet, a contractually committed bidder, at prices the Debtor

believes to be fair, while providing the Debtor with the potential of even greater benefit to the

estate.  The Bid Protection therefore should be approved.

**C.     The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for a
Sale Free and Clear of Liens, Claims, Encumbrances and Interests.**

43.     Under Section 363(f) of the Code, a debtor in possession may sell property free

and clear of any lien, claim, or interest in such property if, among other things:

(1)     applicable nonbankruptcy law permits sale of such property free and clear
of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

44.     Because Section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will be sufficient to permit the sale of the Transferred Assets free and clear of any and all Interests.  See In re Terrace Chalet Apartments, Ltd., 159 B.R. 821, 827 (N.D. Ill. 1993).  The Debtor believes that the primary entities holding liens on the Transferred Assets are the Lenders.  The Debtor further believes that the price at which the Transferred Assets will be sold is greater than the value of the Lenders' liens on such assets, thereby satisfying Section 363(f)(3) of the Code.

45.     Moreover, all holders of Interests, including the Lenders, can be compelled to accept a money satisfaction of such Interests in legal or equitable proceedings in accordance with Section 363(f)(5) of the Code.  Such legal or equitable proceedings include proceedings to confirm a plan of reorganization, under which the holder of a lien may be compelled to accept payment in satisfaction of its lien pursuant to Section 1129(b)(2)(A) of the Code.

46.     Indeed, Section 1129(b)(2)(A) of the Code specifically allows a debtor to sell property subject to a lien, free and clear of such lien, if such lien attaches to the net proceeds of the sale, subject to any claims and defenses the debtor may possess with respect thereto.  The Debtor proposes that any Interests in the Transferred Assets attach to the net proceeds from the sale of the Transferred Assets in this Chapter 11 Case.

47.     Based upon the foregoing, the sale should be approved under Section 363(f).

### D.    The Sale Satisfies the Requirements of Bankruptcy Code Section 363(m) for a Sale Made in Good Faith.

48.    Section 363(m) reflects that the Code strongly favors finality of sale orders, and the protection of good-faith purchasers maximizes the value of the assets for sale, which benefits both debtors and creditors.  See Hower v. Molding Sys. Eng'g Corp., 445 F.3d 935, 938 (7th Cir. 2006).

49.    "The requirement that a purchaser act in good faith, of course, speaks to the *integrity of his conduct in the course of the sale proceedings*. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  In re Andy Frain Servs., Inc., 798 F.2d 1113, 1125 (7th Cir. 1986) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1995, 1198 (7th Cir. 1978)).

50.    In the present case, the Cronimet APA represents over one month of arduous, continuous and extensive, arms-length and good-faith negotiations and discussions between representatives of the Debtor and Cronimet and their respective counsel and advisers.  At all times, Cronimet and the Debtor have been under completely different ownership and management.

### E.    The Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.

51.    Section 365(f)(2) of the Code provides that:

[t]he trustee may assign an executory contract or unexpired lease of the debtor only if–

(A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

25

11 U.S.C. § 365(f)(2).

52.    Under Section 365(a), a debtor, "subject to the court's approval, may assume or

reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Section

365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory

contract of a debtor.  This subsection provides as follows:

> (b)(1) If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease
> unless, at the time of assumption of such contract or lease, the trustee–
>
> (A)    cures, or provides adequate assurance that the trustee will promptly
> cure, such default . . . ;
>
> (B)    compensates, or provides adequate assurance that the trustee will
> promptly compensate, a party other than the debtor to such contract or
> lease, for any actual pecuniary loss to such party resulting from such
> default; and
>
> (C)    provides adequate assurance of future performance under such
> contract or lease.

11 U.S.C. § 365(b)(1).

53.    The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given a "practical, pragmatic construction." In re

Resource Tech. Corp., 624 F.3d 376, 383 (7th Cir. 2010) (internal citation omitted).  The

required assurance "will fall considerably short of an absolute guarantee of performance." Id.

(quoting Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc., 103 B.R. 524, 538 (Bankr.

D.N.J. 1988)); see also In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803-04 (Bankr.

N.D. Ill. 1985).

54.    Among other things, adequate assurance may be provided by demonstrating the

assignee's financial health and reputation.  Resource Tech., 624 F.3d at 383; see also, e.g., In re

Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance where

prospective assignee of lease from debtor had financial resources and expressed its willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

55.     To the extent that any defaults exist under any of the Executory Contracts that are to be assumed and assigned in connection with the sale of the Transferred Assets, the Debtor will either have any such default cured at closing as a condition of such assumption and assignment, or obtain consent to the assumption and assignment on such modified terms as may be agreed to by the non-Debtor party to such Executory Contracts.  Moreover, the Debtor will adduce facts at the Sale Hearing demonstrating the financial wherewithal of the Prevailing Bidder, its experience in the industry, and its willingness and ability to perform under the proposed Executory Contracts to be assumed and assigned to it.

56.     The Sale Hearing therefore will provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of the Prevailing Bidder to provide adequate assurance of future performance under the contracts to be assumed and assigned.  The Court therefore should have a sufficient basis to authorize the Debtor to reject or assume and assign the Executory Contracts as will be set forth in the Prevailing Bid.

## VI.    NOTICE REQUIREMENTS

57.     The Debtor has provided a copy of this Motion and all exhibits, via ECF filing, U.S. mail, e-mail, and/or overnight delivery on September 26, 2013, to the following persons: (a) the twenty largest unsecured creditors in this Chapter 11 Case; (b) counsel for the Lenders; (c) the United States Trustee's Office in this District; (d) all equity security holders of the Debtor; (e) all entities reasonably known by the Debtor (or its representatives and retained professionals) to have a lien on any of the Transferred Assets to be sold; (f) all counterparties to the Cronimet Executory Contracts; (g) the District Director of the Internal Revenue Service for the Northern District of Illinois; (h) the Office of the Attorney General or applicable taxing authority for each

state where the Transferred Assets are located; (i) all taxing authorities identified in the

Bankruptcy Schedules filed in this proceeding; and (j) counsel for Cronimet.

58.     In addition, the Debtor will provide a copy of the Notice of Hearing on this

Motion (the "**Notice of Hearing**") via regular mail, ECF filing, and/or e-mail on September 26,

2013, to the following persons: (a) all creditors in this Chapter 11 Case; (b) counsel for the

Lenders; (c) all parties to the Debtor's executory contracts and unexpired leases; (d) the United

States Trustee's Office in this District; (e) all entities reasonably known by the Debtor (or its

representatives and retained professionals) to have an Interest in the Transferred Assets to be

sold; (f) the District Director of the Internal Revenue Service for the Northern District of Illinois;

(g) the Office of the Attorney General or applicable taxing authority for each state where the

Transferred Assets are located; (h) all taxing authorities identified in the Bankruptcy Schedules

filed in this proceeding; (i) all equity security holders of the Debtor; (j) counsel for Cronimet;

and (k) all other entities that may file requests for notices pursuant to Rule 2002 of the

Bankruptcy Rules.  In addition to being filed in connection with this Motion, a copy of the

Notice of Hearing is attached hereto as Exhibit D and made a part hereof.

59.     Under the circumstances present in this Chapter 11 Case, the Debtor requests that

the foregoing notice be deemed adequate and reasonable under the Code and Bankruptcy Rules

for purposes of the entry of the Bidding Procedures Order and the commencement of the Bidding

Process.

60.     Rules 2002(a)(2) and 6004(a) of the Bankruptcy Rules require that notice of a

proposed sale of substantially all of a debtor's assets be sent to all creditors.  The Debtor

proposes it serve that notice of the entry of the Bidding Procedures Order requested herein and

notice of the Auction and the Sale Hearing in accordance with Rules 2002(a)(2) and 6004, to the

following persons: (a) all creditors in this Chapter 11 Case; (b) the Committee or counsel for the

28

Committee, if such counsel is subsequently retained; (c) counsel for the Lenders; (d) all parties to

Executory Contracts; (e) the United States Trustee's Office in this District; (f) all entities

reasonably known by the Debtor (or its representatives and retained professionals) to have an

Interest in the Transferred Assets to be sold; (g) the District Director of the Internal Revenue

Service for the Northern District of Illinois; (h) the Office of the Attorney General or applicable

taxing authority for each state where the Transferred Assets are located; (i) all taxing authorities

identified in the Bankruptcy Schedules filed in this proceeding; (j) all equity security holders of

the Debtor; (k) counsel for Cronimet; and (l) all other entities that may file requests for notices

pursuant to Rule 2002 of the Bankruptcy Rules.  Pursuant to Rule 2002(m), the Debtor asserts

that it would be impracticable to forward this Motion in its entirety to all of its unsecured

creditors listed in its Creditor Matrix on file herein, and therefore requests that the notice of the

Auction and the Sale Hearing be made by mailing to each creditor (i) a copy of the Notice of

Sale and Intended Assumption and Assignment of Executory Contracts and Unexpired Leases in

Connection Therewith in the form attached hereto as Exhibit E and made a part hereof, along

with (ii) a copy of the Bidding Procedures, within five (5) business days of entry of the Bidding

Procedures Order, and that such notice be deemed adequate and reasonable under the Code and

Bankruptcy Rules.

WHEREFORE, Keywell L.L.C., debtor herein, respectfully requests: (i) the entry of the

Bidding Procedures Order in the form being filed concurrently herewith; (ii) that it be authorized

to conduct the Auction; (iii) that this Court schedule the Sale Hearing to consider the entry of the

Sale Order; and (iv) that it be awarded such other and further relief as is requested herein or is

otherwise just and equitable.

Respectfully Submitted:

KEYWELL L.L.C.

By:   /s/ Howard L. Adelman
      One of its proposed attorneys


HOWARD L ADELMAN, ESQ. (ARDC# 0015458)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Keywell L.L.C.**