IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| KEYWELL L.L.C., ) | Case No. 13-37603 |
| ) | |
| Debtor. ) | Hon. Eugene R. Wedoff |
| ) | |

**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL
AND PROVIDING ADEQUATE PROTECTION**

Upon interim consideration of the motion (the "**Motion**")[1] of Keywell L.L.C. (the "**Debtor**") requesting this Court's authorization to use the cash collateral of NewKey Group, LLC ("**NewKey**") and NewKey Group II, LLC ("**NewKey II**" and together with NewKey, the "**Lenders**") pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; due and proper notice of the Motion having been given to all parties entitled thereto; a preliminary hearing having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(c)(2); the Court having heard the statements of counsel for the Debtor and the Lenders at the preliminary hearing; the Court having considered all relevant matters related thereto and being otherwise fully advised in the premises; and it appearing to the Court as follows based on the representations at the preliminary hearing and in the Motion;

THE PARTIES HEREBY REPRESENT AS FOLLOWS:

A.   On September 24, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Code**"). The Debtor is now operating its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a)

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

{10542-001 ORD A0353638.DOC 5}

and 1108. There is presently no pending request or motion for appointment of a trustee or examiner, and no official committee has yet been appointed in this chapter 11 case (the "**Chapter 11 Case**").

B.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

C.  Prior to the Petition Date, the Debtor obtained loans and other financial accommodations from the Lenders, including, but not limited to: (i) a loan from NewKey (the "**NewKey Loan**") evidenced by, *inter alia*, that certain Second Amended and Restated 12% Subordinated Secured Convertible Promissory Note dated as of November 21, 2011 in the principal amount of $3,500,000, which note is secured by, among other things, a grant of a continuing and unconditional security interest in and to property of the Debtor, including the Cash Collateral (as defined below), pursuant to that certain Amended and Restated Security Agreement dated as of November 21, 2011 (collectively, the "**NewKey Loan Documents**"); and (ii) a loan from NewKey II (the "**NewKey II Loan**," and together with the NewKey Loan, the "**Prepetition Loans**") evidenced by, *inter alia*, that certain Amended and Restated 12% Junior Subordinated Secured Convertible Promissory Note dated as of November 21, 2011 in the principal amount of $5,000,000, which note is secured by, among other things, a grant of a continuing and unconditional security interest in and to property of the Debtor, including the Cash Collateral, pursuant to that certain Amended and Restated Security Agreement dated as of

November 21, 2011 (collectively, the "**NewKey II Loan Documents**" and together with the NewKey Loan Documents, the "**Prepetition Loan Documents**").[2]

D. Prior to the Petition Date, on August 28, 2013, the Lenders each sent letters to the Debtor providing notice of certain defaults under the Prepetition Loan Documents and demanding payment from the Debtor.

E. As of September 22, 2013, the outstanding balance owed by the Debtor to NewKey under the NewKey Loan Documents was $4,538,177.23, plus attorneys' fees, with interest continuing to accrue at a per diem rate of $2,333.33, and the outstanding balance owed by the Debtor to NewKey II under the NewKey II Loan Documents was $5,920,000.00, plus attorneys' fees, with interest continuing to accrue at a per diem rate of $3,333.33 (collectively, the "**Prepetition Indebtedness**").

F. Each of the Lenders intends to file proofs of claim with respect to the Prepetition Indebtedness and attaching copies of the Prepetition Loan Documents.

G. The Debtor acknowledges that the security interests (the "**Prepetition Security Interests**") of the Lenders in and to a substantial portion of the Debtor's property (the

---

[2] The NewKey Loan was originally evidenced by a certain 12% Subordinated Secured Convertible Promissory Note dated as of March 20, 2009 in the principal amount of $3,500,000 (the "**Original NewKey Note**"). The Debtor's obligations pursuant to the Original NewKey Note were twice amended and restated pursuant to that certain (i) Amended and Restated 12% Subordinated Secured Convertible Promissory Note dated as of October 18, 2011 and (ii) Second Amended and Restated 12% Subordinated Secured Convertible Promissory Note dated as of November 21, 2011. The NewKey II Loan was originally evidenced by a certain 12% Subordinated Secured Convertible Promissory Note dated as of October 18, 2011 in the principal amount of $5,000,000 (the "**Original NewKey II Note**"), which was amended and restated pursuant to that certain Amended and Restated 12% Junior Subordinated Secured Convertible Promissory Note dated as of November 21, 2011 in the principal amount of $5,000,000. Of the $8,500,000 in aggregate proceeds from the Prepetition Loans: (a) approximately $1.5 million of the NewKey Loan proceeds were used to purchase a 24-acre parcel in Monroe, North Carolina in March 2009 for a future expansion of the Debtor's high temperature alloy and titanium business; (b) approximately $2 million of the NewKey Loan proceeds were used by the Debtor in March 2009 to pay down the then-existing senior indebtedness to Bank of America, N.A. ("**BOA**") and to secure a waiver from BOA on a then-existing default under its loan documents; and (c) approximately $5 million in NewKey II Loan proceeds were used to pay down the then-existing senior indebtedness to BOA.

"Prepetition Collateral") under the Prepetition Loan Documents constitute valid, binding, enforceable, and perfected first-priority security interests, and the Debtor is unaware of any factual basis for the avoidance or subordination of the Lenders' Prepetition Security Interests pursuant to the Code or applicable non-bankruptcy law.

H. The Debtor also acknowledges that the Prepetition Indebtedness constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the NewKey Loan Documents and the NewKey II Loan Documents, respectively (other than in respect of the stay of enforcement arising from Code section 362); that no offsets, defenses, or counterclaims to the Prepetition Indebtedness exist; and the Debtor is unaware of any factual basis for the avoidance or subordination of any portion of the Prepetition Indebtedness pursuant to the Code or applicable non-bankruptcy law.

I. All cash and cash equivalents are proceeds of the Lenders' Prepetition Collateral. The Debtor acknowledges that these funds constitute "cash collateral" of the Lenders (the "**Cash Collateral**") within the meaning of 11 U.S.C. § 363(a).

J. The Debtor has requested that the Lenders consent to the Debtor's use of the Cash Collateral in order to provide funds to be used in the operation of the Debtor's business. If the Debtor's business were to cease operations, the Debtor and its creditors, including employees, would suffer irreparable harm.

K. Subject to the terms and conditions set forth in this Order, and with the express understanding that the Debtor intends to promptly seek authority to sell a substantial portion of its assets outside the ordinary course of business pursuant to 11 U.S.C. § 363(b) (the "**Sale**") and to pay all amounts that are due and owing to the Lenders at closing of the Sale, including the Prepetition Indebtedness plus postpetition default interest, attorneys' fees and costs incurred by

the Lenders prior to the Sale, the Lenders are willing to consent to Debtor's use of the Cash Collateral. Nothing contained in this Order shall or shall be construed to waive, impair, limit or prejudice in any way the Lenders' rights to contest or object to any further or other use of the Cash Collateral by the Debtor.

L.    This Order is entered pursuant to, and shall be construed and be consistent with § 363(c)(2) of the Code and Bankruptcy Rule 4001(b) to prevent immediate and irreparable harm to the Debtor's estate.

M.    The Lenders have acted in good faith in agreeing to the use of the Cash Collateral pursuant to the term and conditions of this Order.

N.    The notice provided by the Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Bankruptcy Rule 4001(b) and were otherwise sufficient and appropriate under the circumstances.

O.    No official committee of creditors or equity security holders has yet been appointed by the United States Trustee in this Chapter 11 Case.

IT IS HEREBY ORDERED:

1.    The Motion is hereby granted on an interim basis and the Debtor is authorized to use the Cash Collateral pursuant to § 363(c) of the Code subject to the terms and conditions set forth in this Order.

2.    The Debtor is authorized, solely and in accordance with the terms of this Order, to use the Lenders' Cash Collateral on an interim basis until the final hearing on the Motion, in a manner that is substantially consistent with the budget attached hereto as <u>Exhibit A</u> (the "**Budget**") for the period of September 26, 2013 through October 10, 2013 (the "**Expiration Date**"), to pay actual, ordinary, and necessary expenses of the Debtor's business, subject to a

permitted variance of three percent (3%) per expense line item, and ten percent (10%) in aggregate, without further order of this Court.[3] The Budget shall be modified to include a line-item for payment of the Lenders' attorneys' fees and expenses. The Budget may be modified with the prior written consent of the Lenders or by further order of this Court.

3.  As adequate protection for any use or diminution in the value of the Lenders' interests in the Prepetition Collateral, including the Cash Collateral, the Lenders are hereby granted:

 (a) Retroactive to the Petition Date and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable, fully perfected liens and security interests of the highest available priority in and upon (i) the Prepetition Collateral, (ii) any property that the Debtor acquires after the Petition Date including, without limitation, any accounts receivable generated by the Debtor's postpetition operations, but excluding any avoidance actions under chapter 5 of the Code, and (iii) any proceeds generated from such property (the "**Postpetition Collateral**" and together with the Prepetition Collateral, the "**Collateral**").

 (b) In addition to continuing to provide the Lenders with all reports the Debtor provided to the Lenders in the ordinary course of business prior to the Petition Date, the Debtor shall provide weekly reports to the Lenders in a format similar to the Budget that compares the budget with actual results and shall timely file their monthly operating reports.

 (c) The Lenders shall have reasonable access to the Debtor's (i) premises for the purpose of inspecting the Collateral and (ii) books and records.

 (d) The Debtor shall maintain and keep the Collateral in good condition, repair and working order (normal wear and tear excepted).

 (e) The Debtor shall maintain all insurance that existed as of the Petition Date with respect to the Debtor's business and the Lenders' collateral.

 (f) With respect to any existing policies of insurance covering the Debtor's business and the Lenders' collateral, the Debtor shall provide the Lenders

---

[3] The line-items in the Budget for professionals in the Chapter 11 Case, including but not limited to any professionals retained by the Committee, are estimates, and are subject to allowance and approval by the Court.

{10542-001 ORD A0353638.DOC 5}    6

        with copies of certificates of insurance naming the Lenders as additional insureds.

    (g)    The Debtor shall only use the Collateral for lawful purposes, without violation of any federal, state or local law, statute or ordinance.

The liens granted in this paragraph (the "**Adequate Protection Liens**") shall be subject only to prior perfected and unavoidable liens in property of the Debtor's estate as of the Petition Date. Moreover, to the extent that the Adequate Protection Liens do not adequately protect the Lenders from any diminution in the value of the Lenders' interests in the Prepetition Collateral, the Lenders shall have an allowed claim against the Debtor's estate that shall be superior to an unsecured claim, whether an administrative or priority claim, against the Debtor's estate except quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

    4.    As additional adequate protection, the Debtor shall timely pay the Lenders' accrued and accruing interest at the default rate in accordance with the Prepetition Loan Documents and reimburse the Lenders for their prepetition and postpetition attorneys' fees and costs. A copy of each invoice for which reimbursement is sought by the Lenders shall be transmitted by Lenders' attorneys to the Debtor, the United States Trustee and any committee appointed in this Chapter 11 Case. Within ten (10) days after receipt of a detailed invoice from the Lenders' attorneys (the "**Initial Payment Date**"), the Debtors shall pay the invoice, unless (i) there is a good faith basis for an objection to the request by the Debtor, the United States Trustee or any committee appointed in this Chapter 11 Case, (ii) any such objection is not informally resolved prior to the Initial Payment Date, and (iii) any such objection, which shall be in the form of a motion to disallow all or any portion of the Lenders' attorneys' requested fees and expenses, is filed and served within ten (10) days after the Initial Payment Date passes. The Court shall schedule a hearing on any such motion at the Court's convenience, but

after the Lenders' attorneys are provided not less than seven (7) days to respond to any such motion. Any adequate protection payments made under this paragraph shall be provisional until the Lenders' secured claims are allowed pursuant to paragraph 8 of this Order.

5. This Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Adequate Protection Liens, whether or not the Lenders elect to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and the Lenders may, in their sole discretion, but shall not be required to, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Lenders' liens and security interests.

6. The entry of this Order is without prejudice to the Debtor's right to seek authority to use additional Cash Collateral or borrow funds pursuant to 11 U.S.C. § 364 if the Debtor determines that the use of Cash Collateral authorized by this Order is insufficient. Nothing contained in this Order, however, shall constitute the Lenders' consent to be primed by any subsequent lender.

7. Unless otherwise ordered by the Court, the Debtor's authority to use the Cash Collateral pursuant to this and any extension of this Order, or any final cash collateral order, shall automatically terminate, without further action by the Lenders, the Court or any other person or entity, upon the earlier of (i) the Expiration Date or (ii) the occurrence of any one or more of the following events:

    (a) The violation of any of the terms of this Order;

    (b) The entry of an order converting the Chapter 11 Case to a case under

chapter 7 of the Code or terminating the authority of the Debtor to operate its business;

(c) Any sale by the Debtor of the Collateral other than on the terms and conditions of this Order, including, without limitation, the condition that the Lenders' secured claims be paid in full at the closing of Sale, or other than as provided pursuant to the terms and provisions of the Code;

(d) The termination, expiration, lapse, or reduction of insurance coverage on the Collateral for any reason whatsoever;

(e) The failure to pay, when due, any postpetition taxes;

(f) The appointment of a trustee in this Chapter 11 Case;

(g) The failure to provide the Lenders, within seven (7) days of the Petition Date, with a fully executed asset purchase agreement that is reasonably acceptable to the Lenders and which provides for the Sale to be consummated within one hundred twenty (120) days after the Petition Date;

(h) The failure to file, within fourteen (14) days of the Petition Date, such motions in the Chapter 11 Case as are necessary to obtain approval of the Sale and providing for the attachment of the Lenders' Prepetition Security Interests and Adequate Protection Liens to attach to the proceeds of the Sale and payment in cash in full of all obligations due the Lenders pursuant to the Prepetition Loan Documents at the closing of the Sale; or

(i) The failure to obtain, within seventy-five (75) days of the Petition Date, the entry of such orders in the Chapter 11 Case as may be required to approve the Sale.

8. Notwithstanding anything to the contrary contained in this Order, any action, claim, or defense (hereinafter, an "**Objection**") that seeks to object to, challenge, contest, or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction,

disgorgement or claim of any kind, (a) the existence, validity, or amount of the Prepetition Indebtedness owing to either of the Lenders as of the Petition Date; and/or (b) the extent, legality, validity, perfection, or enforceability of the Prepetition Security Interests of either of the Lenders shall be filed with the Court (x) by any Official Committee of Unsecured Creditors (the "**Committee**"), or any party in interest with requisite standing, within sixty (60) calendar days from the date of appointment of the Committee by the United States Trustee, or (y) in the event no Committee is appointed within the thirty (30) days following the Petition Date, by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Order (the "**Objection Period**"). If no Objection is timely filed as to the Prepetition Indebtedness or the Prepetition Security Interests, or an Objection is timely filed but denied, then (a) the Prepetition Indebtedness owing to the Lenders as of the Petition Date shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction, subordination, or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Security Interests shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes.

9. Notwithstanding anything to the contrary herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of the Lenders under the Code or under non-bankruptcy law, including, without limitation, the right of the Lenders to (i) request additional adequate protection of their interests in the Prepetition Collateral or relief from or modification of the automatic stay extant under 11 U.S.C. § 362, (ii) request conversion of the Chapter 11 Case to chapter 7, and (iii) propose, subject to the provisions of section 1121 of the Code, a chapter 11

plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Lenders.

10. Subject to paragraph 8 above, this Order shall be binding on all parties in interest in this Chapter 11 Case, and in any converted case, and their respective successors and assigns, including any trustee. Subject to paragraph 8 above, if this Order never becomes a final and nonappealable order, or if any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, then such non-finality, termination or subsequent order shall not affect: (a) the priority, validity, enforceability or effectiveness of any lien, security interest, priority, or other benefit authorized hereby with respect to any Cash Collateral used prior to the effective date of such subsequent order (and all such liens, security interests, priorities and other benefits shall be governed in all respects by the original provisions of this Order); (b) the stipulations and findings contained in this Order; or (c) the validity, enforceability or effectiveness of the provisions of this Order. Except as otherwise expressly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order.

11. A final hearing on the Motion is scheduled for October 9, 2013, at 10:00 a.m., and may be continued from time to time (the "**Final Hearing**"). The Debtor is directed to immediately serve a copy of this Order and the proposed final order granting the Motion (the "**Final Order**") by first class mail, postage prepaid, on the Lenders' counsel, the Debtor's other secured creditors, the Debtor's twenty largest unsecured creditors, and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing. Any objection to the Motion or the entry of the Final Order, as now composed or as modified at a later date, must, no later than forty-eight (48) hours prior to the commencement of such Final

{10542-001 ORD A0353638.DOC 5}                    11

Hearing, be both filed with the Court and received by counsel for Debtor, counsel for the Lenders, counsel for the Committee, and the United States Trustee. Any timely and properly filed and served objection will be heard by the Court at the Final Hearing.

12. This Order shall be effective as of the Petition Date.

Dated: September 26, 2013

**ENTER:**

_____
United States Bankruptcy Judge

**AGREED TO:**

| **KEYWELL L.L.C.** | **NEWKEY GROUP, LLC** |
| | **NEWKEY GROUP II, LLC** |

By: _____   By: _____
One of its attorneys                   One of their attorneys

Howard Adelman                         Steven B. Towbin
Erich S. Buck                          Gordon E. Gouveia
Alexander F. Brougham                  Shaw Fishman Glantz & Towbin LLC
Adelman & Gettleman, Ltd.              321 North Clark Street, Suite 800
53 W. Jackson Blvd., Suite 1050        Chicago, IL 60654
Chicago, IL 60604

# EXHIBIT A

Keywell LLC
Chapter 11 Debtor in Possession / Cash Collateral Budget
$000s

| Week | 1 | 2 | 3 | 4 | 5 | Total |
|---|---|---|---|---|---|---|
| W/E | 9/27/2013 | 10/4/2013 | 10/11/2013 | 10/18/2013 | 10/25/2013 | |
| Days Post Petition | 4 | 11 | 18 | 25 | 32 | |
| Total Collections | 1,328 | 391 | 488 | 1,562 | 994 | 4,864 |
| Payroll | 113 | 113 | 113 | 113 | 113 | 563 |
| Payroll Taxes | 11 | 11 | 11 | 11 | 11 | 57 |
| Prepetition Employee Obligations | 150 | | | | | 150 |
| Management Retention Plan | | | | | | - |
| Critical Maintenance / Safety / Op. Supplies | 18 | 15 | 15 | 10 | 10 | 68 |
| Tolling Expenses | 42 | | 45 | | 50 | 136 |
| Freight | | | | 16 | | 16 |
| Leases | 67 | | | | 134 | 201 |
| Utilities | 20 | 20 | 20 | 20 | 20 | 100 |
| Site Security | 5 | 5 | 5 | 5 | 5 | 25 |
| Hazardous Waste Removal | | | | | | - |
| Wind Down Travel / Employee Expenses | 5 | 5 | 5 | 5 | 5 | 25 |
| Debtor Legal Fees - Corporate and Insolvency | | | | | 300 | 300 |
| Debtor Legal Fees - Environmental | | | | | 50 | 50 |
| Debtor Financial Advisor Fees | | | | | 100 | 100 |
| Debtor Investment Banking Fees | | | | | 50 | 50 |
| Filing Fee | 1 | | | | | 1 |
| Utility Deposits | | | 135 | | | 135 |
| UST Quarterly Fee(s) | | | | | | - |
| Secured Debt - Interest | | | | | | - |
| Secured Debt - Lender Legal | | | | | 100 | 100 |
| Creditor Committee Prof. Fees | | | | | 100 | 100 |
| 503 (b)(9) Claims | | | | | | - |
| Total Disbursements | 432 | 169 | 349 | 180 | 1,048 | 2,177 |
| Net Cash Flow | 897 | 222 | 139 | 1,482 | (54) | 2,686 |
| Beginning Cash (all accounts, excl. escrow) | 5,121 | 6,018 | 6,240 | 6,379 | 7,862 | 5,121 |
| Net Change in Cash | 897 | 222 | 139 | 1,482 | (54) | 2,686 |
| Ending Cash | 6,018 | 6,240 | 6,379 | 7,862 | 7,807 | 7,807 |
| Escrow Balance (W/Intrust) | 500 | 500 | 500 | 500 | 500 | 500 |
| Total Cash | 6,518 | 6,740 | 6,879 | 8,362 | 8,307 | 8,307 |