## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date:  October 16, 2013 |
| | ) | Hearing Time:  9:30 a.m. |
| | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 16, 2013 at 9:30 a.m., we shall appear before the Honorable Eugene R. Wedoff of the United States Bankruptcy Court, Northern District of Illinois, in Courtroom 744 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF THE DEBTOR TO EMPLOY INVESTMENT BANKER**, a copy of which is hereby served upon you.

> HOWARD L ADELMAN, ESQ. (ARDC# 0015458)
> ERICH S. BUCK, ESQ. (ARDC #6274635)
> ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Blvd., Suite 1050
> Chicago, Illinois 60604
> Tel (312) 435-1050
> Fax (312) 435-1059
> **Proposed Counsel for Keywell L.L.C.**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certify that true and correct copies of this notice and motion were served upon the parties listed on the service list attached hereto via ECF, U.S. Mail, e-mail and/or overnight delivery as indicated below, on September 27, 2013.

> By:  /s/ Howard L. Adelman

## SERVICE LIST

### Via ECF

Patrick S Layng
Kimberly Bacher
Office of the U.S. Trustee, Region 11
219 S Dearborn St, Room 873
Chicago, IL 60604

Gordon E. Gouveia, Esq.
Steven B. Towbin, Esq.
Shaw Fishman Glantz & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
*Counsel to NewKey Group, LLC & NewKey Group II, LLC*

Mark W. Page, Esq.
Kelley Drye & Warren LLP
333 W. Wacker Drive, Suite 2600
Chicago, IL 60606
*Counsel to Alpert & Alpert Iron & Metal, Inc.*

Matthew T. Gensburg, Esq.
Nancy A. Peterman, Esq.
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
*Counsel to Cronimet Holdings, Inc.*

Thomas V. Askounis, Esq.
Alex Darcy, Esq.
Amrit S. Kapai, Esq.
Askounis & Darcy, PC
444 N. Michigan Avenue, Suite 3270
Chicago, IL 60611
*Counsel to Wells Fargo Equipment Finance, Inc.*

### Secured Creditors – Via First Class Mail

Banc of America Leasing &
Capital, LLC/B
125 Dupont Drive
Providence, RI 02907

PNC Bank, NA
One Financial Parkway
Kalamazoo, MI 49009

PNC Equipment Finance, LLC
4100 West 150th Street
Cleveland, OH 44135

### 20 Largest Unsecured Creditors – Via First Class Mail

A&L Iron and Metal, Inc.
Attn: Bret Bandt
2000 Milbocker Road
Gaylord, MI 49735

AIM Ontario
Attn: Serge Thibault
75 Windermere Road
Hamilton, ON L8H 3Y2
Canada

Caledonian Alloys Greenville
Attn: Sheila Biblis
99 Crestview Drive Extension
Transfer, PA 16154

Cinelli I & M Co.
Attn: Dave Barteck
290 Secaucus Road
Secaucus, NJ 70940

CMC Recycling
Attn: Donna Humphrey
6565 N. MacArthur Blvd., #800
Irving, TX 75039

Columbus Metal Industries
Attn: Sam Jacobs
3440 15th Street East
Columbus, NE 68601

DH Griffin Wrecking Co., Inc.
Attn: David Griffin
4716 Hilltop Road
Greensboro, NC 27407

FPT Cleveland
Attn: Greg Brock
8550 Aetna Road
Cleveland, OH  44105

Jay L. Welford
Jeffe Raitt Heuer & Weiss, P.C.
Suite 2500
27777 Franklin Road
Southfield MI  48034
*Counsel to FPT Cleveland*

Franklin Iron & Metal Corp.
Attn:  Greg Clouse
1939 E. First Street
Dayton, OH  45403

John Zubick Limited
Attn:  Matt Zubick
105 Clark Side Road
London, ON  N5W 5C9
Canada

Joseph Freedman Co.
Attn:  Ernie Gagnon
115 Stevens Street
Springfield, MA  11040

Loeb Metal Recycling Co.
Attn:  John Morgan
Div. Loeb Industries Inc.
1111 S. Tenth Street, PO Box 229
Watertown, WI  53094

Mervis Industries
d/b/a Sol Tick & Company
Attn:  Tom Faiender
1180 N. 22nd Street
Decatur, IL  62521

Newell Recycling of Atlanta Inc.
Attn:  Tim Smallwood
1359 Central Avenue
East Point, GA  30344

Omnisource Corporation
Attn:  Joseph Castellana
Stainless Steel and Allow Div.
7575 W. Jefferson Blvd.
Fort Wayne, IN  46804

SA Recycling
Attn:  Bruce Kiezler
12428 Center Avenue
Southgate, CA  90280

Schnitzer Steel
Attn:  Chris Yocom
906 Adamson Street
Atlanta, GA  30315

Schupan & Sons
Attn:  Marc Rose
2619 Miller Road
Kalamozoo, MI  49001

SOS Metals Inc.
Attn:  Sandy Shadrow
201 E. Gardena Blvd.
Gardena, CA   90248

Terrapin Metals Recycling LLC
Attn: Greg Rochlin
7600 Rolling Mill Road
Baltimore, MD  21224

*Additional Parties Requesting Notice –*
*Via First Class Mail*

Craig A. Wolfe, Esq.
Benjamin D. Feder, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178
*Counsel to Alpert & Alpert Iron & Metal, Inc.*

Kaye E. Tucker, Esq.
Tucker Law Firm
9440 Santa Monica Blvd., Suite 504
Beverly Hills, CA  90210
*Counsel to Alpert & Alpert Iron & Metal, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date:  October 16, 2013 |
| | ) | Hearing Time:  9:30 a.m. |
| | ) | |

## MOTION OF THE DEBTOR TO EMPLOY INVESTMENT BANKER

NOW COMES, Keywell L.L.C., an Illinois limited liability company, debtor and debtor in possession herein (the "**Debtor**"), and for its motion (the "**Motion**") to employ the firm of Eureka Capital Markets, LLC as its investment banker in this Chapter 11 case pursuant to 11 U.S.C. § 327 and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), respectfully states as follows:

I.    **INTRODUCTION**

   A.    **The Chapter 11 Case**

1.    On September 24, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Code**").  Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108 in the above-captioned case (the "**Chapter 11 Case**").

2.    There has not been a trustee appointed in the Chapter 11 Case.  The Office of the United States Trustee has not yet appointed a committee of unsecured creditors.

3.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

4.     The statutory predicate for the relief requested herein is Section 327 of the Code.

The applicable Bankruptcy Rule is Rule 2014.

5.     Bankruptcy Rule 6003 provides, among other things, that an application under

Bankruptcy Rule 2014 shall not be granted within 21 days after the filing of the petition

"[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm."  Given

that the petition in this case was filed on September 24, 2013, more than 21 days will have

elapsed at the time of presentment of this Motion.  Thus, the Debtor submits that it has complied

with Bankruptcy Rule 6003.

## II. <u>RELIEF REQUESTED</u>

6.     By this Motion, the Debtor seeks authority to retain Mark Hyman, Lana Simkina,

and the investment banking firm of Eureka Capital Markets, LLC ("**Eureka Capital**"), 52

Vanderbilt Avenue, Suite 902, New York, NY 10017, as its investment banker in the Chapter 11

Case pursuant to the terms set forth in that certain retention agreement between the Debtor and

Eureka Capital executed May 1, 2013, as subsequently amended (the "**Agreement**"), a copy of

which is attached hereto as <u>Exhibit A</u> and expressly made a part hereof.  The Debtor's

obligations under the Agreement are subject to the approval of this Court.

7.     Eureka Capital is well qualified to aid the Debtor in this case.  Eureka Capital

provides financial advisory services in the areas of mergers and acquisitions (buy-side and sell-

side), financial restructuring, capital raising, ESOP buyouts, valuations and strategic/financial

consulting to a variety of clients, which include public and private companies, private equity

2

firms, industry executives and management teams. It has cultivated a particular expertise in the metals industry, and has experience in metal recycling, metal production, forging, stamping, machining, fabrications and metal services. In addition, based primarily on assignments for the Debtor over the past seven years Eureka has developed a deep understanding of the stainless steel, high temperature alloys and titanium recycling markets. Founded in 1993, Eureka has offices in New York and California.

8.    In addition to its experience in the metals industry generally, Eureka Capital has had considerable experience with the Debtor's business. Since 2007, Eureka has, from time to time, advised the Debtor on its options for strategic growth, capital raising, explored strategic alternatives and debt restructuring. In January 2009, for instance, Eureka Capital assisted the Debtor in negotiating a successful restructuring of its bank debt. And in August 2011, Eureka Capital advised the Debtor in negotiations with a large international commodity trading company regarding a possible junior capital investment and joint marketing agreement.

9.    Due to Eureka Capital's experience with and contacts within the worldwide metals industry, and its knowledge of the Debtor's business, the Debtor submits that Eureka Capital is uniquely suited to obtain the best price for the Debtor's assets.

10.    In its capacity as investment banker to the Debtor, Eureka Capital would focus specifically on the marketing of the Debtor's business as a going concern and/or any other transaction that maximizes value to all constituencies, to interested parties in an effort to secure a buyer and effectuate a Section 363 sale. As more fully set forth in the Agreement, Eureka Capital's proposed services to the Debtor include, but are not limited to, the following:

      a.    analyzing and evaluating the business, operations and financial position of the Debtor;

      b.    assisting in the preparation of an offering memorandum for distribution

and presentation to potential purchasers;

c.    assisting in the preparation and implementation of a marketing plan;

d.    assisting in the screening of interested prospective purchasers;

e.    identifying and contacting selected prospective purchasers on Debtor's behalf;

f.    assisting in coordinating the data from and with potential purchasers' due diligence investigations;

g.    assisting in the evaluation of proposals which are received from potential purchasers;

h.    assisting in structuring and negotiating the Section 363 sale;

i.    communicating with the Debtor's and other designated representatives to discuss the proposed Section 363 sale and its financial implications; and

j.    rendering such other services as may be agreed upon by Eureka Capital in connection with any of the foregoing.

11.    The Debtor holds the belief that Eureka Capital is experienced in Chapter 11 cases, as well as corporate and commercial matters, and is well qualified to aid the Debtor in its efforts to secure a buyer for its assets.

12.    The prompt retention of Eureka Capital is critical to the Debtor's sale efforts and ongoing operations. The Debtor will file a Section 363 motion simultaneously or shortly after the filing of this motion, in order to establish sale procedures for the sale of a substantial portion of its assets.

13.    To the best of the Debtor's knowledge, Eureka Capital has no connection with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or any person employed by the United States Trustee, except as expressly set forth above and in the Affidavit of Mark Hyman attached hereto as Exhibit B and made a part hereof. Based thereon, the Debtor understands and believes that

4

Eureka Capital is a "disinterested person," as that term is defined in Section 101(14) of the Code and that it represents no interests adverse to this estate.

14.     Under the terms of the Agreement, Eureka Capital shall be paid a monthly retainer of $50,000 payable at the beginning of each month, and an additional success fee of $175,000 to be payable in cash upon consummation of the transaction as detailed in the Agreement.

15.     Eureka Capital has rendered and continues to render services to the Debtor in the Chapter 11 Case from and since the Petition Date.  Accordingly, the Debtor requests that the Court approve the employment of Eureka Capital retroactive to September 24, 2013.

16.     Notice of the filing of this Motion has been provided to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) counsel to the Debtor's prepetition secured lenders; (c) the Debtor's 20 largest unsecured creditors pursuant to Bankruptcy Rule 1007(d); and (d) all other parties who have requested notice and service of pleadings.  In light of the nature of the relief requested, the Debtor submits that no other or further notice is required.

WHEREFORE, Keywell L.L.C., debtor herein, respectfully requests the entry of an order, a proposed form of which is filed herewith and made a part hereof, authorizing it to employ Eureka Capital Markets, LLC as its investment banker in the Chapter 11 Case pursuant to the terms of the Agreement, and that it be awarded such other relief as is just.

Respectfully Submitted:

KEYWELL L.L.C.

By:  /s/ Howard L. Adelman
        One of its proposed attorneys

HOWARD L ADELMAN, ESQ. (ARDC# 0015458)
ERICH S. BUCK, ESQ. (ARDC # 6274635)
ALEXANDER F. BROUGHAM, ESQ. (ARDC  # 6301515)
5

ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Keywell L.L.C.**


ACCEPTED THIS 26th DAY OF SEPTEMBER, 2013:

EUREKA CAPITAL MARKETS, LLC

By: _____
    Mark Hyman
    Its Senior Managing Director

# Exhibit A

# Retention Agreement between

# Eureka Capital and the Debtor

# ✖ EUREKA

April 26, 2013

Mr. J. Mark Lozier
President & CEO
Keywell L.L.C.
11900 South Cottage Grove Avenue
Chicago, IL 60628

Dear Mr. Lozier,

The purpose of this letter (including all Exhibits attached hereto) (the "Agreement") is to set forth the terms and conditions on which Eureka Capital Markets, LLC ("Eureka") will serve Keywell L.L.C. ("Keywell" or the "Company") as exclusive financial advisor (1) in connection with a placement of junior debt or equity capital financing for the Company (the "Financing") and (2) in connection with a potential sale of the Company's business (the "Sale"). Eureka will advise the Company on the Financing and/or the Sale on a best-efforts basis on terms satisfactory to the Company.

For purposes of this Agreement, the term Financing shall include, without limitation, any financing or recapitalization (whether in one or a series of transactions). This Agreement does not apply to any senior debt financing.

For purposes of this Agreement, the term Sale shall include, without limitation, any sale (whether in one or a series of transactions) of all or a substantial amount of the assets or capital stock of the Company; any merger, joint venture, other business/strategic combination involving the Company; or any recapitalization, restructuring (whether out-of-court or in-court) or liquidation of the Company or any combination thereof.

In the event the Company elects to file for Chapter 11 Bankruptcy, the Company agrees to use diligent efforts to retain Eureka as its financial advisor, subject to approval of the bankruptcy court administering the Chapter 11 proceeding and any other parties with approval rights over such matter.

1. <u>PROFESSIONAL SERVICES</u>: In connection with the potential Financing or Sale (individually and collectively, the "Transaction"), Eureka will provide assistance to the Company in the following areas, as requested by the Company:

- Creating a list of prospective lenders and/or investors (the "Potential Lenders List") and acquirers ("Potential Purchasers List"). The Potential Lenders List and the Potential Purchasers List will be attached to this Agreement as Exhibit IIa and Exhibit IIb, respectively, and such lists will be updated by mutual agreement of Eureka and Keywell as appropriate throughout the Transaction process;

- Preparing a Confidential Information Memorandum ("CIM"), describing the Company, its operations, its historical performance and its future prospects;

- Screening of prospective lenders, investors and/or acquirers, including soliciting their interest in the Company and furnishing them with the CIM and other materials (subject to confidentiality arrangements acceptable to the Company);

- Carrying out of appropriate due diligence with respect to all prospective lenders, investors and/or acquirers and assisting the Company in evaluating any risks with regard to any of them;

- Arranging, upon the prior approval of the Company, for a select group of prospective lenders, investors, and/or acquirers to conduct business investigations of the Company;

- Assisting the Company in evaluating its alternatives with respect to a possible Transaction; and

- Negotiating the financial terms of the Transaction as selected by the Company, including economic terms, form of consideration and transaction structure.

It is the mutual intention of the Company and Eureka that the Company not compete with Eureka in the Transaction process. In order to coordinate our efforts, during the term of our engagement hereunder, neither the Company nor any representative thereof (except Eureka) will initiate discussions regarding a Transaction except through Eureka. In the event the Company or its management receives an inquiry regarding a Transaction, it will promptly advise Eureka of such inquiry in order that Eureka may evaluate such prospective acquirer and its interest and assist the Company in any resulting negotiations. If a potential lender, investor and/or acquirer approaches Eureka or the Company, that party shall be deemed to be a Potential Lender or a Potential Purchaser and added to the Potential Lenders List or the Potential Purchasers List as appropriate.

2.  <u>PROFESSIONAL FEES</u>:  The Company shall pay to Eureka a non-refundable monthly retainer of $50,000 (the "Retainer").  The first Retainer to be paid concurrently with the execution of this Agreement and the subsequent Retainers to be paid at the beginning of each month thereafter.  All monthly Retainers earned in excess of $75,000 will be credited toward the Transaction Fee (as defined below) the Company shall pay to Eureka.

In addition, if a Transaction is consummated, the Company shall pay to Eureka a transaction fee (the "Transaction Fee") equal to:

(a)  five percent (5.0%) of the Total Investment (as defined below) received or to be received by the Company, its Equityholders (as defined below) and affiliates, directly or indirectly arising from or connected to the Financing (the "Transaction Fee").

For purposes of this Agreement, Total Investment means (i) the sum of cash disbursed or committed to by the lender and/or investor in connection with the Financing, or (ii) the amount of funds such lender and/or investor lends to or invests in the Company during a period of 12 months from the first placement of financing by the lender and/or investor.

<u>or</u>

(b)  two percent (2.0%) of the Total Consideration (as defined below) received or to be received by the Company, its Equityholders (as defined below) and affiliates, directly or indirectly arising from or connected to the Sale.

For purposes of this Agreement, Total Consideration means (without duplication) the sum of (i) cash plus the aggregate fair market value (as of the closing date) of all notes, stock and other property (including, but not limited to, any contingent payments; earn-outs; non-competition agreements; and lease payments and employment/consulting/bonus contracts in excess of standard market compensation or the like) paid or payable by the acquirer in connection with the Sale, including the aggregate fair market value (as of the closing date) of any stock or equity interest retained or rolled over by Equityholders pursuant to the Sale, plus (ii) the face amount of any liabilities for borrowed money (including accrued interest), capital leases, long-term liabilities and preferred stock (including accrued dividends) of the Company assumed, retired or defeased in connection with the Sale, plus (iii) the fair market value (as of the closing date) of any assets other than cash retained by the Company pursuant to the Sale (net of retained liabilities) or, without duplication of fees, of

any assets (net of liabilities) distributed to Equityholders or affiliates after the date of this Agreement (other than regularly scheduled cash dividends out of retained earnings consistent with the Company's past practices.

If all or a portion of the Total Consideration in the Sale consists of publicly traded securities, the fair market value thereof shall be determined by the closing or last sales price of such securities on the trading day prior to the closing date without any discount on account of blockage, restrictions upon transfer or other special factors.

If all or a portion of the Total Consideration includes liabilities for borrowed money or preferred stock (other than publicly traded securities), contracts, employment agreements, non-competition agreements, lease payments or extensions and the like involving scheduled fixed payments, then the Transaction Fee attributed to that portion of the Total Consideration will be due if and when such payments are made.

If all or a portion of the Total Consideration payable in connection with a Sale includes future payments which cannot reasonably be deemed fixed as of the closing date (e.g. contingent payments or earn-outs), then the Transaction Fee attributed to that portion of the Total Consideration will be due if and when such payments are made.

If all or a portion of Total Consideration consists of property other than cash or publicly traded stock (including, but not limited to, notes and non-publicly traded stock), then the fair market value of such property for purposes of determining Total Consideration shall be mutually agreed upon by the Company and Eureka in good faith. If a portion of Total Consideration is escrowed for payment on a deferred basis, then the fair market value of such property for purposes of determining Total Consideration shall be its fair market value as if it were paid on the closing date without discount on account of the timing of receipt.

For purposes of this Agreement, Equityholders shall be defined as all holders of equity interests in the Company, including, but not limited to, holders of common stock, preferred stock, warrants or convertible securities of the Company and the holders of any options or stock appreciation rights issued by the Company whether or not vested.

That portion of the Transaction Fee payable at closing, as calculated above, shall be paid in full at closing by wire transfer of immediately available funds to such account as Eureka may designate. In order to expedite payment of the Transaction Fee, the Company shall use diligent efforts to provide Eureka with any and all documents reflecting the terms of the Transaction that bear upon the calculation of the Transaction Fee hereunder by no later than five calendar days prior to the closing date.

As exclusive agent, Eureka will be compensated by the Company as specifically provided herein regardless of the extent to which Eureka may have participated in the Transaction. The Company acknowledges that this protection for Eureka is a fundamental inducement for Eureka to enter into this Agreement and expend effort on the Company's behalf.

The Company represents that no brokers, representatives or other persons (other than Eureka) have an interest in any compensation due or potentially due to Eureka pursuant to the Transaction.

If Eureka's services are required in such areas as depositions, expert testimony, related meetings, conferences, or preparation time for events outside the scope of professional services listed in Paragraph 1 above, whether by written agreement of the Company or subpoena in which Eureka's services may be relevant, the Company agrees that it will pay Eureka's then current hourly rate for the person(s) involved plus reasonable and actually incurred out-of pocket-expenses.

April 26, 2013                                                                                      Page 4 of 11
Mr. J. Mark Lozier
Keywell L.L.C.

3.   <u>EXPENSES</u>:  The Company shall reimburse Eureka within 10 business days of receipt of Eureka's invoice for all
     reasonable out-of-pocket costs and expenses incurred by Eureka in connection with this Agreement and the
     services provided herein, including, but not limited to, travel (similar to travel permitted by the Company's
     policy for its own employees), research, telecommunications, data analysis and acquisition, report production
     and other general administrative expenses.  Total expenses incurred in excess of $25,000 and individual
     expenses incurred in excess of $5,000 require the prior written approval of the Company.

4.   <u>TERM AND TERMINATION</u>:  The term of this Agreement shall commence upon receipt by Eureka of an
     executed copy of this Agreement.  The Agreement shall be in effect for a period of three (3) calendar months
     and thereafter shall continue in effect month-to-month, unless terminated by either party upon written
     notice.  Upon termination, the Company shall pay Eureka all due and outstanding professional fees and out of
     pocket expenses through termination.

     Eureka will be entitled to its Transaction Fee, as described in Section 2, in the event the Company terminates
     this Agreement with no Transaction having been consummated, and, within 12 months from the effective
     date of termination, the Company enters into a binding agreement for a Transaction (which in fact closes to a
     person or entity set forth on the Potential Lenders List or the Potential Purchasers List) to: (i) any person or
     entity (or affiliate thereof) which contacted Eureka or was contacted by Eureka during the term of this
     Agreement regarding a Transaction and is included on the Potential Lenders List or the Potential Purchasers
     List; (ii) any person or entity (or affiliate thereof) which contacted the Company or was contacted by the
     Company during the term of this Agreement regarding a Transaction and is included on the Potential Lenders
     List or the Potential Purchasers List; or (iii) any person or entity (or affiliate thereof) which reviewed the CIM
     or other materials prepared by Eureka concerning the Company, during the term of the Agreement and is
     included on the Potential Lenders List or the Potential Purchasers List.  Within 30 days of the effective date of
     such termination, Eureka will provide to the Company and the Company will provide to Eureka in writing all
     persons and entities which contacted or were contacted by the respective parties or who reviewed the CIM,
     for purposes of compiling a final version of the Potential Lenders List and the Potential Purchasers List (Exhibit
     IIa and Exhibit IIb).  Nevertheless, the failure of the Company to identify a person or entity shall not preclude
     Eureka from providing sufficient proof at a later date that one or more persons or entities should have been
     included on such final version of the Potential Lenders List or the Potential Purchasers List.

5.   <u>BUSINESS INFORMATION</u>:  The Company agrees to inform Eureka promptly of all relevant information
     (financial and otherwise), meetings and decisions concerning the Company, its business and the Transaction,
     and shall make available to Eureka copies of all information relating thereto.  In addition, the Company also
     agrees to provide Eureka with reasonable access to the Company's officers, directors, employees, agents,
     accountants, counsel and other representatives as Eureka may deem reasonably necessary; provided,
     however, that Eureka contact such parties only with the prior consent of the Company.  The Company
     represents that, to its knowledge, all information supplied by it, or on its behalf, will be complete and accurate
     in all material respects and will not contain any material omissions or misstatements of fact.

     Notwithstanding the foregoing, the Company agrees and acknowledges that Eureka will be using information
     in reports and other information provided by or on behalf of the Company by other third parties involved in
     the Transaction, and that Eureka does not assume responsibility for and may rely on, without independent
     verification, the accuracy and completeness of such reports and information.

     Any conclusions or recommendations rendered by Eureka shall only represent conclusions or
     recommendations based upon the information supplied by the Company or on its behalf.  The Company
     acknowledges that any false, inaccurate or incomplete information could materially change the conclusions or
     recommendations rendered by Eureka.

6.   <u>SCOPE OF SERVICES</u>:  Eureka's services are limited to those expressly set forth in this Agreement and do not
     include legal, accounting, tax or consulting services (other than as specifically provided herein).  No fairness or

similar opinion is contemplated by the parties under this Agreement. In addition, Eureka shall have no responsibility to conduct an appraisal of any of the Company' assets.

Eureka provides its services on a best efforts basis; therefore, Eureka makes no guarantee, expressed or implied, that a Transaction will be effected as a result of the services provided under this Agreement. In addition, Eureka does not assume responsibility for the Company's underlying decision to pursue (or not pursue) any business strategy or to effect (or not effect) a Transaction. All business decisions relating to acceptance or rejection of offers, the nature of the consideration to be accepted and related matters and the negotiation of such terms shall be the Company's sole responsibility and shall be made by the Company or the Equity holders in their sole discretion.

The Company recognizes that Eureka has been retained to advise the Company only and that Eureka's services hereunder shall constitute services of an independent contractor. Any duties arising out of Eureka's engagement hereunder shall be owed solely to the Company and/or the Equityholders.

7. <u>INDEMNIFICATION/LIMITATION OF LIABILITY</u>: Since Eureka will be acting on the Company's behalf, the Company agrees to the indemnification and other obligations set forth in Exhibit I, which is an integral part hereof.

In addition, the Company hereby releases Eureka and its past, present or future partners, principals, managers, directors, officers, members and other personnel from any liability relating to the services rendered hereunder (regardless of form of action, whether in contract, negligence or otherwise); provided however, if it is determined that any such liability is due to Eureka's gross negligence or willful misconduct, Eureka's maximum liability relating to Eureka's services and this engagement shall be limited to the fees paid to Eureka. In no event shall Eureka be liable for consequential, special, incidental or punitive loss, damage or expense (including, without limitation, lost profits, opportunity costs) even if it has been advised of their possible existence. The provisions of this Section 7 (including Exhibit I) shall remain in full force and effect regardless of the completion of this engagement or termination of this Agreement.

8. <u>DISPUTE RESOLUTION</u>: This Agreement shall be interpreted under and governed by the laws of the State of Illinois. In connection with any legal action or proceeding relating to this Agreement, Eureka and the Company irrevocably and unconditionally (i) agree that any such action or proceeding shall be heard only in the United States District Court in the Northern District of Illinois located in Chicago, Illinois, or if such court does not have subject matter jurisdiction over such dispute, in such Illinois state court as may have subject matter jurisdiction over such dispute, (ii) agree to submit to the personal jurisdiction of such court, (iii) waive any objection to the laying of venue of any such action or proceeding in such court, (iv) agree not to plead or claim in any such court that such court does not have personal jurisdiction over it or that such action or proceeding has been brought in an inconvenient forum and (v) waive their right to demand trial by jury.

In the event of any suit, action, or any other proceeding between Eureka, on the one hand, and the Company, on the other hand, whether in law or equity, and whether administrative, trial, appellate or otherwise, arising out of or related to this Agreement, the non-prevailing party shall pay all of the prevailing party's costs and expenses incurred in connection with such proceeding, including (without limitation) court and arbitration costs and reasonable attorneys' fees.

9. <u>MISCELLANEOUS</u>: Any advice, written or oral, provided by Eureka pursuant to this Agreement, will be solely for the information and assistance of the Company in connection with its consideration of a Transaction and will not be reproduced, summarized, described, referred to, or furnished to any other party or used for any other purpose, except in each case with Eureka's prior written consent; provided, however, that the Company may disclose such advice to its employees and agents (including without limitation its financial advisors, accountants and counsel) without the prior consent of Eureka.

April 26, 2013                                                    Page 6 of 11
Mr. J. Mark Lozier
Keywell L.L.C.

Following the completion of any Transaction, Eureka shall have the right to describe its role in such Transaction in its marketing materials, including its Web site, and to place customary "tombstone" ads including the Company's logo at its expense announcing its role in such Transaction, provided that such materials and ads shall not disclose any economic or other material terms of such Transaction without the Company's and the Investor's consent.

This is the entire agreement between the parties pertaining to its subject matter and supersedes all prior agreements, representations and understandings of the parties. No modification of the Agreement shall be binding unless agreed to in writing by the parties. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of the Agreement, which shall remain in full force and effect.

Eureka acknowledges and agrees that it is bound by the terms of that certain letter agreement dated April 26, 2013 between Eureka and the Company with respect to the non-disclosure and non-use of Keywell Material (as such term is defined in the letter agreement). Eureka further acknowledges and agrees that this Agreement and the fact that Eureka has been engaged to represent the Company in connection with a potential Transaction are confidential Material subject to the terms of that letter agreement.

By signing this Agreement, the signing party represents that he or she has unconditional authority to enter into this Agreement on behalf of the Company.

PFS:001781.0116.873926.2

April 26, 2013                                                    Page 7 of 11
Mr. J. Mark Lozier
Keywell L.L.C.

Please indicate your acceptance of this Agreement by signing in the space below.

Sincerely,

**Eureka Capital Markets, LLC**

By: _____

        Mark Hyman
        Senior Managing Director

Accepted and agreed to this ___1st___ day of ___May___, 2013

**Keywell L.L.C.**

By: _____

        J. Mark Lozier
        President & CEO

EXHIBIT I

INDEMNIFICATION

The Company shall indemnify and hold harmless Eureka and its successors or assigns, and its respective past, present or future partners, principals, managers, directors, officers, members, consultants, advisers, subcontractors and other personnel (collectively the "Indemnified Persons") from and against any and all claims, liabilities, losses, and damages (or actions in respect thereof) (the "Claims") related to or arising out of the Transaction (as defined in the agreement to which this Exhibit I is attached (the "Agreement")) or the services performed by Eureka pursuant to the Agreement. The Company shall also promptly reimburse any Indemnified Person for any reasonable legal and other fees or expenses (the "Expenses") as incurred in connection with or relating to investigating, preparing to defend or defending any pending or threatened actions, claims or other proceedings (including any administrative or other investigation or inquiry) related to or arising out of the Transaction or the services performed by Eureka pursuant to the Agreement (whether or not such Indemnified Person is a named party in such proceeding). Notwithstanding the foregoing, the Company shall not be responsible for any Claims to the extent the same is determined in a final judgment by a court of competent jurisdiction to have resulted from actions taken or omitted to be taken by an Indemnified Person due to such Indemnified Person's gross negligence or willful misconduct.

If any action, suit, proceeding or investigation is commenced related to or arising out of the Transaction or the services performed by Eureka pursuant to the Agreement, Eureka shall promptly notify the Company; provided, however, that any failure by Eureka to notify the Company shall not relieve the Company from its obligations hereunder except to the extent such failure prejudices the defense of the claim for which indemnification is sought.

The Company shall not, without Eureka's prior written consent (such consent not to be unreasonably withheld or delayed), settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought hereunder (whether or not Eureka or any other Indemnified Person is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action or proceeding.

Eureka agrees that, without the Company's prior written consent (such consent not to be unreasonably withheld or delayed), it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under these indemnification provisions (whether or not the Company is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent (a) includes an unconditional release of the Company from all liability arising out of such claim, action or proceeding and (b) does not obligate the Company to pay any amounts to Eureka or any other person in connection therewith.

If the foregoing indemnification is for any reason unavailable or insufficient to hold any Indemnified Person harmless other than by virtue of its gross negligence or willful misconduct, the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such loss, claim or damage in such proportion as is appropriate to reflect the relative benefits received by the Company on the one hand and each Indemnified Person on the other arising out of the matters contemplated by the Agreement (whether or not the Transaction is consummated).

If any Eureka personnel (including, without limitation, past, present or future managers, directors, officers and members) is requested or required to appear as a witness in connection with any action, claim or proceeding related to or arising out of the Transaction or the services performed by Eureka pursuant to the Agreement, the

April 26, 2013
Mr. J. Mark Lozier
Keywell L.L.C.

Company shall reimburse Eureka for all reasonable expenses incurred by it in connection with such personnel appearing and preparing to appear as a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel. The Company shall compensate Eureka at Eureka's then current hourly rate for the person(s) for each hour that such personnel is involved in preparation, discovery proceedings or testimony pertaining to such action, claim or proceeding plus reasonable and actually incurred out-of-pocket-expenses.

The indemnity, reimbursement and contribution obligations of the Company shall be in addition to any liability or obligation which the Company may otherwise have, and shall be binding upon and inure to the benefit of successors and assigns of the Company and the heirs and personal representatives of an Indemnified Person.

If multiple Claims are brought against Eureka with respect to at least one of which indemnification is permitted under applicable law and provided for under this Exhibit I, the Company agrees that any judgment, arbitration award or other monetary award shall be conclusively deemed to be based on the Claims as to which indemnification is so permitted and provided for.

The provisions of this Exhibit I shall apply to Eureka's engagement by the Company as described in the Agreement (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement or the termination of the Agreement.

Accepted and agreed to this _1st_ day of _May_ , 2013

Keywell L.L.C.

By: _____
    J. Mark Lozier
    President & CEO

PFS:001781.0116.873926.2

April 26, 2013
Mr. J. Mark Lozier
Keywell L.L.C.

**EXHIBIT IIA**

**POTENTIAL LENDERS LIST**

April 26, 2013
Mr. J. Mark Lozier
Keywell L.L.C.

EXHIBIT IIB

POTENTIAL PURCHASERS LIST

# ⌘ EUREKA

July 17, 2013

Mr. J. Mark Lozier
President & CEO
Keywell L.L.C.
11900 South Cottage Grove Avenue
Chicago, IL 60628

Dear Mr. Lozier,

This letter will serve as an amendment to our engagement letter dated May 1, 2013 ("Agreement"). It is agreed that the Section 2 of the Agreement should be amended to read:

PROFESSIONAL FEES:  The Company shall pay to Eureka a non-refundable monthly retainer of $50,000 (the "Retainer").  The first Retainer to be paid concurrently with the execution of this Agreement and the subsequent Retainers to be paid at the beginning of each month thereafter. All monthly Retainers earned in excess of $75,000 will be credited toward the Transaction Fee (as defined below) the Company shall pay to Eureka.

In addition, if a Transaction is consummated, the Company shall pay to Eureka a transaction fee (the "Transaction Fee") equal to $700,000.

The Transaction Fee shall be paid in full at closing by wire transfer of immediately available funds to such account as Eureka may designate.

As exclusive agent, Eureka will be compensated by the Company as specifically provided herein regardless of the extent to which Eureka may have participated in the Transaction.  The Company acknowledges that this protection for Eureka is a fundamental inducement for Eureka to enter into this Agreement and expend effort on the Company's behalf.

The Company represents that no brokers, representatives or other persons (other than Eureka) have an interest in any compensation due or potentially due to Eureka pursuant to the Transaction.

If Eureka's services are required in such areas as depositions, expert testimony, related meetings, conferences, or preparation time for events outside the scope of professional services listed in Paragraph 1 above, whether by written agreement of the Company or subpoena in which Eureka's services may be relevant, the Company agrees that it will pay Eureka's then current hourly rate for the person(s) involved plus reasonable and actually incurred out-of-pocket-expenses.

Except as provided herein, the Agreement shall remain in full force and effect.

July 17, 2013                                                                                          Page 2 of 2
Mr. J. Mark Lozier
Keywell L.L.C.

Please indicate your acceptance of this Agreement by signing in the space below.

Sincerely,

**Eureka Capital Markets, LLC**

By: _____

    Mark Hyman
    Senior Managing Director



Accepted and agreed to this ___*17th*___ day of ___*JULY*_____, 2013

**Keywell L.L.C.**

By: _____, *EVP + CFO*_____
    J. Mark Lozier
    President & CEO

# ✺ EUREKA

September 13, 2013

Mr. J. Mark Lozier
President & CEO
Keywell L.L.C.
11900 South Cottage Grove Avenue
Chicago, IL 60628

Dear Mr. Lozier,

This letter will serve as a second amendment to our engagement letter dated May 1, 2013 as amended on July 17, 2013 ("Agreement"). It is agreed that the Agreement should be amended to read:

<u>Paragraph 3 on Page 1:</u>

For purposes of this Agreement, the term Sale shall include, without limitation, any sale (whether in one or a series of transactions) of all or portion of the assets or capital stock of the Company; any merger, joint venture, other business/strategic combination involving the Company; or any recapitalization, restructuring (whether out-of-court or in-court), including by way of a sale of assets under section 363 of the Bankruptcy Code or a sale of assets or transfer or issuance of equity under a chapter 11 plan of reorganization, or liquidation of the Company or any combination thereof.

<u>Section 1:  Add the following as a last bullet point:</u>

- Advise the Company on a plan of reorganization, if applicable.

<u>Section 2:</u>

PROFESSIONAL FEES:  The Company shall pay to Eureka a non-refundable monthly retainer of $50,000 (the "Retainer").  The first Retainer to be paid concurrently with the execution of this Agreement and the subsequent Retainers to be paid at the beginning of each month thereafter.

In addition, if a Transaction is consummated, the Company shall pay to Eureka a transaction fee (the "Transaction Fee") equal to $175,000.

The Transaction Fee shall be paid in full upon consummation of the first Transaction by wire transfer of immediately available funds to such account as Eureka may designate.

As exclusive agent, Eureka will be compensated by the Company as specifically provided herein regardless of the extent to which Eureka may have participated in the Transaction.  The Company acknowledges that this protection for Eureka is a fundamental inducement for Eureka to enter into this Agreement and expend effort on the Company's behalf.

The Company represents that no brokers, representatives or other persons (other than Eureka) have an interest in any compensation due or potentially due to Eureka pursuant to the Transaction.

September 13th, 2013                                                    Page 2 of 2
Mr. J. Mark Lozier
Keywell L.L.C.

If Eureka's services are required in such areas as depositions, expert testimony, related meetings, conferences, or preparation time for events outside the scope of professional services listed in Paragraph 1 above, whether by written agreement of the Company or subpoena in which Eureka's services may be relevant, the Company agrees that it will pay Eureka's then current hourly rate for the person(s) involved plus reasonable and actually incurred out-of pocket-expenses.

Except as provided herein, the Agreement shall remain in full force and effect.

Please indicate your acceptance of this Agreement by signing in the space below.

Sincerely,

**Eureka Capital Markets, LLC**

By:  _____

Mark Hyman
Senior Managing Director

Accepted and agreed to this _13th_ day of _SEPTEMBER_, 2013

Keywell L.L.C.

By: _____, EVP + CFO
J. Mark Lozier
President & CEO

Exhibit B

Affidavit of Disinterestedness of

Mark Hyman

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13 B 37603 |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | |

## AFFIDAVIT OF DISINTERESTEDNESS OF MARK HYMAN

I, Mark Hyman, under penalties of perjury as provided under 28 U.S.C. § 1746, hereby

certify that the following is true and correct to the best of my knowledge, information and belief:

1.      I am the Senior Managing Director of the firm of Eureka Capital Markets, LLC

("**Eureka Capital**"), a financial services firm with offices in California and New York.  I am

duly authorized to make this "Affidavit" on behalf of Eureka Capital.  This Affidavit is made in

connection with the motion of the Debtor to employ Eureka Capital as its investment banker (the

"**Motion**").

2.      Eureka Capital has substantial experience in the sale of assets of businesses.

3.      Neither I, Eureka Capital, nor any associate of Eureka Capital has any connection

with the United States Trustee or any person employed by the United States Trustee.

4.      Neither I, Eureka Capital, nor any associate of Eureka Capital has any connection

with Keywell L.L.C. (the "**Debtor**"), or any of its creditors, or any other party in interest or their

respective attorneys or accountants, except that:

  a.   Prior to the Debtor's Chapter 11 filing on the Petition Date, Eureka Capital was
       retained by the Debtor and commenced marketing efforts to locate prospective
       lenders, investors and/or buyers (some of which are listed as creditors).
       Furthermore, in past years Eureka has had contact with some of these parties
       (including a number of the deferred compensation group) on other assignments

2

for the Debtor. Finally, Eureka has had contacts with several listed creditors while working on assignments for other clients in the metals sector.

b. Fragomen, Del Rey, Bernsen and Loewy LLP (which I understand is a creditor of the Debtor) provided me with legal advice on a personal immigration matter in early 1980's.

c. Prior to joining Eureka, in 1998 I provided financial advice to the Chairman of the Board of Kaman Corporation (which I understand is the parent company of Kaman Industrial Technologies, a creditor of the Debtor).

d. In addition, Eureka Capital may have served, may currently serve and/or may serve in the future as a professional in other matters, wholly unrelated to the Debtor or its Chapter 11 case, in which prospective purchasers of the Debtor were, are or may be involved as clients or counter parties and/or in which creditors of the Debtor and other parties-in-interest may be involved.

5.    Prior to the filing of the Debtor's chapter 11 case on September 24, 2013 (the "**Petition Date**"), Eureka Capital received monthly retainer fees from the Debtor totaling $250,000 as a condition of performing services for the Debtor. As of the Petition Date, no amounts were owed by the Debtor on account of Eureka Capital's services to the Debtor.

6.    Neither I, Eureka Capital, nor any associate of Eureka Capital has any connection with any other party in interest or their respective attorneys.

7.    Neither I, Eureka Capital, nor any associate of Eureka Capital represents any interests adverse to the Debtor or its estate.

8.    Based on the foregoing, I believe that Eureka Capital Markets, LLC is a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

9.    I have advised the Debtor of Eureka Capital's willingness to serve as the Debtor's agent for the purpose of advertising, marketing and selling the assets of the Debtor as a going concern and/or any other transaction that maximizes value to all constituencies, and the payment for said services is set forth in the Motion provided to this Court.

3

Affiant further sayeth not.

Dated: _9/26/2013_____

_____
Mark Hyman, Senior Managing Director

4