## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |

**ORDER (A) APPROVING THE SALE PROCESS, BIDDING PROCEDURES,
BID PROTECTION, BREAK-UP FEE AND FORM OF ASSET PURCHASE
AGREEMENT FOR THE SALE OF CERTAIN ASSETS OF THE ESTATE;
(B) SCHEDULING A PUBLIC AUCTION AND AUTHORIZING THE SALE
OF THE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND INTERESTS; AND (C) AUTHORIZING PROCEDURES FOR THE ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the motion (the **"Sale Motion"**) of Keywell L.L.C., the debtor and debtor-in-possession (the **"Debtor"**) in the above-captioned chapter 11 case (the **"Chapter 11 Case"**), for the entry of orders: (a) approving the sale process, bidding process, break-up fee, bid protection, and form of asset purchase agreement by and between the Debtor and Cronimet Holdings, Inc. and Cronimet Corporation (or their designee, **"Cronimet"**) for the sale of certain assets of the estate; (b) scheduling a public auction and authorizing the sale of the assets free and clear of liens, claims, encumbrances and interests; and (c) authorizing the assumption and assignment of executory contracts and unexpired leases; it appearing that the relief requested in the Sale Motion is in the best interest of the Debtor's estate and its creditors; this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; the Sale Motion and the opportunity to object being a core proceeding pursuant to 28 U.S.C. § 157; adequate notice of the Sale Motion having been given to all parties entitled thereto; and it appearing that no other notice need be given or is required under the circumstances; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

1. The Debtor has articulated good and sufficient reasons for approval of the Bidding Procedures, the Break-Up Fee and the Bid Protection in connection with the sale of the Transferred Assets[1], and other assets of the Debtor (the "**Residual Assets**") not subject to the APA (as defined below).

2. The Bidding Procedures, the Break-Up Fee, the Bid Protection, and the proposed overbid protection for the Residual Assets as set forth in the Bidding Procedures (the "**Residual Assets Bid Protection**"), are reasonable and appropriate to maximize the return on the Transferred Assets and the Residual Assets.

3. The Break-Up Fee is fair and reasonable, taking into account the cash and other consideration provided by Cronimet, was negotiated by the parties in good faith and at arm's length, and is: (a) an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of §§ 503(b) and 507(a)(2) of the Bankruptcy Code; (b) commensurate to the real and substantial benefit that Cronimet has conferred to the Debtor's estate; (c) reasonable and appropriate, in light of the size and nature of the proposed sale and comparable transactions, the commitments that have been made, and the efforts that Cronimet has and will continue to expend; (d) necessary to induce Cronimet to continue to pursue the sale and to continue to be bound by the Asset Purchase Agreement and the Rail Car Purchase Agreement, each dated September 20, 2013, and the Term Sheet for Contingent Payments by and between the Debtor and Cronimet (collectively, the "**APA**"); and (e) a necessary cost of the sale.

4. The Break-Up Fee is an essential inducement and condition relating to the entry by Cronimet into, and its continuing obligations under, the APA. Unless Cronimet is assured

---

[1] Capitalized terms not defined herein shall have the meanings ascribed in the Approved Bidding Procedures.

that the Break-Up Fee will be made in the circumstances described herein and in the APA,

Cronimet is unwilling to remain obligated to purchase the Transferred Assets or be otherwise

bound under the APA (including the obligation to maintain its offer while such offer is subjected

to higher or otherwise better offers as contemplated by the Bidding Procedures). The Break-Up

Fee has induced Cronimet to submit a bid that will serve as a minimum or floor bid on which the

Debtor, its creditors, and other bidders can rely. Cronimet has provided a material benefit to the

Debtor and its creditors by increasing the likelihood that the best possible purchase price for the

Transferred Assets will be received. Accordingly, the Bidding Procedures and the Break-Up

Free are reasonable and appropriate terms and conditions of the contemplated sale and represent

the best method for maximizing value for the benefit of the Debtor's estate.

**NOW, THEREFORE, IT IS HEREBY ORDERED, EFFECTIVE IMMEDIATELY:**

5.     The Sale Motion is hereby granted in the manner and to the extent provided

herein.

6.     The Bidding Procedures set forth on <u>Exhibit A</u> attached and made a part hereof,

including all deadlines, the Bid Protection, and Break-Up Fee set forth therein (the **"Approved**

**Bidding Procedures"**), and the form of the APA are approved in all respects subject to the terms

hereof.

7.     The Debtor is hereby authorized without the necessity of further order of this

Court, to grant Bid Protection in favor of Cronimet in the manner set forth in the Approved

Bidding Procedures.

8.     The Debtor is hereby authorized without the necessity of further order of this

Court, subject to consultation with the Lenders and the Official Committee of Unsecured

Creditors (the "**Committee**"), to grant the Residual Assets Bid Protection in the manner set forth in the Approved Bidding Procedures.

9.      All persons or entities who submit a Qualifying Bid for any of the Transferred Assets or the Residual Assets shall be deemed to have read and understood the terms and conditions of the Approved Bidding Procedures and shall comply with and be bound by such Approved Bidding Procedures.

10.      All objections to the Sale Motion or the relief of requested therein, to the extent they pertain to the entry of this Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

11.      The Debtor is hereby authorized and empowered to take such steps, expend such sums of money (including the payment of closing costs), and do such other things as may be necessary to implement and effect the terms and requirements consistent with this Order.

12.      The Debtor is authorized to pay the Break-Up Fee to Cronimet in accordance with the Approved Bidding Procedures, as and if applicable, provided, however, as part of the consideration for the Break-Up Fee, Cronimet shall direct its attorneys, Greenberg Traurig, P.A., to direct and allow Golder & Associates ("**Golder**") to provide the Debtor or any Bidder who has executed a Non-Disclosure Agreement, at the Debtor's or the Bidder's expense, with the results of Golder's Phase I investigation of the assets subject to the APA; provided, further, that Cronimet only consents to the disclosure of the Phase I investigation and not to any other investigation Golder may have undertaken in respect of those assets. The Debtor shall keep such information provided by Golder confidential, except as required by the Approved Bidding Procedures.

4

13.    In the event the Debtor is obligated to pay the Break-Up Fee, such fee shall be paid at closing out of the Debtor's proceeds from the sale of the Transferred Assets after the payment to creditors holding valid and subsisting liens on some or all of the Transferred Assets, provided, however, that to the extent said proceeds are insufficient to pay the Break-Up Fee in full or in the event a Break-Up Fee is due and owing pursuant to Section 9.02(b) and (c) of the APA, then in such event, the Break-Up Fee or any unpaid portion thereof shall be entitled to treatment as an allowed administrative priority claim under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

14.    Attached hereto as Exhibit B is a notice (the **"Sale Notice"**) of hearing and auction dates for the sale (the **"Asset Sale"**) of the Transferred Assets and the Residual Assets and related deadlines. The auction (the **"Auction"**) for the Transferred Assets and the Residual Assets shall take place on December 2, 2013 at 10:00 a.m. (Chicago time) at the offices of Patzik, Frank & Samotny Ltd., 150 South Wacker Drive, Suite 1500, Chicago, Illinois 60606, or such later time or other places as the Debtor shall notify all Qualifying Bidders.  In the event that Cronimet is the only Qualifying Bidder, the Debtor, after consultation with the Committee, shall have the right to cancel the Auction and proceed directly to the Sale Hearing to seek entry of a Sale Order approving the APA.

15.    The Court shall conduct a hearing to consider the approval of the Asset Sale (the **"Sale Hearing"**), on December 4, 2013, at 10:00 a.m. at the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 744, Chicago, Illinois 60604, or such later time or other place as the Debtor shall notify all Qualifying Bidders.

16.     The deadline for the submission of the Qualifying Bids (the **"Bid Deadline"**) shall be on or before 5:00 p.m. (prevailing Central time) on November 26, 2013.

17.     Subject to Section 363(k) of the Bankruptcy Code, including the right of the Committee to object for cause under Section 363(k), paragraph 8 of the Final Cash Collateral Order entered on October 16, 2013 (the **"Cash Collateral Order"**), or further order of Court, the Lenders shall have the right to credit bid, up to the full amount of the Lenders' secured claims at the time of the Auction, on the portion of the Transferred Assets that constitutes the Lenders' Prepetition Collateral (as defined in the Cash Collateral Order).  Furthermore, in the event the Lenders desire to credit bid, then, in such event, the Lenders shall be conclusively deemed to have satisfied paragraph 3 (Credit Worthiness) and paragraph 5(c) (Deposit) of the Approved Bidding Procedures.  Except as the Court may hereafter order otherwise, the Lenders' secured claims, including the Prepetition Indebtedness (as defined in the Cash Collateral Order) and all postpetition interest, attorneys' fees and costs that are due and owing as of the closing date, shall be paid in full in cash at the Prevailing Bid Closing from the proceeds of the Transferred Assets that constitute the Lenders' Prepetition Collateral; provided, however, any payments made to Lenders at closing shall be provisional unless and until the Lenders' secured claims are allowed pursuant to the terms of the Cash Collateral Order; provided further that all rights are reserved with respect to the Committee seeking to disallow, delay, or enjoin any such payments.

18.     All objections to the sale of the Transferred Assets or the Residual Assets must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules for the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division; (c) be filed on or before 5:00 p.m. (prevailing Central time) on November 26, 2013 (the **"Sale Objection Deadline"**), with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern

Division, Dirksen Federal Building, 219 S. Dearborn, Room 713, Chicago, Illinois 60604 (the

"**Court Clerk**"), with copies served upon, so as to be received on or before the Sale Objection

Deadline by, the following parties (collectively, the "**Noticed Parties**"): (i) counsel for the

Debtor, Howard L. Adelman and Erich S. Buck, of Adelman & Gettleman, Ltd., 53 West

Jackson Boulevard, Suite 1050, Chicago, Illinois, 60604; (ii) counsel to the Lenders, Steven B.

Towbin and Gordon E. Gouveia, Shaw Fishman Glantz & Towbin LLC, 321 N. Clark Street,

Suite 800, Chicago, Illinois 60654; (iii) counsel to Cronimet, Robert A. Soriano, Greenberg

Traurig, P.A., Courthouse Plaza, 625 East Twiggs Street, Suite 100, Tampa, Florida 33602; (iv)

Office of the United States Trustee, 219 S. Dearborn Street, Room 873, Chicago, Illinois 60604;

and (v) counsel for the Committee, David A. Agay and Sean D. Malloy, McDonald Hopkins

LLC, 300 North LaSalle Street, Suite 2100, Chicago, Illinois 60654. All objections must state

with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

 19. On or before November 16, 2013, the Debtor will file a notice (the "**Assumption

Notice**") with the Court and serve same, by facsimile or overnight delivery, on each non-debtor

party to any executory contract or unexpired lease which the Debtor may elect to assume and

assign in conjunction with the Asset Sale (the "**Executory Contracts**," and each, an "**Executory

Contract**"). The Assumption Notice, which shall be substantially in the form attached hereto as

Exhibit C, shall (a) state the cure amounts that the Debtor believes are necessary to assume and

assign such Executory Contracts pursuant to Section 365 of the Bankruptcy Code (the "**Cure

Amount(s)**"), and (b) notify the non-debtor party that such party's contract or lease may be

assumed and assigned to a purchaser of the Transferred Assets and/or the Residual Assets to be

identified at the conclusion of the Auction (the "**Proposed Assumption/Assignment**"). In

addition, if the Debtor identifies additional Executory Contracts that might be assumed by the

7

Debtor and assigned to the Prevailing Bidder not set forth in the original Assumption Notice, the

Debtor shall promptly send a supplemental notice (a "**Supplemental Assumption Notice**") to

the applicable counterparties to such additional Executory Contracts.

20.    Unless the non-debtor party to an Executory Contract files an objection (the

"**Cure Amount/Assignment Objection**") to (a) their scheduled Cure Amount and/or (b) the

Proposed Assumption/Assignment on or before the later of (i) 5:00 p.m. (prevailing Central

time) on December 2, 2013, or (ii) to the extent applicable, five (5) business days after service of

the relevant Supplemental Assumption Notice (the "**Cure/Assignment Objection Deadline**")

with the Court Clerk, and serves a copy of the Cure Amount/Assignment Objection upon, so as

to be received no later than the Cure/Assignment Objection Deadline by, the Noticed Parties,

then such non-debtor party (A) will be forever barred from objecting to the Cure Amount and

from asserting any additional cure or other amounts with respect to such Executory Contract and

the Debtor shall be entitled to rely solely upon the Cure Amount, and (B) will be deemed to have

consented to the assumption, assignment and/or transfer of such Executory Contract, and will be

forever barred and estopped from asserting or claiming against the Debtor, the Prevailing Bidder

and/or the Back-Up Bidder, or any other assignee of the relevant Executory Contract that any

additional amounts are due or defaults exist, or conditions to assumption, assignment and/or

transfer must be satisfied, under such Executory Contract. Notwithstanding the foregoing, each

such non-debtor party shall retain the right to object to the assumption, assignment or transfer of

its Executory Contract based solely on the issue of whether the Prevailing Bidder or Back-Up

Bidder can provide adequate assurance of future performance as required by Section 365 of the

Code ("**Adequate Assurance Objection(s)**").

8

21.     If an objection challenges a Cure Amount, the objection must set forth the cure

amount being claimed by the objecting party (the "**Claimed Cure Amount**") with the

appropriate documentation in support thereof.  Upon receipt of a Cure Amount/Assignment

Objection, the Debtor in consultation with the Committee is authorized, but not directed, to

resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting party

to any Executory Contract without further order of the Court.  In the event that the Debtor and

any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection

prior to the Sale Hearing, the Court will resolve any such Cure Amount/Assignment Objection at

the Sale Hearing. In addition, the Court shall resolve any Adequate Assurance Objections at the

Sale Hearing.

22.     The Sale Notice and Assumption Notice to be issued in connection with the

proposed Asset Sale substantially in the forms attached hereto as Exhibits B and C, respectively,

are hereby approved and incorporated herein.

23.     The Sale Hearing may be adjourned, from time to time, without further notice to

creditors or other parties in interest by announcement of said adjournment in open court.

24.     Pursuant to Bankruptcy Rules 2002(a) and 6004, the Debtor be and is hereby

ordered and directed to serve a copy of the Sale Notice and the Approved Bidding Procedures to:

(a) all creditors in this Chapter 11 Case; (b) counsel for the Committee; (c) counsel for the

Lenders; (d) counsel for Cronimet; (e) all parties to the Debtor's executory contracts and

unexpired leases; (f) the United States Trustee's Office in this District; (g) all entities reasonably

known by the Debtor (or its representatives and retained professionals) to have an Interest in the

Transferred Assets or the Residual Assets to be sold; (h) the District Director of the Internal

Revenue Service for the Northern District of Illinois; (i) the Office of the Attorney General or

applicable taxing authority for each state where the Transferred Assets or the Residual Assets are

located; (j) all taxing authorities identified in the Bankruptcy Schedules filed in this proceeding;

(k) all equity security holders of the Debtor; and (l) all other entities that have filed requests for

notices pursuant to Rule 2002 of the Bankruptcy Rules (collectively, the **"Notice Recipients"**),

by regular mail within five (5) business days of entry of this Order, and such manner of notice is

hereby found to be adequate and sufficient notice of the relief sought in the Sale Motion,

including the sale of the Transferred Assets and the Residual Assets and the assumption and

assignment of executory contracts and unexpired leases.

25.    Any Notice Recipient may obtain a copy of the APA, the Sale Motion and any

exhibits attached thereto, and/or the proposed Sale Order upon written request directed to

counsel for the Debtor, Adelman & Gettleman, Ltd., Attn: Erich S. Buck, 53 West Jackson

Blvd., Chicago, Illinois 60604 (ebuck@ag-ltd.com).

26.    Except as otherwise provided in this Order, the Debtor reserves the right, as it

may reasonably determine to be in the best interests of its estate after consultation with the

Committee and the Lenders, to: (a) determine which bidders are Qualifying Bidders; (b)

determine which bids are Qualifying Bids; (c) determine which Qualifying Bid or combination

of Qualifying Bids is the highest or otherwise best proposal and which is the next highest or

otherwise best proposal; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in

conformity with the requirements of the Approved Bidding Procedures or the requirements of the

Bankruptcy Code; or (iii) contrary to the best interests of the Debtor and its estate, provided,

however, that no bid shall be rejected solely on the basis that it is a credit bid. The Debtor, in

consultation with the Committee, further reserves all rights to impose, at or prior to the Auction,

additional terms and conditions on the sale of the Transferred Assets and/or the Residual Assets,

to extend or adjourn any deadlines set forth herein, and to take any other actions with respect to

the Auction, the Sale Hearing or the sale of the Transferred Assets and/or the Residual Assets

which in its business judgment are reasonably necessary to preserve the bankruptcy estate or

maximize the value thereof and which are not substantially inconsistent with the Approved

Bidding Procedures, the APA or any order of the Court.

27.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and

this Order shall be effective immediately upon its entry.

28.    This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation or interpretation of this Order.

Dated: **2 1 OCT 2013**

ENTER:

UNITED STATES BANKRUPTCY JUDGE

*This order prepared by:*
Erich S. Buck (ARDC No. 6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Telephone No. (312) 435-1050

11

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |

### KEYWELL L.L.C. – BIDDING PROCEDURES

These Bidding Procedures describe the process by which the above-captioned debtor and the debtor-in-possession (the "**Debtor**") is authorized to conduct a sale by a public auction (the "**Auction**") of a substantial portion of its assets (the "**Transferred Assets**") subject to the Cronimet APA (as hereinafter defined) and other assets of the Debtor (the "**Residual Assets**") not subject to the Cronimet APA (individually or collectively, the "**Sale**"). These Bidding Procedures were approved by order dated October ___, 2013 (the "**Bidding Procedures Order**") of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Court**") pursuant to that certain Motion of the Debtor for the Entry of an Order: (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-up Fee and Form of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling a Public Auction And Authorizing the Sale of the Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases (the "**Sale Motion**"). Copies of the Sale Motion will be made available upon request as provided in the Notice of Sale to which these Bidding Procedures are attached (the "**Notice of Sale**").

**(1)    Assets to be Sold**

These Bidding Procedures govern the procedure under which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest and best offer(s) for the Transferred Assets and/or the Residual Assets. The sale of the Transferred Assets shall be subject to the representations, warranties, covenants and other terms and conditions contained in that certain (a) Asset Purchase Agreement and (b) Term Sheet for Contingent Payments Agreement between Cronimet Holdings, Inc., a Delaware corporation, and the Debtor, and (c) that certain Rail Car Asset Purchase Agreement between Cronimet Corporation, a Pennsylvania Corporation, and the Debtor (Cronimet Holdings, Inc. and Cronimet Corporation are hereinafter referred to, collectively, as "**Cronimet**," and the a aforementioned agreements are collectively referred to as the "**Cronimet APA**"), except as provided therein, on an "as is, where is" and "with all faults" basis and without other representations and warranties, express, implied or statutory, written or oral of any kind, nature or description.

**(2)**     **Bidding Procedures Notice**

The Debtor has served by first-class mail the Bidding Procedures and the Notice of Sale on: (i) all creditors of the estate, and to counsel for the Official Committee of Unsecured Creditors (the "**Committee**"); (ii) all entities reasonably known by the Debtor (or its representatives and retained professionals) to have an Interest in the Transferred Assets or the Residual Assets to be sold; (iii) all parties to any executory contracts and unexpired leases that the Debtor may seek to be assumed and assigned; (iv) counsel to the Lenders; (v) counsel to Cronimet; (vi) the Office of the United States Trustee for this District; (vii) the District Director of the Internal Revenue Service for the Northern District of Illinois; (viii) the Office of the Attorney General or applicable taxing authority for each state where the Transferred Assets or the Residual Assets are located; (ix) all taxing authorities identified in the Bankruptcy Schedules filed in this proceeding; (x) all equity security holders of the Debtor; and (xi) all other entities that have filed requests for notice pursuant to Bankruptcy Rule 2002.

In addition, the Debtor has caused, or will cause, notice of the Auction to be published in one or more of the following: the national edition of The Wall Street Journal, the Chicago Tribune, and/or a nationally circulated trade publication.

**(3)**     **Confidentiality Agreement and Selection of Bidders**

Potential bidders (the "**Bidders**") for the Transferred Assets and/or the Residual Assets shall be required to complete and execute a confidentiality agreement substantially similar to the confidentiality agreement executed by Cronimet and to provide the Debtor with information about their financial qualifications including certified, audited financial statements for the preceding two years, and/or any other financial disclosures and information the Debtor may reasonably request. When making a bid for the Transferred Assets and/or the Residual Assets, all such bidders must abide by the various Bidding Procedures outlined herein. Only those bids that are in material compliance (in the Debtor's discretion) with the Bidding Procedures (each a "**Qualifying Bid**") will be eligible for consideration at the Auction. The Debtor shall require Bidders to present satisfactory financial qualifications before such bidder may be deemed to have submitted a Qualifying Bid.

**(4)**     **Due Diligence**

Upon execution of a confidentiality agreement, the Debtor will provide Bidders with reasonable access to the Debtor's books, records, and its CEO, CFO and such other representatives of the Debtor as may be reasonably required for the purpose of conducting due diligence prior to the Auction. Furthermore, Bidders shall be provided access to the results of the Phase I investigation results relating to the Transferred Assets conducted by Golder & Associates on behalf of Cronimet.

By participation in the Auction, all Bidders are deemed to acknowledge that they have had sufficient and reasonable access to the Debtor's books, records, and executives for the purposes of conducting due diligence and have had the opportunity to conduct such due diligence.

2

Each Bidder shall provide to the Debtor, within three (3) business days after the Debtor's request therefor, any information reasonably required by the Debtor in connection with its evaluation of such Bidder's bid.

(5)    **Submission of Bids**

To become a Qualifying Bid, a Bidder submitting a Qualifying Bid must, among other things, comply with all of the following provisions of this section:

(a)    Any Bidder desiring to qualify for participation in the Auction must deliver its Qualifying Bid in writing to: (i) Keywell L.L.C., Attn: J. Mark Lozier, 11900 South Cottage Grove Avenue, Chicago, Illinois 60628; (ii) Eureka Capital Markets, LLC, Attn: Mark Hyman, 52 Vanderbilt Avenue, Suite 902, New York, NY 10017; and (iii) Howard L. Adelman and Erich S. Buck, Adelman & Gettleman, 53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604-3701, such that the Qualifying Bid is actually received by each of the foregoing persons not later than November 26, 2013, at 5:00 p.m. (Central) (the "**Bid Deadline**"). Qualifying Bids received after the Bid Deadline may be rejected in the sole discretion of the Debtor.

(b)    A Qualifying Bid for the Transferred Assets must include: (i) an executed Asset Purchase Agreement ("**APA**") substantially similar to the Cronimet APA; and (ii) a redlined version of the APA marked to show changes to the Cronimet APA. To the extent a Bidder seeks to bid on some or all of the Residual Assets, a Bidder may submit an executed APA that is not substantially similar to the Cronimet APA.

(c)    A Qualifying Bid must include an earnest money deposit in immediately available U.S. funds (each, a "**Deposit**"): (i) for the Transferred Assets, equal to One Million Dollars ($1,000,000); and/or (ii) for some or all of the Residual Assets, in an amount equal to ten percent (10%) of such bid. Prior to the Bid Deadline, the Deposit is to be delivered to the Debtor and shall be maintained in an interest-bearing escrow account unless impracticable, and shall be conclusively deemed subject to the exclusive jurisdiction of the Court upon receipt. Such Deposit shall be forfeited by a Bidder who submits the Prevailing Bid (as hereinafter defined), but fails to close in breach of the applicable APA.

(d)    Each Qualifying Bid must: (i) represent that the Bidder is prepared to initiate immediately all actions necessary to obtain all other applicable regulatory approvals, if any, for the Qualifying Bid; and (ii) provide its best estimate of the time within which such approvals will be obtained.

(e)    Each Qualifying Bid must (unless otherwise determined by the Debtor): (i) remain irrevocable until the approval of a Prevailing Bid, and, if applicable, a Back-Up Bid (as hereinafter defined), at the Sale Hearing; (ii) if approved at the Sale Hearing (as hereinafter defined) as either the Prevailing Bid or the Back-Up Bid, remain irrevocable until the earlier of (A) the closing of the transaction under the Prevailing Bid (the "**Prevailing Bid Closing**"); or (B) thirty-five (35) business days following the entry of

3

the Sale Order[1]; (iii) clearly state that all consideration to be paid shall be cash and assumed undisputed liabilities; (iv) not contain any financing contingency, or be subject to further due diligence review, board approval, or the receipt of any non-governmental consents; (v) give sufficient indicia that the Bidder or its representative is legally empowered, by power of attorney or otherwise, and financially capable, to both bid on behalf of the Bidder and also to complete and sign, on behalf of the Bidder, a binding and enforceable APA, including as such agreement may be amended at the Auction; (vi) identify each and every executory contract or unexpired lease, the assumption and assignment of which is a condition to closing, and provide evidence of the Bidder's ability to comply with Section 365 of the Bankruptcy Code; (vii) with respect to the Transferred Assets, be for all such assets as one (1) Lot, provided, however, that Lot bids will be permitted for the Residual Assets; and (viii) not request or entitle the Bidder to any termination or break-up fee, expense reimbursement or similar type of payment (except this requirement shall not apply to the Cronimet APA).

(f)      Each Qualifying Bid must disclose (i) the identity of the Bidder and each entity participating in connection with such Qualifying Bid, and the complete terms of such participation, and (ii) any other agreements, term sheets or other written or oral understandings between the Bidder and its affiliates, on one hand, and any current or former insider (as defined in 11 U.S.C. § 101(31)) of the Debtor, on the other hand.

(g)      Any party seeking to make a Qualifying Bid, in whole or in part, pursuant to rights provided under Section 363(k) of the Bankruptcy Code, must clearly indicate the amount of such bid which will constitute its credit bid.

(h)      With respect to the Transferred Assets, offer an aggregate consideration of at least Five Hundred Thousand Dollars ($500,000) (the "**Initial Overbid Amount**") greater than the Cronimet APA. The Cronimet APA is $12,500,000 in cash plus the value of the Contingent Payments[2], inclusive of any applicable Cure Amounts and Assumed Liabilities.

(i)      With respect to the Residual Assets, the Debtor, after consultation with the Lenders and the Committee, may offer a Qualifying Bidder overbid protection in an amount not in excess of seven percent (7%) of such bid, so that any subsequent bid for the Residual Assets at the Auction must be in excess of the purchase price thereof and the foregoing bid protections.

---

[1] The "**Sale Order**" is defined herein as the order of the Court approving the Sale of the Transferred Assets or the Residual Assets, as the case may be. With respect to the Transferred Assets, the Sale Order shall be substantially in the form attached as Exhibit D to the Cronimet APA.

[2] "**Contingent Payments**" are calculated as 30% of EBITDA generated solely from the toll processing business performed for Allegheny Technologies Inc., and its subsidiaries and affiliates for each of the four years immediately following the closing.

(6)      **Auction and Selection of Prevailing Bid and Back-Up Bid**

The Auction will be held on December 2, 2013 at 10:00 a.m. (Central) at the offices of Patzik, Frank & Samotny Ltd., 150 South Wacker Drive, Suite 1500, Chicago, Illinois 60606, or at such later time or other place as the Debtor shall advise all Qualifying Bidders. The Auction shall be conducted in the presence of a certified court reporter, who shall transcribe the proceedings for purposes of creating and preserving a record of the Auction.

The Debtor will not consider bids other than Qualifying Bids as described herein. The only persons who will be permitted to bid at the Auction are those bidders that have made Qualifying Bids (each a "**Qualifying Bidder**"). For Qualifying Bidders to participate at Auction, the Bidder(s) must appear in person at the Auction or through a duly authorized representative, unless alternative arrangements are made in advance with the Debtor. If multiple Qualifying Bids are received, each such bidder shall have the right to continue to improve its Qualifying Bid at the Auction. Prior to the Auction, the Debtor shall evaluate each Qualifying Bid that it has received and shall select the bid that it determines in good faith to be the highest and best offer and, as of the commencement of the Auction, this will constitute the opening bid for the Transferred Assets or the Residual Assets, as the case may be. The Debtor shall notify each party submitting a Qualifying Bid of the terms and conditions of the opening bid not less than twenty-four (24) hours prior to the commencement of the Auction.

Any Qualifying Bidder may be required to confirm that it has not engaged in any collusion with respect to the Bidding Procedures or the Sale.

The identity of each Qualifying Bidder at the Auction and the material terms of its Qualifying Bid will be fully disclosed to all other Qualifying Bidders at the Auction.

Bidding will commence with the announcement of the opening bids for the Transferred Assets and the Residual Assets, respectively, and will proceed with subsequent overbids of at least Fifty Thousand Dollars ($50,000). When bidding on the Transferred Assets at the Auction, Cronimet may receive, at the Debtor's option after consultation with the Committee and the Lenders, to be determined prior to the Auction, a cash credit in the amount of the Break-Up Fee[3]. In evaluating bids and determining the highest and best bid at any time in the Auction, the Debtor, in consultation with the Committee and the Lenders, shall consider the net value of bids to the Debtor's estate, including, with respect to the Transferred Assets, giving consideration to the requirement to pay a Break-Up Fee if Cronimet is not the successful bidder.

If no party makes the timely submissions required in Paragraph 5 herein and is determined to be a Qualifying Bidder, or if no Qualifying Bid (other than that of Cronimet) is received by the Bid Deadline, then the Debtor reserves the right (after consultation with the Committee) to cancel the Auction, and the Debtor shall, at the Sale Hearing, request: (x) that the

---

[3] In the event the Debtor closes on a Prevailing Bid (as hereinafter defined) for the Transferred Assets not made by Cronimet, then, in such event, Cronimet shall be entitled to receive a Break-Up Fee to compensate it for the time, energy and resources utilized to submit the Cronimet APA in the amount equal to Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00) (the "**Break-Up Fee**").

Cronimet APA be deemed the highest and best offer for the Transferred Assets and the Prevailing Bid for such assets; (y) authority to proceed to close the Sale to Cronimet pursuant to the Cronimet APA; and (z) entry of the Sale Order. The Cronimet APA will be deemed to constitute a Qualifying Bid for the Transferred Assets. Furthermore, in the event the Lenders desire to credit bid, then, in such event, the Lenders shall be conclusively deemed to have satisfied paragraph 3 (Credit Worthiness) and paragraph 5(c) (Deposit) of these Bidding Procedures.

The bid determined by the Debtor, in consultation with the Committee, to be the highest and best offer at the Auction for the Transferred Assets or the Residual Assets, as the case may be (each a "**Prevailing Bid**"), and the Back-Up Bid, if any, will be submitted by the Debtor for approval by the Court.

(7)   Sale Hearing

Any Qualifying Bids that are accepted by the Debtor at the Auction as the Prevailing Bid and the Back-Up Bid will be subject to approval by the Court. Please be advised that the hearing to approve such bids will be held before the Honorable Eugene R. Wedoff, United States Bankruptcy Judge in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 744, Chicago, Illinois 60604 (the "**Sale Hearing**") on December 4, 2013, at10:00 a.m. (Central), or such later time and place as the Debtor shall notify all Qualifying Bidders.

(8)   Return of Deposits

Except as otherwise set forth herein, as soon as practicable after the conclusion of the Sale Hearing, the Debtor shall return to each unsuccessful Qualifying Bidder (other than the Prevailing Bidder and the Back-Up Bidder) the Deposit, together with any interest paid thereon, submitted by such a Qualifying Bidder.

Upon the completion of the Prevailing Bid Closing, the Debtor shall return to the Back-Up Bidder (as hereinafter defined) the Deposit submitted by the Back-Up Bidder. Upon the closing of the transaction under the Back-Up Bid, the Deposit of the Back-Up Bidder shall be applied against the purchase price to be paid by the Back-Up Bidder.

(9)   Failure to Close

If the Prevailing Bidder fails to close in accordance with the terms of the Prevailing Bid within fifteen (15) business days from the entry of the Sale Order (a "**Failure to Close**"), such party's Deposit, together with any interest paid thereon, shall be forfeited to and retained irrevocably by the Debtor.

In the event of a Failure to Close, the Bidder of the next highest and best Qualifying Bid (the "**Back-Up Bid**") as determined by the Debtor in consultation with the Committee and approved by the Court (each a "**Back-Up Bidder**"), shall be required to consummate the transactions contemplated in the Back-Up Bid at the purchase price so offered without further

6

act, deed, or order of Court within the following fifteen (15) business days, unless the Debtor provides written notice to the Back-Up Bidder of its intent not to accept the Back-Up Bid (a "**Declination Notice**"). If, in the event of a Failure to Close, and absent a Declination Notice, the Back-Up Bidder fails to close timely and in accordance with the terms of the Back-Up Bid, the Back-Up Bid, together with any interest paid thereon, shall be forfeited to and retained irrevocably by the Debtor.

The Back-Up Bidder shall be obligated to hold open the Back-Up Bid until the completion of the earlier of: (A) the Prevailing Bid Closing; or (B) thirty-five (35) business days following the entry of the Sale Order.

**(10)  Closing**

Following approval by the Court of the Prevailing Bid, the Debtor shall use its commercially reasonable efforts to consummate the Court-approved transaction within fifteen (15) business days after entry of the Sale Order. At the Prevailing Bid Closing, the Deposit of the Prevailing Bidder will be applied against the purchase price to be paid by the Prevailing Bidder.

**(11)  Reservation of Rights**

Except as otherwise provided in the Bidding Procedures Order, the Debtor reserves the right, as it may reasonably determine to be in the best interests of its estate after consultation with the Committee and the Lenders, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid or combination of Qualifying Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor and its estate, provided, however, that no bid shall be rejected solely on the basis that it is a credit bid. Nothing contained herein shall prejudice or impair rights under Section 363(k) of the Bankruptcy Code. The Debtor further reserves all rights (in consultation with the Committee) to impose, at or prior to the Auction, additional terms and conditions on the sale of the Transferred Assets, to extend or adjourn any deadlines set forth herein, and to take any other actions with respect to the Auction, the Sale Hearing or the sale of the Transferred Assets and/or the Residual Assets which in its business judgment are reasonably necessary to preserve the bankruptcy estate or maximize the value thereof and which are not substantially inconsistent with these Bidding Procedures, the Cronimet APA or any order of the Bankruptcy Court.

**(12)  Miscellaneous**

Nothing contained in the foregoing or in the Bidding Procedures Order shall create any rights in any other person or bidder (including without limitation rights as third-party beneficiaries or otherwise) other than the rights expressly granted to the Prevailing Bidder under the Bidding Procedures Order. In the event of any conflict or inconsistency between these Bidding Procedures and the Bidding Procedures Order, the terms of the Bidding Procedures

7

Order shall control.  Except as provided in the Bidding Procedures Order and Bidding Procedures, the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bidding Procedures Order.


Dated: _____

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| _____ | ) | |

### NOTICE OF SALE AND INTENDED ASSUMPTION
### AND ASSIGNMENT OF EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES IN CONNECTION THEREWITH

TO:   THE OFFICE OF THE UNITED STATES TRUSTEE, THE CREDITORS OF THIS
ESTATE, THE NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND
UNEXPIRED LEASES AND OTHER PARTIES IN INTEREST:

**PLEASE TAKE NOTICE AS FOLLOWS:**

1.    Chapter 11 Filing - On September 24, 2013, (the **"Petition Date"**), Keywell
L.L.C. (**"Debtor"**) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code
(the **"Chapter 11 Case"**). Since then, the Debtor has remained in possession of its assets and has
continued to operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107
and 1108. The Debtor has all of the rights and powers of a trustee in bankruptcy pursuant to 11
U.S.C. § 1107(a).

2.    Sale Motion - On September 26, 2013, the Debtor filed a Motion for the Entry of
an Order: (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-up Fee and
Form Of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling a
Public Auction And Authorizing the Sale of the Assets of the Debtor Free and Clear of Liens,
Claims, Encumbrances and Interests; and (C) Authorizing the Assumption and Assignment of
Executory Contracts and Unexpired Leases (the **"Sale Motion"**).

3.    Entry of Sale Procedures Order - On October ___, 2013, the Bankruptcy Court
entered that certain Order (A) Approving the Sale Process, Bidding Procedures, Bid Protection,
Break-up Fee and Form of Asset Purchase Agreement for the Sale of Certain Assets of the
Estate; (B) Scheduling a Public Auction and Authorizing the Sale of the Assets of the Debtor
Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing Procedures
for the Assumption and Assignment of Executory Contracts and Unexpired Leases (the **"Bidding
Procedures Order"**).

1

4.　　Auction - Under the Bidding Procedures Order, the Debtor is authorized to conduct a public auction (the **"Auction"**) of a substantial portion of its assets (the **"Transferred Assets"**) subject to the Cronimet APA (as hereinafter defined) and other assets of the Debtor (the "Residual Assets") not subject to the Cronimet APA, on December 2, 2013 at 10:00 a.m. (Central time) at the offices of Patzik, Frank & Samotny Ltd., 150 South Wacker Drive, Suite 1500, Chicago, Illinois 60606, or at such later time or other place as the Debtor shall advise all Qualifying Bidders.[1] The Transferred Assets and the Residual Assets shall be sold free and clear of any and all liens, claims, encumbrances and interests, with any and all validly determined liens, claims, interests or encumbrances to attach to the respective proceeds of sale (individually or collectively, the **"Sale"**). The bid determined by the Debtor, in consultation with the Official Committee of Unsecured Creditors (the "Committee"), to be the respective highest and best offers for the Transferred Assets and the Residual Assets at the Auction (the **"Prevailing Bid"**) and the Back-Up Bid, if any, will be submitted by the Debtor for approval by the Court.

5.　　Bidding Procedures - The Auction shall be conducted in accordance with the bidding procedures attached hereto as Exhibit A (the **"Bidding Procedures"**).

6.　　Stalking Horse Bid and Bid Protection – With respect to the Transferred Assets, the Debtor has accepted the initial bid (the **"Cronimet Offer"**) of Cronimet Holdings, Inc. and Cronimet Corporation (or their designee, **"Cronimet"**) in the amount of Twelve Million Five Hundred Thousand and 00/100 Dollars ($12,500,000.00) in cash plus the value of the Contingent Payments[2], inclusive of any applicable Cure Amounts and certain assumed liabilities described in the Cronimet APA (the **"Assumed Liabilities"**), and subject to higher bids at Auction and Bankruptcy Court approval, by and through the execution of those certain Asset Purchase Agreements between the Debtor and Cronimet (collectively, the **"Cronimet APA"**). In accordance with the Bidding Procedures Order, Cronimet shall receive the Break-Up Fee described below. Cronimet shall also receive bid protection in the additional amount of Fifty Thousand and 00/100 Dollars ($50,000.00). Accordingly, the next minimum bid which the Debtor may accept must be at least Thirteen Million and 00/100 Dollars ($13,000,000.00) in cash plus the value of the Contingent Payments. Any additional bids thereafter shall be in increments of not less than Fifty Thousand and 00/100 Dollars ($50,000.00). No bid of any kind or nature shall be deemed to be a binding agreement unless and until it has been approved by the Sale Order (as hereinafter defined).

With respect to the Residual Assets, the Debtor, after consultation with the Lenders and the Committee, may offer a Qualifying Bidder overbid protection in an amount not in excess of

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed in the Bidding Procedures.

[2] **"Contingent Payments"** are calculated as 30% of EBITDA generated solely from the toll processing business performed for Allegheny Technologies Inc., and its subsidiaries and affiliates for each of the four years immediately following the closing.

2

seven percent (7%) of such bid, so that any subsequent bid for the Residual Assets at the Auction must be in excess of the purchase price thereof and the foregoing bid protections.

7.     Break-Up Fee - In the event the Debtor closes on a Prevailing Bid for the Transferred Assets not made by Cronimet (the "**Third-Party Prevailing Bid**"), then, in such event, Cronimet shall be entitled to receive a Break-Up Fee to compensate it for the time, energy and resources utilized to submit the Cronimet Offer in the amount equal to Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00) (the "**Break-Up Fee**"). Except as hereinafter provided, the Break-Up Fee shall be payable in the event of a higher offer which results in the closing of the sale for the Transferred Assets, and provided that Cronimet was not in material default of any of its obligations to the Debtor under the Cronimet APA at the time of the acceptance of such Third-Party Prevailing Bid and was otherwise ready, willing and able to close thereunder. The Break-Up Fee shall be payable to Cronimet from the sale proceeds of the Transferred Assets at closing on the Third-Party Prevailing Bid after the payment to creditors holding valid and subsisting liens on some or all of the Transferred Assets, and is payable irrespective of the actual out-of-pocket costs and expenses incurred by Cronimet. To the extent the sale proceeds are insufficient to pay the Break-Up Fee in full or in the event a Break-Up Fee is due and owing pursuant to Section 9.02(b) and (c) of the Cronimet APA, then in such event, the Break-Up Fee or any unpaid portion thereof shall constitute an administrative expense in the Chapter 11 Case.

8.     Sale Hearing - The Court will conduct a hearing to consider approval of the sale of the Transferred Assets and the Residual Assets on December 4, 2013, at 10:00 a.m. (Central time) in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 744, Chicago, Illinois 60604 (the "**Sale Hearing**"). The Sale Hearing may be adjourned, continued or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtor will request approval of the sale of the Transferred Assets and the Residual Assets, respectively, to the Bidder(s) submitting the Prevailing Bid(s) and the Back-Up Bidder(s), pursuant to the entry of final order(s) approving the sale of the Transferred Assets and the Residual Assets, respectively (the "**Sale Order(s)**").

9.     Objections - Any objection to the sale of the Transferred Assets or the Residual Assets must be filed in writing with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 713, Chicago, Illinois 60604, **on or before 5:00 p.m. (Central time) on November 26, 2013** (the "**Sale Objection Deadline**"), with copies served upon, so as to be received on or before the Sale Objection Deadline by, the following parties: (i) counsel to the Debtor, Howard L. Adelman and Erich S. Buck, of Adelman & Gettleman, Ltd., 53 West Jackson Boulevard, Suite 1050, Chicago, Illinois, 60604; (ii) the Office of the United States Trustee, 219 S. Dearborn Street, Room 873, Chicago, Illinois 60604; (iii) counsel to the Lenders, Steven B. Towbin and Gordon E. Gouveia, Shaw Fishman Glantz & Towbin LLC, 321 N. Clark Street, Suite 800, Chicago, Illinois 60654; (iv) counsel to Cronimet, Robert A. Soriano, Greenberg Traurig, P.A., Courthouse Plaza, 625

3

East Twiggs Street, Suite 100, Tampa, Florida 33602; and (v) counsel to the Committee, David A. Agay and Sean D. Malloy, McDonald Hopkins LLC, 300 North LaSalle Street, Suite 2100, Chicago, Illinois 60654 (collectively, the "**Noticed Parties**").

10.     Assumption Notice - On or before November 16, 2013, the Debtor shall send a notice via facsimile or overnight delivery (the "**Assumption Notice**") to each non-debtor party to the executory contracts or unexpired leases (the "**Executory Contract(s)**") that the Debtor determines, in the exercise of its business judgment, may be necessary to maximize the value of the sale contemplated hereunder and which the Debtor may elect to assume and assign to a Qualifying Bidder (the "**Proposed Assumption/Assignment**"). The Assumption Notice shall state the cure amounts the Debtor believes are necessary to assume and assign the Executory Contracts pursuant to Section 365 of the Bankruptcy Code (the "**Cure Amount**"). In addition, if the Debtor identifies additional Executory Contracts that might be assumed by the Debtor and assigned to the Prevailing Bidder not set forth in the original Assumption Notice, the Debtor shall promptly send a supplemental notice to the applicable counterparties to such additional Executory Contracts.

11.     Assumption Objection - Any objection of a non-Debtor party to an Executory Contract to the Cure Amount set forth in the Assumption Notice or Supplemental Assumption, Notice, as the case may be, or to the proposed assumption and assignment of such Executory Contract (an "**Cure Amount/Assumption Objection**") must (a) be in writing, and (b) provide the basis for the objection, including any cure amount claimed to be due with supporting documentation. To be considered a timely Cure Amount/Assumption Objection, the Cure Amount/Assumption Objection must be filed with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Room 713, Chicago, Illinois, and served upon the Noticed Parties by the later of: (A) **5:00 p.m. (Central time) on December 2, 2013**; or (B) five (5) business days after service of the relevant Supplemental Assumption Notice.

12.     Assumption and Cure Objection Hearing - The Court shall resolve any and all timely filed Cure Amount/Assumption Objections at the Sale Hearing, or such other time as may be ordered by the Court.

13.     Copies - Copies of the Sale Motion and any exhibits thereto, the Cronimet APA, and/or the proposed Sale Order for the Transferred Assets will be made available upon written request directed to counsel for the Debtor at: Adelman & Gettleman, Ltd., Attn: Erich S. Buck, 53 West Jackson Blvd., Chicago, Illinois 60604 (ebuck@ag-ltd.com).

14.     Notice - This Notice is made expressly subject to the Bidding Procedures Order and the Bidding Procedures. To the extent that this Notice is inconsistent with the terms contained in the Bidding Procedures Order, the Bidding Procedures Order shall control.

4

**PLEASE BE ADVISED THAT IN CONNECTION WITH THE PROPOSED SALE OF THE TRANSFERRED ASSETS AND THE RESIDUAL ASSETS, THE DEBTOR WILL SEEK THE ENTRY OF A SALE ORDER(S) THAT WILL, AMONG OTHER THINGS, ENJOIN ANY AND ALL CREDITORS AND OTHER PARTIES IN INTEREST OF THE ESTATE FROM PURSUING AGAINST THE PURCHASER OF THE ASSETS: (A) ANY CLAIMS AGAINST DEBTOR; OR (B) ANY LIENS OR ENCUMBRANCES AGAINST THE TRANSFERRED ASSETS AND/OR THE RESIDUAL ASSETS.**

Dated: October _____, 2013

KEYWELL L.L.C.,
Debtor and Debtor-in-Possession


By:   /s/ DRAFT _____
One of Its Attorneys

Howard L. Adelman, Esq.
Erich S. Buck, Esq.
Alexander F. Brougham, Esq.
Adelman & Gettleman, Ltd.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
Phone: (312) 435-1050

5

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |

## NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

TO THE NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED
LEASES:

**PLEASE TAKE NOTICE AS FOLLOWS:**

1. **Chapter 11 Case** - On October ___, 2013, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division entered an order (the "**Bidding Procedures Order**")[1] in the above-captioned Chapter 11 case (the "**Chapter 11 Case**") of Keywell L.L.C. (the "**Debtor**") approving, among other things, the process for fixing the cure amounts related to the Debtor's assumption, assignment and/or transfer of certain executory contracts, unexpired leases and other agreements (the "**Executory Contracts**") in connection with the sale (the "**Sale**") of some or all of the Debtor's assets (the "**Sale Asset(s)**").

2. **Notice of Proposed Assignment and Cure Amount** – Set forth on Exhibit A is a list of Executory Contracts that the Debtor *may potentially seek to have assumed and assigned to the Prevailing Bidder or Back-Up Bidder at the Sale Hearing*. Exhibit A also contains the cure amounts the Debtor's books and records reflect are necessary to assume and assign such Executory Contracts pursuant to Section 365 of the Bankruptcy Code (the "**Cure Amount**"). The Debtor believes that the payment of the respective Cure Amount designated for each of the referenced Executory Contracts shall cure any and all defaults and pecuniary losses under each of the respective Executory Contracts. If the Debtor identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to the Prevailing Bidder or Back-Up Bidder not set forth in this Notice, the Debtor shall promptly send a supplemental notice (a "**Supplemental Assumption Notice**") to the applicable non-Debtor parties to such additional executory contracts and unexpired leases.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

3.   **Assumption and Cure Objections** – Any objection of a non-Debtor party to an Executory Contract to the Cure Amount set forth in Exhibit A to this Notice or the relevant Supplemental Assumption Notice, as the case may be, or to the proposed assumption and assignment of such Executory Contract (an "**Cure Amount/Assumption Objection**") must (a) be in writing, and (b) provide the basis for the objection, including any cure amount claimed to be due with supporting documentation. To be considered a timely Cure Amount/Assumption Objection, the Cure Amount/Assumption Objection must be filed with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Room 713, Chicago, Illinois, and served upon: (i) counsel to the Debtor, Howard L. Adelman and Erich S. Buck, Adelman & Gettleman, Ltd., 53 West Jackson Blvd., Suite 1050, Chicago, IL 60604; (ii) counsel to Cronimet Holdings, Inc. and Cronimet Corporation, Robert A. Soriano, Greenberg Traurig, P.A., Courthouse Plaza, 625 East Twiggs Street, Suite 100, Tampa, Florida 33602; (iii) the Office of the United States Trustee, 219 S. Dearborn Street, Room 873, Chicago, Illinois 60604; (iv) counsel to the Lenders, Steven B. Towbin and Gordon E. Gouveia, Shaw Fishman Glantz & Towbin LLC, 321 N. Clark Street, Suite 800, Chicago, Illinois 60654; and (v) counsel for the official unsecured creditors' committee in this Chapter 11 Case, David A. Agay and Sean D. Malloy, McDonald Hopkins LLC, 300 North LaSalle Street, Suite 2100, Chicago, Illinois 60654, by the later of: (A) **5:00 p.m. (Chicago time) on December 2, 2013**; or (B) five (5) business days after service of the relevant Supplemental Assumption Notice (the "**Cure Amount/Assumption Objection Deadline**").

4.   **Assumption and Cure Objection Hearing** - The Court shall resolve any and all timely filed Cure Amount/Assumption Objections at the hearing to consider approval of the Sale to be held on December 4, 2013 at 10:00 a.m. (Central time) at the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 744, Chicago, Illinois 60604, or such other time as may be ordered by the Court (the "**Sale Hearing**"). Please be advised that if you **do file** an objection you and/or your attorney will be expected to attend the Sale Hearing or the Court may grant the relief sought in the Sale Motion over such written objection.

5.   **If No Cure Amount/Assumption Objection is Timely Filed** - If a Cure Amount/Assumption Objection is not timely filed and served by the Cure Amount/Assumption Objection Deadline, then (a) the Debtor shall be authorized, but not directed, to assume and assign such Executory Contract, subject only to any obligation of the Debtor, the Prevailing Bidder, the Back-Up Bidder or any other assignee to provide adequate assurance of future performance pursuant to 11 U.S.C. § 365; (b) the Cure Amount set forth in this Notice shall constitute the final determination of the total cure amount required to be paid by the Debtor on the Executory Contract pursuant to 11 U.S.C. § 365 for purposes of the Sale Order; and (c) the non-Debtor party to the Executory Contract shall be: (i) forever barred and estopped from objecting to the Cure Amount or seeking any additional cure payments on such Executory Contract, whether from the Debtor, the Prevailing Bidder, any Back-Up Bidder or any other assignee; (ii) deemed to have waived any right to terminate any Executory Contract as a result of any default which may have occurred under the applicable Executory Contract prior to the assumption date to the extent the Executory Contract is

2

identified as a Sale Asset by the Prevailing Bidder or Back-Up Bidder; (iii) deemed to have agreed that the Sale Order applies and is enforceable with respect to the assumption and assignment of the Executory Contract; (iv) deemed to have agreed that all defaults under the Executory Contract arising or continuing prior to the effective assumption date have been fully cured and satisfied; and (v) deemed to have consented to the assumption, assignment and transfer of such Executory Contract to the Prevailing Bidder, Back-Up Bidder or any assignee thereof on all matters, except for any obligation of the Debtor, the Prevailing Bidder the Back-Up Bidder or any other assignee to provide adequate assurance of future performance under 11 U.S.C. § 365, as hereinafter provided.

6.     **Adequate Assurance Objection** – Notwithstanding anything in Section 5 hereof to the contrary, any objection of a non-Debtor party to an Executory Contract based on adequate assurance of future performance pursuant to 11 U.S.C. § 365 by the Prevailing Bidder and any Back-Up Bidder (including any objections thereto) must be raised at or before the Sale Hearing or shall be deemed to have been fully waived and released. The Debtor shall use all reasonable diligence to notify, by overnight delivery, email or facsimile, each non-Debtor party to any Executory Contract of any Prevailing Bid and/or Back-Up Bid that includes such party's Executory Contract as a Sale Asset for which the assumption and assignment thereof shall be sought at the Sale Hearing. Each non-Debtor party to any Executory Contract listed on Exhibit A hereto is encouraged to contact the Debtor's counsel on the day after the Auction to determine whether such party's Executory Contract will be subject to assumption and assignment at the Sale Hearing.

7.     **Requests for Copies and Information** - Copies of the Sale Motion and exhibits thereto, the Bidding Procedures Order and/or the proposed Sale Order for the Transferred Assets may be obtained by: (a) written request to the Debtor's counsel, Adelman & Gettleman, Ltd., 53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604, Attn: Erich S. Buck; or (b) accessing the case docket on the Court's website at www.ilnb.uscourts.gov (a pacer password will be necessary to access the docket). Any inquiries regarding the information provided herein should be directed to the Debtor's counsel at the address noted below.

8.     **Notice** - This Notice is made expressly subject to the Bidding Procedures Order and the underlying bidding procedures. To the extent that this Notice is inconsistent with the terms contained in the Bidding Procedures Order, the Bidding Procedures Order shall control. Notwithstanding the reference to any contract as an "Executory Contract" in this Notice, the Debtor reserves all of its rights with respect to whether or not any contract is an "executory contract" pursuant to the Bankruptcy Code. The inclusion of any document on Exhibit A shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code.

Dated: November _____, 2013          KEYWELL L.L.C.
                                     Debtor and Debtor-in-Possession

                                     By: /s/  DRAFT _____
                                          One of Its Attorneys

3

Howard L. Adelman, Esq. (ARDC #0015458)
Erich S. Buck, Esq. (ARDC #6274635)
Steven B. Chaiken, Esq. (ARDC #6272045)
Alexander F. Brougham, Esq. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
Phone: (312) 435-1050
hla@ag-ltd.com
esb@ag-ltd.com
sbc@ag-ltd.com
afb@ag-ltd.com

4

**<u>EXHIBIT A</u>**

**[To be provided]**

5