# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | Hearing Date: November 5, 2013 |
| | ) | Hearing Time: 9:30 a.m. |
| | ) | |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 5, 2013 at 9:30 a.m., we shall appear before the Honorable Eugene R. Wedoff of the United States Bankruptcy Court, Northern District of Illinois, in Courtroom 744 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO ENTER INTO RETENTION BONUS AGREEMENTS WITH CERTAIN NON-INSIDER KEY EMPLOYEES PURSUANT TO 11 U.S.C. §§ 105 AND 363(b),** a copy of which is hereby served upon you.

>     HOWARD L ADELMAN, ESQ. (ARDC #0015458)
>     ERICH S. BUCK, ESQ. (ARDC #6274635)
>     STEVEN B. CHAIKEN, ESQ. (ARDC #6272045)
>     ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
>     ADELMAN & GETTLEMAN, LTD.
>     53 West Jackson Blvd., Suite 1050
>     Chicago, Illinois 60604
>     Tel (312) 435-1050
>     Fax (312) 435-1059
>     **Counsel for Keywell L.L.C.**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and the motion referred to therein were served upon the parties listed on the service list attached hereto via CM/ECF and/or overnight mail as indicated below, on October 31, 2013.

>     By: /s/ Steven B. Chaiken
>         Steven B. Chaiken

239579

## SERVICE LIST

*Via CM/ECF*

Patrick S Layng
Kimberly Bacher
Office of the U.S. Trustee, Region 11
219 S Dearborn St, Room 873
Chicago, IL 60604
USTPRegion11.ES.ECF@usdoj.gov

Gordon E. Gouveia, Esq.
Steven B. Towbin, Esq.
Terence G. Banich
Shaw Fishman Glantz & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
**Counsel to NewKey Group, LLC & NewKey Group II, LLC**
ggouveia@shawfishman.com
stowbin@shawfishman.com
tbanich@shawfishman.com

Mark W. Page, Esq.
Kelley Drye & Warren LLP
333 W. Wacker Drive, Suite 2600
Chicago, IL 60606
**Counsel to Alpert & Alpert Iron & Metal, Inc.**
mpage@kelleydrye.com

Matthew T. Gensburg, Esq.
Nancy A. Peterman, Esq.
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
**Counsel to Cronimet Holdings, Inc.**
gensburgm@gtlaw.com
petermann@gtlaw.com
ChiBkyDocket@gtlaw.com

Thomas V. Askounis, Esq.
Alex Darcy, Esq.
Amrit S. Kapai, Esq.
Askounis & Darcy, PC
444 N. Michigan Avenue, Suite 3270
Chicago, IL 60611
**Counsel to Wells Fargo Equipment Finance, Inc.**
taskounis@askounisdarcy.com
adarcy@askounisdarcy.com
akapai@askounisdarcy.com

Monette W. Cope, Esq.
Weltman, Weinberg & Reis Co., L.P.A.
965 Keynote Circle
Brooklyn Hts, OH 44131
**Counsel to Toyota Motor Credit Corporation & Gibson Machinery, LLC**
ecfnil@weltman.com

Stephen A. Yokich, Esq.
Cornfield and Feldman LLC
25 East Washington Street, Suite 1400
Chicago, IL 60602
**Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union**
syokich@cornfieldandfeldman.com

Andrew J. Abrams, Esq.
Boodell & Domanskis, LLC
353 N. Clark Street, Suite 1800
Chicago, IL 60654
**Counsel to Loni-Jo Metal Corporation**
aabrams@boodlaw.com

Eric R. von Helms, Esq.
Kohner, Mann & Kailas, S.C.
4650 North Port Washington Road, 2nd Floor
Milwaukee, WI 53212
**Counsel to Banc of America Leasing & Capital, LLC**
evonhelms@kmksc.com

David A. Agay, Esq.
Joshua A. Gadharf. Esq.
Micah E. Marcus, Esq.
McDonald Hopkins LLC
300 North LaSalle, Suite 2100
Chicago, IL 60654
**Counsel to Official Committee of Unsecured Creditors**
dagay@mcdonaldhopkins.com
jgadharf@mcdonaldhopkins.com
mmarcus@mcdonaldhopkins.com

Jacquelyn T. Vengal, Esq.
Miriam R. Stein, Esq.
Chuhak & Tecson, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
**Counsel to TCF Equipment Finance, Inc.**
jvengal@chuhak.com
mstein@chuhak.com

Wendy Kaleta Skrobin, Esq.
McFadden & Dillon, P.C.
120 S. LaSalle Street, Suite 1335
Chicago, IL 60603
**Counsel to PNC Bank, National Association &
PNC Equipment Finance, LLC**
wkslaw@ameritech.net

Steven M. Wolock, Esq.
Kathleen H. Klaus, Esq.
Maddin, Hauser, Wartell, Roth & Heller, P.C.
28400 Northwestern Highway, Third Floor
Southfield, MI 48034
**Counsel to Marwol Metals, Ltd.**
swolock@maddinhauser.com


<u>Additional Parties Requesting Notice –</u>
<u>Via Overnight Mail</u>

Craig A. Wolfe, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
**Counsel to Alpert & Alpert Iron & Metal, Inc.**

Kaye E. Tucker, Esq.
Tucker Law Firm
9440 Santa Monica Blvd., Suite 504
Beverly Hills, CA 90210
**Counsel to Alpert & Alpert Iron & Metal, Inc.**

Thomas P. Yoder, Esq.
Barrett & McNagny LLP
215 East Berry Street
P.O. Box 2263
Fort Wayne, IN 46801
**Counsel to OmniSource Corporation**

Marc E. Shach, Esq.
Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle
Baltimore, MD 21208
mes@weinstocklegal.com
**Counsel to PNC Bank, National Association &
PNC Equipment Finance, LLC**

Buchanan Ingersoll & Rooney PC
Attn: Timothy P. Palmer, Esq.
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA 15219-1410
**Counsel to ATI Allvac and ATI Wah Chang**

American Transport Group
c/o Tom Soehike
1900 West Kinzie
Chicago, IL 60622

239579                                                          2

Millis Industries Inc.
Attn: Robert Valchuis
1372 Main Street
Millis, MA 02054

Robert A. Soriano, Esq.
Greenberg Traurig, P.A.
625 East Twiggs Street, Suite 100
Tampa, FL 33602

Richard C. Josephson, Esq.
Schnitzer Steel Industries, Inc.
299 SW Clay Street, Suite 350
Portland, OR 97201
*Counsel to Schnitzer Steel Industries, Inc.*

James Devine
Schnitzer Steel Industries, Inc.
12 E. 49th Street, 24th Floor
New York, NY 10014
*Counsel to Schnitzer Steel Industries, Inc.*

239579

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C. | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | **Hearing Date:** November 5, 2013 |
| | ) | **Hearing Time:** 9:30 a.m. |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR
TO ENTER INTO RETENTION BONUS AGREEMENTS WITH CERTAIN
NON-INSIDER KEY EMPLOYEES PURSUANT TO 11 U.S.C. §§ 105 AND 363(b)**

TO:   TO THE HONORABLE EUGENE R. WEDOFF,
      U.S. BANKRUPTCY JUDGE:

NOW COMES, Keywell L.L.C. (the "Debtor"), an Illinois limited liability company, debtor and debtor in possession herein, by and through its undersigned attorneys, and hereby moves pursuant to Sections 105 and 363(b) of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code"), for entry of an order authorizing the Debtor to enter into retention bonus agreements with certain non-insider key employees (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Debtor has implemented a sale process approved by this Court to sell a significant portion of its assets. Should the Debtor's key employees leave at this time, it will negatively impact operations and the ability to maximize the value of the Debtor's assets. The Debtor will be unlikely to attract competent and qualified replacements given the Debtor's current bankruptcy status and current sale process. In addition, the approved stalking horse asset purchase agreement requires the Debtor to continue its operations in the ordinary course of

239854

business pending a closing. Further, the Debtor anticipates the need to retain these employees for a brief period after the consummation of the sale contemplated by the stalking horse asset purchase agreement to assist in the administration of the Debtor's remaining assets and continued objectives in this Chapter 11 Case.

The Debtor believes that providing certain non-insider key employees with modest retention bonuses for staying with the Debtor throughout the sale process, and for a period of time thereafter, is imperative to avoid the detriment which the Debtor will suffer should these employees leave for a more stable position. In an effort to reduce costs, prior to commencing this bankruptcy case the Debtor reduced its workforce from 290 employees as of January 1, 2013, to 252 employees as of June 30, 2013, and further to 112 employees as of October 18, 2013. Consequently, the Debtor can ill afford to lose any of its non-insider key employees. To incent these non-insider key employees to remain in the Debtor's employ, the Debtor requests authority to enter into retention bonus agreements with certain non-insider key employees who remain in the Debtor's employ until February 28, 2014, unless involuntarily terminated by the Debtor without cause prior to such date.

I.   **JURISDICTION AND VENUE**

1.   This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.   The statutory predicates for the relief requested in this Motion are sections 105 and 363(b) of the Bankruptcy Code.

2

## II. BACKGROUND

3. On September 24, 2013 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this District commencing the Debtor's chapter 11 case (the "Chapter 11 Case").

4. The Debtor continues to manage and operate its business and manage its properties and affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case.

6. On October 3, 2013, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") [Docket Entry No. 52].

7. The nature of the Debtor's business and the factual background relating to the Debtor's commencement of this Chapter 11 Case is set forth in detail in the *Certification and Statement of J. Mark Lozier in Support of Chapter 11 Petition and First-Day Motions* [Docket Entry No. 6] filed on the Petition Date and incorporated herein by reference.

## III. RELIEF REQUESTED

8. By this motion, the Debtor is seeking authority to enter into retention bonus agreements with certain non-insider key employees who are essential to the Debtor's operations and who continue to stay with the Debtor through February 28, 2014 (the "Employment Period"), unless involuntarily terminated by the Debtor without cause prior to such date.

3

9. On September 26, 2013, the Debtor filed that certain motion seeking, among other relief, the entry of an order approving a sale process [Docket Entry No. 23] (the "Sale Motion"). In order to maximize the proceeds to be derived from a sale, the Debtor intends to market and sell its assets and business as a viable going concern pursuant to an orderly sale process approved by this Court (the "Sale Process"). On October 21, 2013, the Court entered an order approving the Sale Process and a stalking horse asset purchase agreement [Docket Entry No. 121] (the "Bidding Procedures Order"). The retention of certain non-insider key employees is critical to this sale effort as well as to the continued operations and administration of the Debtor's remaining assets after the contemplated sale. The Debtor anticipates that certain assets will not be sold as part of this initial Sale Process and is contemplating the need for the continued assistance of certain key employees for a limited period of time post-sale.

10. The Debtor's non-insider key employees are in the unenviable position of having to devote substantial effort and remain keenly focused, only to face the uncertainty of new ownership or the complete shutdown of business, and the likelihood of having to find new (and more stable) employment.

11. The Debtor in its business judgment has determined that the seven (7) employees identified on **Exhibit A** attached hereto (each a "Key Employee" and collectively, the "Key Employees") are essential to the Debtor's continued operations and in providing necessary information to achieve the best results possible in connection with the Sale Process and the administration of the Debtor's remaining assets thereafter. The Key Employees consist of two general managers, a supervisor, a transportation manager, an assistant controller, a payroll and benefits administrator, and an administrative supervisor.

4

12. It is the Debtor's belief that if any of the Key Employees were to leave, the prospects of successfully effectuating a sale which maximizes the value of the Debtor's assets and the ability to otherwise achieve its objectives in this Chapter 11 Case would be compromised. It is unreasonable and unrealistic not to provide the Key Employees with sufficient incentive to remain in the Debtor's employ during the Employment Period (which is anticipated to encompass the Sale Process) in light of the uncertainty and instability which these employees currently face and the respective opportunities to seek gainful employment elsewhere which they may be foregoing at the present time.

13. Accordingly, the Debtor proposes to enter into a "Retention Bonus Agreement" with each of the Key Employees (the "Retention Bonus Agreement") substantially in the form attached hereto as **Exhibit B**.

14. The Debtor requests approval to pay the Key Employees the corresponding retention bonuses, as provided on Exhibit A attached hereto, and authority to enter into a Retention Bonus Agreement with each of the Key Employees, as such will limit uncertainty and provide the security to the Key Employees to ensure that they remain with the Debtor throughout this critical period in the Chapter 11 Case.

15. The retention bonuses provided for each Key Employee on Exhibit A represent lump sums in the amount of two (2) months of each Key Employee's current annual salary, provided that the employee seeking the bonus has not voluntarily left the employ of the Debtor prior to February 28, 2014, and has not been terminated for cause. In the event the Debtor no longer requires the services of any Key Employee prior to the end of the Employment Period,

5

and thus releases him or her from employment, that Key Employee would be entitled to the Retention Bonus.

16. The total maximum amount of the retention bonuses for all seven (7) of the Key Employees at issue in this Motion is approximately $61,000. Given the relative size of the estate and the anticipated proceeds from the Sale, the benefits of expending the cost required to retain and incent the Key Employees far outweighs the loss to the estate if the Key Employees begin to find employment elsewhere.

17. The Debtor has generally discussed the relief sought in this Motion with its secured lenders, NewKey Group, LLC and NewKey Group II, LLC (collectively, the "Secured Lenders") and the Committee.

IV. **AUTHORITY FOR RELIEF REQUESTED**

A. **The Key Employees and Proposed Retention Bonuses**

18. The provisions of sections 105 and 363(b) of the Bankruptcy Code and the policies underlying those provisions support the relief requested in this Motion.

19. The retention bonuses are above the ordinary, pre-petition and post-petition compensation levels of the Key Employees and are reasonably necessary to provide these employees an incentive to continue their employment relationship with the Debtor and to maintain and preserve the Debtor's assets both pending and after the Sale. Without the continued employment and dedicated efforts of the Key Employees, the Debtor believes its business operations will be impaired and the sale efforts could be jeopardized.

20. This Court may authorize the proposed retention bonus payments pursuant to Section 363(b) of the Bankruptcy Code, under which a debtor, after notice and a hearing, may

use property of the estate other than in the ordinary course of business. 11 U.S.C. § 363(b). Section 363(b) of the Bankruptcy Code permits a debtor in possession to use, sell, or lease property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363. Section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out provisions of this title."

21. To approve the use, sale or lease of property outside the ordinary course of business, there must be "some articulated business justification." See Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); see also, Stephens Inc. v. McClung, 789 F.2d 386, 389-90 (6th Cir. 1986); In re Abbott Dairies of Pa., Inc., 788 F.2d 143, 145-47 (3d Cir. 1986); and In re Telesphere Communications, Inc., 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).

22. Once a valid business justification made in the ordinary course of business is established, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re S.N.A. Nut Company, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); see also, In re Johns-Manville Corp., 60 B.R. 612, 615-616 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

23. When applying the "business judgment" rule, courts show great deference to the debtor's decision-making. See, Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 316 (Bankr. D. Utah 1981). Accordingly, the relief requested in this Motion should be

7

granted if the Debtor demonstrates a sound business justification therefore. See Schipper, 933 F.2d at 515; In re Lionel Corp., 722 F.2d at 1071; In re Delaware Hudson Ry. Co., 124 B.R. 169 at 179.

24. The Debtor submits that authorizing the Debtor to provide modest retention bonuses to these non-insider Key Employees and enter into the Retention Bonus Agreements will accomplish a sound business purpose. The Debtor, in consultation with its professionals, has determined that the costs associated with this additional post-petition compensation are more than justified by the benefits the Debtor will realize by retaining the services of these Key Employees, whose experience, skills and diligent work are required by the Debtor to implement the Sale Process, achieve the highest possible sale price for the Debtor's other assets, and maintain the on-going operations of the Debtor pending the Sale and thereafter. In addition, the Debtor believes that the cost to replace these non-insider Key Employees would significantly exceed the aggregate cost of the Retention Bonus Agreements.

25. Based upon all of the foregoing circumstances, the Debtor respectfully submits that the relief sought herein for the non-insider Key Employees is an appropriate exercise of the Debtor's business judgment, will advance the fundamental objective of achieving the highest possible sale proceeds from the sale (or sales) of the Debtor's assets, is necessary and in the best interest of the Debtor's creditors and the estates and should be approved under sections 105 and 363(b) of the Bankruptcy Code.

**B.     The Proposed Payments Do Not Provide For Any Payments Prohibited By Section 503(c) of the Bankruptcy Code.**

    **i.      The Key Employees are Not Insiders**

26.     Sections 503(c)(1) and (2) of the Bankruptcy Code do not apply as the Key Employees are not "insiders" as provided in Section 101(31) of the Bankruptcy Code. Specifically, section 101(31)(B) of the Bankruptcy Code defines "insider" in relevant part, as a (i) director of the debtor, (ii) officer of the debtor or (iii) person in control of the debtor. 11 U.S.C. §101(31)(B).

27.     The term "director" is not defined in the Bankruptcy Code. Although there is no precise definition, courts have interpreted the term "director" to mean an individual of who sits on the board of directors of a corporation. See In re Kunz, 489 F.3d 1072, 1077 (10th Cir.2007)("[w]hen the term director is used in reference to a corporation . . . the term plainly means a person who is a member of the governing board of the corporation and participates in corporate governance.").

28.     In determining whether a particular employee is a "director," a court should look to the set of legal rights that a typical director would hold. In this case, the Key Employees do not have the legal rights that a typical corporate director would hold. They do not implement corporate policy or engage in corporate governance.

29.     The term "officer" is also not defined in the Bankruptcy Code. According to Black's Law Dictionary, the term "officer" is defined as a "person elected or appointed by the board of directors to manage the daily operations of a corporation, such as the CEO, president, secretary, or treasurer." Black's Law Dictionary 1193 (9th ed. 2009). Courts have often looked at this definition as a source of authority in determining whether an employee is an officer. See In re Borders Group, Inc., 453 B.R. 459, 468 (Bankr. S.D.N.Y. 2011). Here, the Key Employees are in charge of or oversee specific locations, administrative functions and other various aspects

9

of the operations of the Debtor; they are not responsible for the daily operations in the same fashion as an individual appointed or elected by a board of directors. Attached hereto as **Exhibit C** is a general job description and explanation of the Key Employees' positions.

30. Lastly, the Key Employees are not in control of the Debtor. Courts have held that, when looking to control, insiders must have "at least a controlling interest in the debtor or ... exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of assets." In re Babcock Dairy Co., 70 B.R. 657, 661 (Bankr. N.D. Ohio 1986)(citations omitted). The Key Employees are responsible for, among other things, ensuring compliance with various regulations and rules and maintaining a safe and proper work place. They are not involved in overall strategic decisions. See Exhibit A for a summary of the Key Employees' reporting requirements.

31. In In re Borders Group, Inc., the Bankruptcy Court for the Southern District of New York held that employees did not qualify as "insiders" where such employees were responsible for day-to-day operations but did not implement company policy, did not report to the board of directors and were required to report to an officer. 453 B.R. at 469-470. For the foregoing reasons, the Debtor believes the Key Employees are not "insiders" as such term is defined in the Bankruptcy Code and therefore are not subject to Sections 503(c)(1) or (2) of the Bankruptcy Code.

      ii.    **The Proposed Bonuses Satisfy Section 503(c)(3) of the Bankruptcy Code and the *Dana Factors***

32. Section 503(c)(3) of the Bankruptcy Code does not preclude approval of the proposed bonuses. This "catch all" provision of the 2005 amendments to compensation procedures in chapter 11 cases prohibits, in relevant part, transfers made outside the ordinary

10

course of business and not justified by the facts and circumstances of the case. 4 Collier on Bankruptcy ¶ 503.17 (15th ed. rev. 2009). Even though the Debtor does not believe the Key Employees are "insiders" under Section 101(31) of the Bankruptcy Code, the Debtor has analyzed the proposed bonuses under Section 503(c)(3) of the Bankruptcy Code in an abundance of caution because they are not ordinary course transactions. To be clear, however, the Debtor submits the proposed bonuses are "justified by the facts and circumstances" of this Chapter 11 Case.

33. Courts that have analyzed the prohibition on "other transfers" to certain categories of employees set forth in Section 503(c)(3) of the Bankruptcy Code have applied the same standard under that section as they do under Section 363(b) of the Bankruptcy Code - that is, whether to use estate property outside the ordinary course of business is based on the debtor's business judgment. See In re Dana Corp, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006), citing In re Nobex, 2006 WL 4063024, 2006 Bankr.LEXIS 417 (Bankr.D.Del. Jan. 19, 2006) (court concluded that section 503(c)(3) was nothing more than a reiteration of the standard under 363 under which courts had previously authorized transfers outside the ordinary course of business based on the business judgment of the debtor).

34. The Court in Dana set forth several factors that courts may consider when determining whether the "business judgment" standard is met for Section 503(c)(3) purposes:

    i.    whether the plan proposed has a reasonable relationship to the results to be obtained;

    ii.    whether the cost of the plan is reasonable in light of the debtor's assets, liabilities, and earnings potential;

    iii.    whether the scope of the plan is fair and reasonable or whether it discriminates unfairly;

11

      iv.      whether the plan comports with industry standards;

      v.      whether the debtor undertook due diligence in investigating the need for a plan, the employees that should be incentivized, market standards; and

      vi.      whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation.

Dana, 358 B.R. at 576-577. Though the Debtor is unaware of any court which has required the debtor to demonstrate compliance with each of the above standards, the Debtor believes these standards in general have been met here.

35. First, the proposed bonuses have a reasonable relationship to the results sought to be obtained. The bonuses are aimed at maintaining continuity of the Debtor's operations at a time when Key Employees have no job security. The proposed bonuses should hopefully incent the Key Employees to remain employed with the Debtor during this critical sales period and will ensure the value of the Debtor's assets in the Sale Process are maximized and the Debtor's assets and operations are efficiently administered. The Debtor believes the Key Employees will begin to look for alternative, more secure, employment unless properly incented. Thus, the Debtor believes that the proposed bonus payments have a reasonable relationship to the results sought to be obtained, namely the sale of the Debtor's assets for the maximum value and the continued operations of the Debtor in the ordinary course of business.

36. Second, the proposed bonuses are reasonable in light of the anticipated proceeds from the Sale Process and the value of the estate. The total maximum cost of the proposed bonuses is less than $61,000.00, representing a small portion of the anticipated proceeds from the Sale Process and the anticipated cash collateral value of the Debtor's estate as of any closing. The Key Employees represent seven (7) of the Debtor's 112 employees as of October 29, 2013.

37. Third, the Debtor's proposed bonuses do not discriminate unfairly. The Key Employees were selected by the nature and importance of their positions as well as their specialized knowledge regarding the Debtor.

38. Fourth, the Debtor believes the proposed bonuses comport with industry standards. Though the Debtor has not previously provided bonuses of this nature to its employees, the Debtor submits that the bonuses to be paid as proposed herein are not intended to provide the Key Employees a windfall, but rather to ensure that they are adequately compensated for staying in the Debtor's employ during the Sale Process and through the Employment Period.

39. Fifth, the Debtor exercised proper diligence in determining whether the proposed bonuses were necessary. Temporary employees or consultants required to replace the Key Employees would have neither the knowledge of the Debtor nor the efficiency required to perform the Key Employee's responsibilities in a timely, cost-beneficial manner.

40. Finally, although the Debtor has not engaged or sought to retain independent compensation legal counsel with respect to the proposed retention bonuses, the Debtor submits that the absence of this factor should not determine the outcome. As held by the Court in Borders, non-satisfaction of the final Dana factor is not fatal to a proposed plan. Borders, 453 B.R. at 477.

## V.     NOTICE

41. The Debtor has provided no less than three (3) days written notice of this Motion via facsimile, overnight mail or CM/ECF (as applicable), together with a copy of the Motion and all exhibits thereto, to the following parties: (i) the office of the United States Trustee for the Northern District of Illinois, (ii) counsel to the Secured Lenders; (iii) counsel to the Committee;

13

and (iv) other interested parties who have requested notice or are otherwise registered on the Court's CM/ECF service list. Counsel for the Debtor requests that the Court find such notice to be appropriate and sufficient under the circumstances and requests that any further notice requirements be waived and/or reduced in accordance with Bankruptcy Rules 2002(a) and 9006(c).

WHEREFORE, for the reasons expressed herein, Keywell L.L.C. respectfully requests the entry of an order, a proposed form of which has been filed in connection herewith, authorizing the relief requested herein without further notice and for such other and further relief as is just.

>Respectfully Submitted,
>
>KEYWELL L.L.C.
>
>By: __/s/ Steven B. Chaiken__
>    One of Their Attorneys

HOWARD L ADELMAN, ESQ. (ARDC #0015458)
ERICH S. BUCK, ESQ. (ARDC #6274635)
STEVEN B. CHAIKEN, ESQ. (ARDC #6272045)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for Keywell L.L.C.**