**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | Honorable Eugene R. Wedoff |
| Debtor. | ) | |
| | ) | Hearing Date:  November 26, 2013 |
| _____) | | Hearing Time:  9:30 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 26, 2013 at 9:30 a.m., we shall appear before the Honorable Eugene R. Wedoff of the United States Bankruptcy Court, Northern District of Illinois, in Courtroom 744 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION TO COMPROMISE CONTROVERSY WITH WELLS FARGO AND FOR SHORTENED AND LIMITED NOTICE,** a copy of which is hereby served upon you.

> HOWARD L ADELMAN, ESQ. (ARDC #0015458)
> ERICH S. BUCK, ESQ. (ARDC #6274635)
> STEVEN B. CHAIKEN, ESQ. (ARDC #6272045)
> ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Blvd., Suite 1050
> Chicago, Illinois 60604
> Tel (312) 435-1050
> Fax (312) 435-1059
> **Counsel for Keywell L.L.C.**

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and the motion referred to therein were served upon the parties listed on the service list attached hereto via CM/ECF and/or first class mail as indicated below, on November 19, 2013.

By:  \_/s/ Alexander F. Brougham_____

# SERVICE LIST

## *Via ECF*

Patrick S Layng
Kimberly Bacher
Office of the U.S. Trustee, Region 11
219 S Dearborn St, Room 873
Chicago, IL 60604

Gordon E. Gouveia, Esq.
Steven B. Towbin, Esq.
Shaw Fishman Glantz & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
*Counsel to NewKey Group, LLC & NewKey Group II, LLC*

Mark W. Page, Esq.
Kelley Drye & Warren LLP
333 W. Wacker Drive, Suite 2600
Chicago, IL 60606
*Counsel to Alpert & Alpert Iron & Metal, Inc.*

Matthew T. Gensburg, Esq.
Nancy A. Peterman, Esq.
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
*Counsel to Cronimet Holdings, Inc.*

Thomas V. Askounis, Esq.
Alex Darcy, Esq.
Amrit S. Kapai, Esq.
Askounis & Darcy, PC
444 N. Michigan Avenue, Suite 3270
Chicago, IL 60611
*Counsel to Wells Fargo Equipment Finance, Inc.*

Monette W. Cope, Esq.
Weltman, Weinberg & Reis Co., L.P.A.
965 Keynote Circle
Brooklyn Hts, OH 44131
*Counsel to Toyota Motor Credit Corporation & Gibson Machinery, LLC*

Stephen A. Yokich, Esq.
Cornfield and Feldman LLC
25 East Washington Street, Suite 1400
Chicago, IL 60602
*Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union*

Andrew J. Abrams, Esq.
Boodell & Domanskis, LLC
353 N. Clark Street, Suite 1800
Chicago, IL 60654
*Counsel to Loni-Jo Metal Corporation*

Eric R. von Helms, Esq.
Kohner, Mann & Kailas, S.C.
4650 North Port Washington Road, 2nd Floor
Milwaukee, WI 53212
*Counsel to Banc of America Leasing & Capital, LLC*

David A. Agay, Esq.
Joshua A. Gadharf. Esq.
Micah E. Marcus, Esq.
McDonald Hopkins LLC
300 North LaSalle, Suite 2100
Chicago, IL 60654
*Counsel to Official Committee of Unsecured Creditors*

Jacquelyn T. Vengal, Esq.
Miriam R. Stein, Esq.
Chuhak & Tecson, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
*Counsel to TCF Equipment Finance, Inc.*

Wendy Kaleta Skrobin, Esq.
McFadden & Dillon, P.C.
120 S. LaSalle Street, Suite 1335
Chicago, IL 60603
*Counsel to PNC Bank, National Association & PNC Equipment Finance, LLC*

Steven M. Wolock, Esq.
Kathleen H. Klaus, Esq.
Maddin, Hauser, Wartell, Roth & Heller, P.C.
28400 Northwestern Highway, Third Floor
Southfield, MI 48034
*Counsel to Marwol Metals, Ltd.*

Joel A. Stein, Esq.
Deutsch Levy & Engel Chtd.
225 W. Washington Street, Suite 1700
Chicago, IL  60606
***Counsel to 75S Corp. dba FMC Metals***

### *Additional Parties Requesting Notice –*
### *Via First Class Mail*

Craig A. Wolfe, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY  10178
***Counsel to Alpert & Alpert Iron & Metal, Inc.***

Kaye E. Tucker, Esq.
Tucker Law Firm
9440 Santa Monica Blvd., Suite 504
Beverly Hills, CA  90210
***Counsel to Alpert & Alpert Iron & Metal, Inc.***

Thomas P. Yoder, Esq.
Barrett & McNagny LLP
215 East Berry Street
P.O. Box 2263
Fort Wayne, IN  46801
***Counsel to OmniSource Corporation***

Marc E. Shach, Esq.
Weinstock, Friedman & Friedman, P.A.
4 Reservoir Circle
Baltimore, MD  21208
***Counsel to PNC Bank, National Association & PNC
Equipment Finance, LLC***

Buchanan Ingersoll & Rooney PC
Attn:  Timothy P. Palmer, Esq.
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219-1410
***Counsel to ATI Allvac and ATI Wah Chang***

American Transport Group
c/o Tom Soehike
1900 West Kinzie
Chicago, IL  60622

Millis Industries Inc.
Attn:  Robert Valchuis
1372 Main Street
Millis, MA  02054

Robert A. Soriano, Esq.
Greenberg Traurig, P.A.
625 East Twiggs Street, Suite 100
Tampa, FL  33602

Richard C. Josephson, Esq.
Schnitzer Steel Industries, Inc.
299 SW Clay Street, Suite 350
Portland, OR 97201
***Counsel to Schnitzer Steel Industries, Inc.***

James Devine
Schnitzer Steel Industries, Inc.
12 E. 49th Street, 24th Floor
New York, NY 10014
***Counsel to Schnitzer Steel Industries, Inc.***

Ted W. Hight III, Esq.
Thompson, O'Brien, Kemp & Nasuti, PC
40 Technology Parkway South
Suite 300
Norcross, GA  30092
***Counsel to Mansfield Oil Company of Gainesville, Inc.***

Christopher M. Candon, Esq.
Sheehan Phinney Bass + Green PA
1000 Elm Street
Manchester, NH 03101
***Counsel to wTe Recycling, Inc. & wTe Corporation***

Jeffrey W. Lewis
ACI Industries, Ltd.
970 Pittsburgh Drive
Delaware, OH 43015

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | Honorable Eugene R. Wedoff |
| Debtor. | ) | |
| | ) | Hearing Date:  November 26, 2013 |
| _____ ) | | Hearing Time:  9:30 a.m. |

## MOTION TO COMPROMISE CONTROVERSY WITH WELLS FARGO AND FOR SHORTENED AND LIMITED NOTICE

NOW COMES, Keywell L.L.C., an Illinois limited liability company, debtor and debtor in possession herein ( the "**Debtor**"), by and through its undersigned counsel, and by this motion (the "**Motion**") requests the entry of an order authorizing the Debtor to compromise outstanding disputes and claims with Wells Fargo Equipment Finance, Inc. ("**WFEF**") and the Wells Fargo Equipment Finance division of Wells Fargo Bank, N.A. ("**Wells Fargo Bank**," and collectively with WFEF, "**Wells Fargo**"), and to shorten and limit the notice and service requirements in connection therewith, and in support thereof, respectfully states as follows:

### I.     JURISDICTION AND VENUE

1.     On September 24, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "**Code**").  Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108 in the above-captioned case (the "**Chapter 11 Case**").

2.     There has not been a trustee appointed in the Chapter 11 Case.  On October 3, 2013, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**") [Docket Entry No. 52, *amended by* Docket Entry No. 128].

1

3.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The applicable rules are Rules 2002(a)(3),

9006(c), and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II.      <u>BACKGROUND</u>

4.      The Debtor is engaged in the business of collecting and processing stainless steel,

high-temperature alloy, and titanium scrap at various locations throughout the United States.

The nature of the Debtor's business and the factual background relating to the Debtor's

commencement of this Chapter 11 Case is set forth in detail in the *Declaration of J. Mark Lozier*

*in Support of Chapter 11 Petition and First-Day Motions* [Docket Entry No. 6] filed on the

Petition Date and incorporated herein by reference.  In connection with the operation of its

business, the Debtor owns and leases railcars for the delivery of scrap to its customers.

5.      Wells Fargo is engaged in the business of financing and/or leasing railcars and

other machinery and equipment.[1]

6.      Prior to the Petition Date, the Debtor and WFEF entered into the following

agreements with respect to financing and/or leasing railcars and other equipment:

> a.      That certain Master Railcar Lease Agreement dated December 12, 2006 (the
>
> "**Railcar Lease**"), with the Debtor as lessee, together with Schedule No. 1 thereto
>
> (the "**Railcar Lease Schedule**," and together with the Railcar Lease, the "**2006**
>
> **Railcar Lease**") for the lease of fifty (50) railcars more particularly described
>
> therein (the "**WFEF Railcars**"); and

---

[1]  The Debtor and Wells Fargo are collectively referred to herein as the "**Parties**" and individually as a
"**Party**."

b.  That certain Master Lease Agreement No. 400 dated June 19, 2008 (the "2008
**Master Lease Agreement**"), and Supplement No. 400 dated June 19, 2008,
Supplement No. 401 dated October 2, 2008, and Supplement No. 402 dated
December 18, 2008 (collectively, the "**Equipment Lease Supplements**," and
together with the 2008 Master Lease Agreement, the "**2008 Equipment Lease**")
for the lease of certain machinery and equipment described in the Equipment
Lease Supplements (collectively, the "**Equipment Lease Collateral**").

7.      Prior to the Petition Date, the Debtor and Wells Fargo Bank entered into that
certain Agreement No. 301-9678965-001 dated as of September 16, 2011 and No. 301-9678965-
002 dated as of October 25, 2012 under which the Debtor is financing two (2) Nissan Forklifts
(the "**Wells Fargo Forklifts**") with Wells Fargo Bank (collectively, the "**Wells Fargo Bank
Forklift Agreement**").

8.      On October 10, 2013, WFEF filed a proof of claim in the Chapter 11 Case
denominated on the claims register maintained with the Court as claim number 15-1 (together
with any attachments or exhibits thereto, the "**Proof of Claim**") and therein seeks:

Amount Accrued and Unpaid as of the
Date of Default pursuant to Paragraphs
13 and 19 of the 2006 Railcar Lease:
   a.  Casualty Value:        $ 1,350,000
   b.  Return Transportation
      and Refurbishment Costs:   $ 227,500

Unpaid Other Charges Due
   a.  Pre-Petition:        $ 3,750
   b.  Post-Petition:      $ 0.00

**Total Amount Due on Lease:**    **$ 1,631,250 plus interest, attorneys' fees
and costs**

3

9.      The Debtor contends that the 2008 Equipment Lease has been paid in full prior to the Petition Date and that any interest and/or security interest held by Wells Fargo in the Equipment Lease Collateral was released by operation of law upon such full satisfaction.

10.     Wells Fargo contends that the 2008 Equipment Lease also grants to WFEF a security interest in and to the Equipment Lease Collateral to secure the unpaid obligations under the 2006 Railcar Lease (the "**WFEF Cross-Collateralization Lien**") and accordingly, any claim arising out of the 2006 Railcar Lease is secured by the Equipment Lease Collateral; and

11.     The Debtor disputes the Proof of Claim and the WFEF Cross-Collateralization Lien, and nothing contained herein shall be deemed or construed to be an admission of liability of any kind or nature with respect to the Proof of Claim, and/or the WFEF Cross-Collateralization Lien, or the existence of facts which would give rise to such claims and/or interests.

12.     In an effort to maximize the value of its bankruptcy estate and produce a dividend to unsecured creditors, the Debtor has filed a motion under Section 363 of the Code for authority to sell certain assets through a public auction sale conducted pursuant to that certain Order (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-Up Fee and Form of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling a Public Auction and Authorizing the Sale of the Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases [Docket Entry No. 121] entered by the Court on October 21, 2013 (the "**Asset Sale**").

13.     On October 11, 2013, WFEF filed its Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) [Docket Entry No. 81] (together with any attachments or exhibits

4

thereto, the "**Motion for Relief**") and its Motion for Order Requiring Debtor to Assume or

Reject Lease [Docket Entry No. 83] (together with any attachments or exhibits thereto, the

"**Motion to Assume**") in the Bankruptcy Case.

### III.    PROPOSED SETTLEMENT AGREEMENT

14.      In order to maximize its ability to generate recoveries for all creditors in this

Chapter 11 Case and to avoid unnecessary, costly, and protracted litigation, the Debtor has

engaged in extensive negotiations with counsel for Wells Fargo and counsel for the Committee.

15.      The Parties have been able to reach a global compromise and settlement with

Wells Fargo, subject to the approval of this Court.  To that end, the Parties have conditionally

entered into that certain Settlement Agreement (the "**Settlement Agreement**"), a copy of which

is attached hereto as <u>Exhibit 1</u> and expressly made a part hereof,[2] which will become effective

upon the entry of an order substantially in the form of the proposed order attached hereto (the

"**Agreed Order**").

16.      Subject to the Court's approval, the terms of the Settlement Agreement include:

    a.  A payment by the Debtor to WFEF of One Hundred Seventy-Five Thousand
Dollars ($175,000) in full satisfaction of the Keywell/WFEF Obligations (with the
exception of any obligations under the Settlement Agreement);

    b.  The filing of an agreed motion and proposed order seeking to reject the 2006
Railcar Lease pursuant to Section 365 of the Code;

    c.  The return of all of the WFEF Railcars to WFEF;

    d.  WFEF's withdrawal of its Proof of Claim with prejudice;

    e.  A payment by the Debtor to Wells Fargo Bank, from the proceeds of the Asset
Sale, of Forty Five Thousand Five Hundred Twenty-One Dollars and Sixty-One
Cents ($45,521.61) in full satisfaction of the Debtor's obligations under the Wells
Fargo Bank Forklift Agreement

---

[2]  Capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement
Agreement.

     f.   Releases and indemnities running in favor of both the Debtor and Wells Fargo.

17.    Over the course of negotiations among the Parties and the Committee, the Settlement Agreement was revised several times in response to comments by counsel to the Committee.  Counsel to the Debtor is now informed that the Committee has no objection to the relief requested herein.

## IV.    <u>RELIEF REQUESTED</u>

18.    By this Motion, the Debtor seeks approval of the Settlement Agreement and entry of the Agreed Order pursuant to Bankruptcy Rule 9019(a), and hereby represents that the Settlement Agreement constitutes a fair and reasonable compromise with Wells Fargo, that it will expedite the administration of the Debtor's estate, and that it is in the best interests of the estate in light of the costs and attendant risks of litigation if a mutually satisfactory settlement were not approved.

19.    Bankruptcy Rule 9019(a) provides in relevant part that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Compromises are a normal part of the bankruptcy process.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  As a matter of policy, "[c]ompromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy."  *In re Quay Corp.*, 372 B.R. 378, 382 (Bankr. N.D. Ill. 2007) (citing *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000)).

20.    The benchmark for determining the propriety of a bankruptcy settlement under Bankruptcy Rule 9019(a) is whether the settlement is in the best interests of the estate.  *In re*

*Holly Marine Towing, Inc.,* 669 F.3d 796, 801 (7th Cir. 2012); *In re Doctors Hosp. of Hyde*

*Park, Inc.,* 474 F.3d 421, 426 (7th Cir. 2007).

21.     In determining whether a proposed settlement is in the best interests of the estate,

neither an evidentiary hearing nor a rigid mathematical analysis is required.  *Depoister v. Mary*

*M. Holloway Found.*, 36 F.3d 582, 586, 588 (7th Cir. 1994); *In re Energy Coop., Inc.*, 886 F.2d

921, 928-29 (7th Cir. 1989).  Rather, the bankruptcy court must determine whether the proposed

settlement "falls into the reasonable range of possible litigation outcomes."  *Holly Marine*

*Towing*, 669 F.3d at 801 (internal citation omitted).

22.     The Settlement Agreement is in the best interests of both the Debtor's estate and

creditors.  For a total cost of $220,521,61 in payments to Wells Fargo, the Debtor will eliminate

an allegedly secured claim against the estate of over $1,631,250, and eliminate any additional

interest Wells Fargo might claim (in the likely event that the Wells Fargo Forklifts are among the

property assigned) in the proceeds of the Asset Sale, all without the inevitable costs, risks, and

delays of litigation.  Accordingly, the Settlement Agreement is in the best interests of the estate

and creditors and should be approved by the Court.

## V.     <u>NOTICE</u>

23.     Counsel for the Debtor has served this Motion on seven (7) days' notice upon: (a)

the Office of the United States Trustee; (b) counsel to the Debtor's secured lenders, NewKey

Group, LLC and NewKey Group II, LLC; (c) counsel to the Committee; (d) counsel to Wells

Fargo; and (e) all other parties who have requested notice or are otherwise registered on the

Court's CM/ECF system in the Chapter 11 Case.  Based upon: (a) the considerable expense that

would befall the estate by requiring service on each of the approximately 1200 creditors in the

Chapter 11 Case; (b) the need for a speedy resolution with Wells Fargo due to the impending

Asset Sale; and (c) the agreement of the Committee to the relief sought herein, the Debtor

submits that such notice is appropriate and sufficient under the circumstances.  The Debtor

therefore requests that any further notice requirements be waived and/or reduced in accordance

with Bankruptcy Rules 2002(a)(3), 9006(c), and 9019.

WHEREFORE, the Debtor respectfully requests entry of an order in the form attached

hereto, and for such other and further relief as this Court deems just and proper.

Respectfully Submitted,

KEYWELL L.L.C.

By:   /s/ Alexander F. Brougham
        One of Its Attorneys

HOWARD L ADELMAN, ESQ. (ARDC #0015458)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for Keywell L.L.C.**

8

# Exhibit 1

Settlement Agreement

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "**Agreement**") is made and entered into this
____ day of _____, 2013, by and among KEYWELL L.L.C., an Illinois limited liability
company, debtor and debtor-in-possession ("**Keywell**"), and WELLS FARGO EQUIPMENT
FINANCE, INC., a Minnesota corporation ("**WFEF**") and the Wells Fargo Equipment Finance
division of WELLS FARGO BANK, N.A. ("**Wells Fargo Bank**," and collectively with WFEF,
"**Wells Fargo**") (Keywell, WFEF, and Wells Fargo Bank are collectively referred to herein as
the "**Parties**" and individually as a "**Party**").

# RECITALS

A.      **WHEREAS**, Keywell is engaged in the business of collecting and processing
stainless steel scrap, high temperature alloys and titanium at various locations within the United
States.  In connection with the operation of its business, Keywell owns and leases railcars for the
delivery of scrap to its customers; and

B.      **WHEREAS**, Wells Fargo is engaged in the business of financing and/or leasing
railcars and other machinery and equipment; and

C.      **WHEREAS**,  on September 24, 2013 (the "**Petition Date**"), Keywell filed a
voluntary Chapter 11 petition under Title 11, United States Code (the "**Bankruptcy Code**") in
the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy
Court**"), initiating a bankruptcy case that remains pending before the Bankruptcy Court as case
No. 13-37603 (the "**Bankruptcy Case**"); and

D.      **WHEREAS**, prior to the Petition Date, Keywell and WFEF entered into the
following agreements with respect to financing and/or leasing railcars and other equipment (any
and all obligations of any kind or nature of Keywell to WFEF, including, but not limited to the
obligations arising out of the following are hereinafter collectively referred to as the
"**Keywell/WFEF Obligations**"):

1.      That certain Master Railcar Lease Agreement dated December 12, 2006
(the "**Railcar Lease**"), with Keywell as lessee, together with Schedule No. 1 thereto (the
"**Railcar Lease Schedule**," and together with the Railcar Lease, the "**2006 Railcar
Lease**") for the lease of fifty (50) railcars more particularly described therein (the
"**WFEF Railcars**");

2.      That certain Master Lease Agreement No. 400 dated June 19, 2008 (the
"**2008 Master Lease Agreement**"), and Supplement No. 400 dated June 19, 2008,
Supplement No. 401 dated October 2, 2008, and Supplement No. 402 dated December
18, 2008 (collectively, the "**Equipment Lease Supplements**," and together with the
2008 Master Lease Agreement, the "**2008 Equipment Lease**") for the lease of certain
machinery and equipment described in the Equipment Lease Supplements (collectively,
the "**Equipment Lease Collateral**"); and

1

E.      **WHEREAS**, prior to the Petition Date, Keywell and Wells Fargo Bank entered into the following agreements with respect to financing and/or leasing railcars and other equipment (any and all obligations of any kind or nature of Keywell to Wells Fargo Bank, including, but not limited to the obligations arising out of the following are hereinafter collectively referred to as the "**Keywell/Wells Fargo Bank Obligations**"):

3.      That certain Agreement No. 301-9678965-001 dated as of September 16, 2011 and No. 301-9678965-002 dated as of October 25, 2012 under which Keywell is financing two (2) Nissan Forklifts (the "**Wells Fargo Bank Forklifts**") with Wells Fargo Bank (collectively, the "**Wells Fargo Bank Forklift Agreement**").

F.      **WHEREAS**, on October 10, 2013, WFEF filed a proof of claim in the Bankruptcy Case denominated on the claims register maintained with the Bankruptcy Court as claim number 15-1 (together with any attachments or exhibits thereto, the "**Proof of Claim**") and therein seeks:

Amount Accrued and Unpaid as of the
Date of Default pursuant to Paragraphs
13 and 19 of the 2006 Railcar Lease:

| | | |
|---|---|---|
| a. | Casualty Value: | $ 1,350,000 |
| b. | Return Transportation and Refurbishment Costs: | $   227,500 |

Unpaid Other Charges Due

| | | |
|---|---|---|
| a. | Pre-Petition | $     3,750 |
| b. | Post-Petition: | $      0.00 |

**Total Amount Due on Lease:**      **$ 1,631,250 plus interest, attorneys' fees and costs**

G.      **WHEREAS**, Keywell contends that the 2008 Equipment Lease has been paid in full prior to the Petition Date and that any interest and/or security interest held by WFEF in the Equipment Lease Collateral was released by operation of law upon such full satisfaction; and

H.      **WHEREAS**, WFEF contends that the 2008 Equipment Lease also grants to WFEF a security interest in and to the Equipment Lease Collateral to secure the unpaid obligations under the 2006 Railcar Lease (the "**WFEF Cross-Collateralization Lien**") and accordingly, any claim arising out of the 2006 Railcar Lease is secured by the Equipment Lease Collateral; and

I.      **WHEREAS**, Keywell disputes the Proof of Claim and the WFEF Cross-Collateralization Lien, and nothing contained herein shall be deemed or construed to be an admission of liability or any kind or nature with respect to the Proof of Claim, and/or the WFEF Cross-Collateralization Lien, or the existence of facts which would give rise to such claims and/or interests; and

2

J.       **WHEREAS**, in an effort to maximize the value of its bankruptcy estate and produce a dividend to unsecured creditors, Keywell has filed a motion under Section 363 of the Bankruptcy Code for authority to sell certain assets through a public auction sale conducted pursuant to that certain Order (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-Up Fee and Form of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling a Public Auction and Authorizing the Sale of the Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases [Docket Entry No. 121] entered by the Bankruptcy Court on October 21, 2013 (the "**Asset Sale**"); and

K.       **WHEREAS**, on October 11, 2013, WFEF filed its Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) [Docket Entry No. 81] (together with any attachments or exhibits thereto, the "**Motion for Relief**") and its Motion for Order Requiring Debtor to Assume or Reject Lease [Docket Entry No. 83] (together with any attachments or exhibits thereto, the "**Motion to Assume**") in the Bankruptcy Case; and

L.       **WHEREAS**, the Parties hereto desire to fully and finally resolve each and every matter of whatever kind or nature which may exist between them in accordance with the terms and conditions hereinafter set forth; and

M.       **WHEREAS**, the Parties hereto have engaged in extensive negotiations with the assistance of counsel and concluded that the execution and delivery by them of this Agreement will avoid protracted and expensive litigation, and acknowledge that they are receiving a substantial and valuable benefit if the settlement contained herein is consummated.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties severally agree as follows:

1.       **Recitals.**  The recitals hereinbefore set forth constitute an integral part of this Agreement, evidencing the intent of the Parties in executing this Agreement, and describing the circumstances surrounding its execution.  Accordingly, said recitals are, by express reference, made a part of the covenants hereof, and this Agreement shall be construed in the light thereof.

2.       **Effective Date.**  The "Effective Date" of this Agreement shall be the date upon which an order approving this Agreement (the "**Settlement Order**") is entered on the docket in the Bankruptcy Case.  This Agreement is subject to and contingent upon the entry of the Settlement Order by the Bankruptcy Court.  In the event the Bankruptcy Court does not enter the Settlement Order on or before December 4, 2013, then, in such event, this Agreement shall be null and void and shall have no evidentiary or other legal effect.  The Parties shall use all commercially reasonable efforts to obtain entry of the Settlement Order in a timely fashion.

3.       **Settlement Payment.**  Within three (3) business days after the Effective Date, Keywell shall pay to WFEF an amount equal to One Hundred Seventy-Five Thousand Dollars ($175,000) (the "**Settlement Payment**") and except as provided herein and excepting further Keywell's obligation to Wells Fargo Bank under the Wells Fargo Bank Forklift Agreement, shall

3

be in full and final satisfaction of the Keywell/WFEF Obligations, provided, however, nothing contained herein shall be, nor construed to be a covenant, release, waiver or discharge of the terms and conditions of this Agreement.  Keywell shall make the Settlement Payment to WFEF, by wire transfer of immediately available funds to the account of WFEF, as follows:

> Wells Fargo Bank, N.A.
> 6th Street & Marquette Avenue
> Minneapolis, MN 55402
> ABA Routing No.: 121000248
> Account No.: 10313
> Attn. Wells Fargo Equipment Finance, Inc.
> Reference: (Keywell LLC)

**4.** **Agreed Rejection Order.**  The Parties hereto agree that the 2006 Railcar Lease shall be conclusively deemed rejected and terminated upon the entry of the Settlement Order and any and all claims arising out of or relating to such rejection and termination shall be conclusively deemed satisfied by the Settlement Payment.  An agreed motion and proposed order (the latter substantially in the form of Exhibit A hereto) seeking to reject the 2006 Railcar Lease shall be filed with the Bankruptcy Court simultaneously with this Agreement.  The Parties shall use all commercially reasonable efforts to obtain entry of said proposed order in a timely fashion.

**5.** **Return of the WFEF Railcars.**  Within three (3) business days of the Effective Date, Keywell shall make available for recovery by WFEF at the location of Keywell commonly known as 11900 South Cottage Grove Avenue, Chicago, Illinois 60628 (the "**Keywell Premises**") all of the WFEF Railcars with the exception of Railcar KEYX 1243, which was heretofore made available for recovery at Q/Railcar, Inc., 1745 165th Street #5, Hammond, Indiana 46320, email:  bqrail@sbcglobal.net, phone number 219-853-1990 (the "**Q/Railcar Premises**") during  regular business hours and subject to reasonable prior notice by WFEF to Keywell and Q/Railcar, Inc.  Keywell shall be conclusively deemed to have surrendered possession of the WFEF Railcars on an "as is/where is" basis without representations or warranties of any kind or nature, including, but not limited to latent or patent defects, except for the representations and warranties set forth below.  Keywell shall cause Q/Railcar, Inc. to make available for recovery Railcar KEYX 1243 from the Q/Railcar Premises free of all storage or other charges.

**6.** **Covenants of WFEF.**  WFEF acknowledges and agrees that:

(a) representatives of WFEF were given access to inspect the WFEF Railcars and did in fact inspect same;

(b) it is aware of the condition of the WFEF Railcars and in particular Railcar KEYX 1243, which is or was in the possession of Q/Railcar, Inc.;

(c) it is accepting possession of WFEF Railcars in their present condition,  on an "as is/where is" basis without representations or warranties of any kind or nature, including, but not limited to latent or patent defects, except for the representations and warranties set forth below; and

4

(d) it shall cause the removal of the WFEF Railcars from the Keywell Premises within sixty (60) days of the Effective Date.

**7.     Assignment by Keywell of its Interest in the WFEF Railcars.**  Upon surrendering possession as provided above in paragraph 5, Keywell shall be conclusively deemed to have released and forever quitclaimed all of its right, title, and interest in and to the WFEF Railcars unto WFEF to have and hold the same free and clear of any interest of Keywell or the Keywell Bankruptcy Estate.

**8.     Sale of and Payments on the Wells Fargo Bank Forklifts.**  Wells Fargo Bank hereby consents to the sale of the Wells Fargo Bank Forklifts in the Asset Sale.  In the event a closing takes place on the Asset Sale (the "**Closing**"), Wells Fargo Bank conclusively agrees to accept the sum of Forty Five Thousand Five Hundred Twenty-One Dollars and Sixty-One Cents ($45,521.61) (the "**Forklift Payoff**") in full and final satisfaction of the obligations of Keywell under the Wells Fargo Bank Forklift Agreement.  Keywell shall pay an amount equal to the Forklift Payoff within three (3) business days following the Closing by wire transfer of immediately available funds to the account of Wells Fargo Bank as follows:

> Wells Fargo Equipment Finance Manufacturer Services Group,
> a division of Wells Fargo Bank, N.A.
> Wells Fargo Bank
> 420 Montgomery Street
> San Francisco, CA 94104
> ABA Routing No.: 121000248
> Account No.: 4121687248
> Reference: Lease No. 301-9678965-001
> *Please e-mail incoming wire notices to: wfefmsgaccounting@wellsfargo.com*

Pending payment of the Forklift Payoff, Wells Fargo Bank consents to the sale of the Wells Fargo Bank Forklifts free and clear of liens, claims and encumbrances with all such interests conclusively attaching to the sale proceeds without further act or deed or order of court. Upon receipt of the Forklift Payoff by Wells Fargo Bank, any and all interests held by Wells Fargo Bank in and to the proceeds of the Asset Sale shall be conclusively deemed released without further act or deed or order of court.

**9.     Mutual Release.**  Except for the covenants and agreements to be performed by any Party as provided in this Agreement, and effective as of the date upon which Wells Fargo is in receipt of their respective Settlement Payments (the "**Release Date**"), the Parties hereto, and each of them, on behalf of themselves and their respective officers, directors, shareholders, trustees, employees, partners, members, managers, agents, representatives, attorneys, guarantors, subsidiaries, predecessors, assigns, successors and heirs, do hereby mutually release, acquit, and discharge each other and their respective officers, directors, shareholders, trustees, executors, administrators, employees, partners, members, managers, agents, representatives, attorneys, guarantors, subsidiaries, predecessors, assigns, successors, and heirs, absolutely and irrevocably from any and all asserted and unasserted claims, liens, rights, causes of action, suits, charges, complaints, demands, damages, loss, expense, bills, accounts, debts, liability, or detriment of

5

whatever kind or character, whether at law or in equity, whether known or unknown, liquidated or unliquidated, disputed or undisputed, contingent, inchoate or matured, whether heretofore or hereafter accruing, relating to, arising out of, or are in any way connected to the 2006 Railcar Lease, 2008 Equipment Lease, and the Wells Fargo Bank Forklift Agreement, or any of the transactions associated therewith, including without limitation:

    (a) any and all claims of any kind or nature asserted in or by the Proof of Claim;

    (b) any and all liens (including the WFEF Cross-Collateralization Lien) on, or interests alleged to be held by WFEF in, the personal property described in, or covered by, the 2008 Equipment Lease (including the Equipment Lease Supplements); and

    (c) any and all claims of any kind or nature resulting from or related to Keywell's rejection of the 2006 Railcar Lease under Section 365 of the Bankruptcy Code.

        **10.**    **Q/Railcar, Inc. Estoppel Letter.**  Simultaneously with the execution and delivery of this Agreement, Keywell shall deliver to WFEF a letter substantially in the form represented by <u>Exhibit B</u> hereto, executed by a duly authorized representative of Q/Railcar, Inc. (the "**Estoppel Letter**").  The foregoing obligation shall be satisfied by WFEF's (or its attorney's) receipt by email or facsimile of a copy of the executed Estoppel Letter.

        **11.**    **Agreement to Withdraw Proof of Claim with Prejudice.**  Upon the occurrence of the Release Date:

    (a) the Proof of Claim shall be deemed to be conclusively withdrawn with prejudice; and

    (b) WFEF shall be conclusively deemed to have waived any further right to file an additional or amended proof of claim.

        **12.**    **Assignment of Damage Claims Related to Railcar KEYX 1243.**  Subject to the terms and conditions of this Agreement, and effective upon the Release Date, Keywell hereby assigns to WFEF all of its right, title and interest, if any, to receive a monetary recovery arising as a result of damage to Railcar KEYX 1243 (the "**1243 Claim Rights**").  Keywell assigns to WFEF the foregoing interests on an "as is/where is" basis without representations or warranties of any kind or nature, including but not limited to latent or patent defects, except for the representations and warranties set forth below.

        **13.**    **Counterparts and Facsimiles.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but which together constitute one and the same instrument.  Any Party hereto may execute and deliver a counterpart of this Agreement by delivering by email or facsimile transmission a signature page of this Agreement signed by such Party, and any such email or facsimile signature shall be treated in all respects as having the same effect as an original signature.

        **14.**    **Applicable Law, Venue and Consent to Jurisdiction of the Bankruptcy Court to Enforce Settlement.**  This Agreement shall be deemed to have been made and entered into in the State of Illinois, and the validity, construction, and enforceability of this Agreement, as well

as the rights and liabilities of the Parties, whether in contract, tort, or otherwise, shall be interpreted in accordance with the internal laws of the State of Illinois without regard to its conflict of law rules, and venue shall lie exclusively in Cook County, Illinois. The Parties hereby irrevocably consent to the jurisdiction of the Bankruptcy Court to resolve all disputes relating to this settlement and to otherwise enforce same. The Parties shall request the Bankruptcy Court to retain jurisdiction after the approval of the Agreement to enforce the terms and conditions thereof.

**15.** **No Admission of Liability.** The Parties agree that each of them enters into this Agreement in compromise of disputed claims and that the Parties have been advised of the likelihood of success of their claims and defenses against each other. Furthermore, the Parties agree that the execution of this Agreement shall not be construed or act as an admission of liability by any of the Parties for any wrongdoing or damages claimed.

**16.** **Representations and Warranties by Keywell.** Keywell, in order to induce Wells Fargo to enter into and execute this Agreement, and acknowledging that Wells Fargo is relying hereon, represents and warrants as follows:

(a) Keywell is a limited liability company, properly organized, validly existing, and in good standing under the laws of the State of Illinois, and has full right, power, and authority to enter into and perform the terms and conditions of this Agreement.

(b) The person executing this Agreement on behalf of Keywell has full right, power, and authority to execute, deliver, and perform the obligations of this Agreement.

(c) The execution, delivery, and performance of this Agreement does not and will not violate any judgment or order, or any agreement, instrument, or obligation by which Keywell is bound.

(d) Railcar KEYX 1243 is or was located at the Q/Railcar Premises.

(e) No unpaid indebtedness is owed by Keywell to Q/Railcar, Inc. or any other person or entity, for the storage of Railcar KEYX 1243.

(f) The WFEF Railcars, with the exception of Railcar KEYX 1243, are presently located at the Keywell Premises.

(g) Keywell is the rightful owner and sole holder of the 1243 Claim Rights.

(h) Keywell has not assigned or transferred any interest in the WFEF Railcars and/or the 1243 Claim Rights, absolutely or for collateral purposes, in whole or in part, and the WFEF Railcars and the 1243 Claim Rights are free and clear of any liens, claims, encumbrances, or interests of any kind or nature.

**17.** **Indemnity by Keywell.** Keywell agrees to indemnify and save harmless Wells Fargo from and against any and all loss, cost, claim, liability, damage, and expense (including reasonable attorneys' fees, legal, and other expenses incurred by Wells Fargo in connection therewith) which Wells Fargo may at any time suffer, sustain, incur, realize, or become subject to by reason of any and all matters and things, the existence of which constitutes a breach of any representation, warranty, or covenant made by Keywell in this Agreement. Keywell shall have the right, at its own cost and expense, to defend or otherwise contest any asserted claim, demand, or liability within the scope of the foregoing indemnity provision, and as long as it shall do so in

7

good faith, shall not be required to make any payment on account of such claim, demand, or liability until the Final Adjudication thereof.  (As used herein, "**Final Adjudication**" shall refer to the decision of a trial court, but in the event of appeal, then the decision of the appellate court, after petition for rehearing has been denied or the time for filing the same (or for the filing of further appeal) has expired.)  Any Party hereto, whether Keywell or Wells Fargo, first learning of any claim, demand, or liability coming within the scope of this indemnification provision shall notify the other Party hereto in writing within fourteen (14) days after learning thereof.

 **18.** **Representations and Warranties by Wells Fargo.**  Wells Fargo, in order to induce Keywell to enter into and execute this Agreement, and acknowledging that Keywell is relying hereon, represents and warrants as follows:

 (a) Wells Fargo is a corporation organized, existing, and in good standing under the laws of its state of incorporation, and has full right, power, and authority to enter into and perform the terms and conditions of this Agreement.

 (b) The person executing this Agreement on Wells Fargo's behalf has full right, power, and authority to execute, deliver, and perform the obligations of this Agreement.

 (c) The execution, delivery, and performance of this Agreement does not and will not violate any judgment or order, or any agreement, instrument, or obligation by which Wells Fargo is bound.

 (d) Wells Fargo is the rightful owner and sole holder of the claims released by this Agreement.

 (e) Wells Fargo has not assigned or transferred the claims released by this Agreement, absolutely or for collateral purposes, in whole or in part, including by way of subrogation or operation of law or otherwise, and the claims released by this Agreement are free and clear of any liens, claims, encumbrances, or interests of any kind or nature.

 (f) Wells Fargo is not aware of any additional transactions between Keywell and Wells Fargo and/or any other indebtedness owed by Keywell to Wells Fargo.

 **19.** **Indemnity by Wells Fargo.**  Wells Fargo agrees to indemnify and save harmless Keywell from and against any and all loss, cost, claim, liability, damage, and expense (including reasonable attorneys' fees, legal, and other expenses incurred by Keywell in connection therewith) which Keywell may at any time suffer, sustain, incur, realize, or become subject to: (a) by reason of any and all matters and things, the existence of which constitutes a breach of any representation, warranty, or covenant made by Wells Fargo in this Agreement; and/or (b) in connection with the removal of (or failure to remove) the WFEF Railcars by WFEF from the Keywell Premises or the Q/Railcar Premises.  Wells Fargo shall have the right, at its own cost and expense, to defend or otherwise contest any asserted claim, demand, or liability within the scope of the foregoing indemnity provision, and as long as it shall do so in good faith, shall not be required to make any payment on account of such claim, demand, or liability until the Final Adjudication thereof.  Any Party hereto, whether Keywell or Wells Fargo, first learning of any claim, demand, or liability coming within the scope of this indemnification provision shall notify the other Party hereto in writing within fourteen (14) days after learning thereof.

8

20.   **Notices.**  Except as otherwise provided herein, any notices required to be provided by this Agreement shall be made by hand delivery, overnight courier, or certified mail to the following addresses and shall be effective upon receipt:

|  |  |
|---|---|
| <u>To Keywell</u>: | Keywell L.L.C.<br>11900 S. Cottage Grove Avenue<br>Chicago, IL 60628<br>Attn:  J. Mark Lozier |
| *With a copy to*: | Howard L. Adelman, Esq.<br>Adelman & Gettleman, Ltd.<br>53 W. Jackson Boulevard, Suite 1050<br>Chicago, IL 60604 |
| <u>To WFEF</u>: | Gary Dreyling<br>Wells Fargo Equipment Finance, Inc.<br>733 Marquette Ave., Suite 700<br>Minneapolis, MN 55402 |
| *With a copy to:* | Thomas V. Askounis, Esq.<br>Askounis & Darcy PC<br>444 N. Michigan Avenue, Suite 3270<br>Chicago, IL 60611 |
| <u>To Wells Fargo Bank</u>: | Robert E. Condon<br>John F. Conlon<br>Wells Fargo Equipment Finance, Inc.<br>300 Tri-State International, Suite 400<br>Lincolnshire, IL 60069 |

21.   **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties relating to the subject matter hereof and is the final and complete expression of their intent.  The Parties represent and warrant that no prior or contemporaneous negotiations, promises, agreements, covenants, or representations of every kind or nature, whether made orally or in writing, have been made or relied on by the Parties, or any of them, in negotiations leading to this Agreement or relating to the subject matter hereof, which are not expressly contained herein, or which have not been merged or finally integrated herein; it being the intention of the Parties hereto that in the event of any subsequent litigation, controversy, or dispute concerning the terms and provisions of this Agreement no party shall be permitted to offer or introduce oral or extrinsic evidence concerning the terms and conditions hereof that are not included or referred to herein and not reflected in writing.  This Agreement can only be changed, modified or discharged if consented to in writing executed by the Parties hereto.  No conditions exist as to the legal effectiveness of this Agreement.

22.   **Review.**  The Parties acknowledge that they have carefully read this Agreement and agree to be bound by its terms.  The Parties further acknowledge that their respective attorneys have explained this Agreement to them, and that they understand the terms of this Agreement and the rights and claims they are releasing and/or transferring under this Agreement.

The Parties further acknowledge that they have had sufficient time to consider this Agreement before signing it, and to consult with whomever necessary to ensure that they understand the terms and legal implications of this Agreement before signing it.

23. **Further Assurances.** The Parties hereto, and each of them, covenant and agree that, from and after execution and delivery of this Agreement, they shall, from time to time, execute and deliver any and all documents and instruments as are reasonably necessary or requested by the other Party to carry out the intent of this Agreement.

24. **Waiver.** No Party shall be deemed to have waived any of its rights under this Agreement unless such waiver is given in writing and executed by that Party. The failure of the Parties hereto to insist upon strict compliance with any of the terms, covenants, or conditions hereof shall not be deemed a waiver of such term, covenant, or condition, nor shall any waiver or relinquishment of any right or power hereunder at any one time or more times be deemed a waiver or relinquishment of such right or power at any other time or times.

25. **Survival.** The representations, warranties, and covenants contained herein shall survive the execution and delivery of this Agreement, and shall remain in full force and effect until a claim based thereon is barred by any applicable statute of limitations.

26. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, legal representatives, agents, successors, and assigns, as the case may be.

27. **Headings.** The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any provision of this Agreement.

28. **Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable at to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other person or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**[SIGNATURES ON NEXT PAGE]**

In witness whereof, we have here unto set our hands and seals:

KEYWELL L.L.C.                                    WELLS FARGO EQUIPMENT FINANCE, INC.

Signature: _____             Signature: _____

Printed Name: _____                    Printed Name: _____

Title: _____                 Title: _____

WELLS FARGO EQUIPMENT FINANCE
DIVISION OF WELLS FARGO BANK, N.A.

Signature: _____

Printed Name: _____

Title: _____

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |

**AGREED ORDER AUTHORIZING REJECTION OF UNEXPIRED LEASE OF
CERTAIN PERSONAL PROPERTY OF WELLS FARGO
PURSUANT TO SETTLEMENT AGREEMENT**

This matter having come before the Court on the agreed motion (the "**Motion**") of Keywell L.L.C., debtor and debtor in possession (the "**Debtor**") in the above-captioned case, for entry of an order pursuant to Section 365 of the Bankruptcy Code authorizing the rejection of an unexpired lease of certain personal property of Wells Fargo Equipment Finance, Inc. pursuant to the terms of that certain settlement agreement between Wells Fargo Equipment Finance, Inc. and the Wells Fargo Equipment Finance division of Wells Fargo Bank, N.A. (collectively, "**Wells Fargo**"), on the one hand, and the Debtor on the other, appended to the Motion as Exhibit A (the "**Settlement Agreement**");[1] the Court having reviewed the Motion and the Settlement Agreement; due and proper notice having been given to all parties entitled thereto; the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; this proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b); and after due deliberation and cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.     The Motion be and hereby is GRANTED in its entirety, and the terms of the Settlement Agreement as reflected herein are hereby approved;

2.      That certain Master Railcar Lease Agreement dated December 12, 2006, with the Debtor as lessee, together with Schedule No. 1 thereto (collectively, the "**2006 Railcar Lease**"), is hereby rejected and terminated pursuant to 11 U.S.C. § 365, effective immediately upon the entry of the Settlement Order without any further act or deed.

3.     Any and all claims arising out of or related to the rejection and termination of the 2006 Railcar Lease shall be limited to those provided in the Settlement Agreement, and shall be conclusively deemed satisfied by the Settlement Payment.

---

[1]  Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the Settlement Agreement.

Dated: _____


_____
Honorable Eugene R. Wedoff
United States Bankruptcy Judge


*This order prepared by:*
Alexander F. Brougham (ARDC No. 6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Telephone No. (312) 435-1050
Facsimile No. (312) 435-1059

# EXHIBIT B



October 29, 2013

Q/Railcar Inc.
Attn: Mr. Bill Quick
1745 165th Street # 5
Hammond, IN 46320

Re:   KEYX 1243 Repairs

Dear Mr. Quick:

Please confirm the following items by signing in the space below:

1)   Rail car KEYX 1243 is on Q/Railcar's property presently.

2)   No storage charges have been incurred on KEYX 1243 to date nor are any such charges expected provided KEYX 1243 is removed from Q/Railcar no later than 90 days after repairs have been completed.

3)   Keywell hereby informs you that KEYX 1243 is owned by Wells Fargo Equipment Finance, Inc. ("WFEF"). Q/Railcar hereby confirms that WFEF may remove KEYX 1243 from your premises upon payment for the related repairs, which are estimated to be approximately $4,300. We will not repair the car until we hear from either Keywell or WFEF.

We appreciate your assistance in handling this matter.

Sincerely,

KEYWELL L.L.C.

Michael C. Speffieck
Executive Vice President & CFO


ACKNOWLEDGED AND AGREED:

Q/Railcar, Inc.


By: _Bill Quick_____   (Printed Name)

Its: _President_____

    

KEYWELL L.L.C.
11900 South Cottage Grove Avenue
Chicago, IL 60628
(773) 660-2060
FAX (773) 660-2064