IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |

## CERTIFICATE OF SERVICE

TO:   General Electric Credit Corporation
c/o Ms. Kelley A. Tibble, Esq.
Reed Smith LLP
10 South Wacker Drive – 40th Floor
Chicago, IL 60606-7507

The undersigned hereby certifies that a true and correct copy of the **Notice of Sale and Intended Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith**, attached hereto as Exhibit 1, was served upon the person listed above via messenger delivery, on December 3, 2013.

　　　　　　　　　　　　　　　　/s/ Alexander F. Brougham
　　　　　　　　　　　　　　　　HOWARD L ADELMAN, ESQ. (ARDC# 0015458)
　　　　　　　　　　　　　　　　ERICH S. BUCK, ESQ. (ARDC #6274635)
　　　　　　　　　　　　　　　　ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
　　　　　　　　　　　　　　　　ADELMAN & GETTLEMAN, LTD.
　　　　　　　　　　　　　　　　53 West Jackson Blvd., Suite 1050
　　　　　　　　　　　　　　　　Chicago, Illinois 60604
　　　　　　　　　　　　　　　　Tel (312) 435-1050
　　　　　　　　　　　　　　　　Fax (312) 435-1059
　　　　　　　　　　　　　　　　**Counsel for Keywell L.L.C.**

238298

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Hon. Eugene R. Wedoff |
| | ) | |
| | ) | |

## NOTICE OF SALE AND INTENDED ASSUMPTION
## AND ASSIGNMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES IN CONNECTION THEREWITH

TO:   THE OFFICE OF THE UNITED STATES TRUSTEE, THE CREDITORS OF THIS ESTATE, THE NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER PARTIES IN INTEREST:

**PLEASE TAKE NOTICE AS FOLLOWS:**

1.    Chapter 11 Filing - On September 24, 2013, (the "**Petition Date**"), Keywell L.L.C. ("**Debtor**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). Since then, the Debtor has remained in possession of its assets and has continued to operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108. The Debtor has all of the rights and powers of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a).

2.    Sale Motion - On September 26, 2013, the Debtor filed a Motion for the Entry of an Order: (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-up Fee and Form Of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling a Public Auction And Authorizing the Sale of the Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases (the "**Sale Motion**").

3.    Entry of Sale Procedures Order - On October 21, 2013, the Bankruptcy Court entered that certain Order (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-up Fee and Form of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling a Public Auction and Authorizing the Sale of the Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases (the "**Bidding Procedures Order**").

4.  Auction - Under the Bidding Procedures Order, the Debtor is authorized to conduct a public auction (the "**Auction**") of a substantial portion of its assets (the "**Transferred Assets**") subject to the Cronimet APA (as hereinafter defined) and other assets of the Debtor (the "**Residual Assets**") not subject to the Cronimet APA, on December 2, 2013 at 10:00 a.m. (Central time) at the offices of Patzik, Frank & Samotny Ltd., 150 South Wacker Drive, Suite 1500, Chicago, Illinois 60606, or at such later time or other place as the Debtor shall advise all Qualifying Bidders.[1] The Transferred Assets and the Residual Assets shall be sold free and clear of any and all liens, claims, encumbrances and interests, with any and all validly determined liens, claims, interests or encumbrances to attach to the respective proceeds of sale (individually or collectively, the "**Sale**"). The bid determined by the Debtor, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**"), to be the respective highest and best offers for the Transferred Assets and the Residual Assets at the Auction (the "**Prevailing Bid**") and the Back-Up Bid, if any, will be submitted by the Debtor for approval by the Court.

5.  Bidding Procedures - The Auction shall be conducted in accordance with the bidding procedures attached hereto as Exhibit A (the "**Bidding Procedures**").

6.  Stalking Horse Bid and Bid Protection – With respect to the Transferred Assets, the Debtor has accepted the initial bid (the "**Cronimet Offer**") of Cronimet Holdings, Inc. and Cronimet Corporation (or their designee, "**Cronimet**") in the amount of Twelve Million Five Hundred Thousand and 00/100 Dollars ($12,500,000.00) in cash plus the value of the Contingent Payments[2], inclusive of any applicable Cure Amounts and certain assumed liabilities described in the Cronimet APA (the "**Assumed Liabilities**"), and subject to higher bids at Auction and Bankruptcy Court approval, by and through the execution of those certain Asset Purchase Agreements between the Debtor and Cronimet (collectively, the "**Cronimet APA**"). In accordance with the Bidding Procedures Order, Cronimet shall receive the Break-Up Fee described below. Cronimet shall also receive bid protection in the additional amount of Fifty Thousand and 00/100 Dollars ($50,000.00). Accordingly, the next minimum bid which the Debtor may accept must be at least Thirteen Million and 00/100 Dollars ($13,000,000.00) in cash plus the value of the Contingent Payments. Any additional bids thereafter shall be in increments of not less than Fifty Thousand and 00/100 Dollars ($50,000.00). No bid of any kind or nature shall be deemed to be a binding agreement unless and until it has been approved by the Sale Order (as hereinafter defined).

With respect to the Residual Assets, the Debtor, after consultation with the Lenders and the Committee, may offer a Qualifying Bidder overbid protection in an amount not in excess of

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed in the Bidding Procedures.
[2] "**Contingent Payments**" are calculated as 30% of EBITDA generated solely from the toll processing business performed for Allegheny Technologies Inc., and its subsidiaries and affiliates for each of the four years immediately following the closing.

2

seven percent (7%) of such bid, so that any subsequent bid for the Residual Assets at the Auction must be in excess of the purchase price thereof and the foregoing bid protections.

7. <u>Break-Up Fee</u> - In the event the Debtor closes on a Prevailing Bid for the Transferred Assets not made by Cronimet (the "**Third-Party Prevailing Bid**"), then, in such event, Cronimet shall be entitled to receive a Break-Up Fee to compensate it for the time, energy and resources utilized to submit the Cronimet Offer in the amount equal to Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00) (the "**Break-Up Fee**"). Except as hereinafter provided, the Break-Up Fee shall be payable in the event of a higher offer which results in the closing of the sale for the Transferred Assets, and provided that Cronimet was not in material default of any of its obligations to the Debtor under the Cronimet APA at the time of the acceptance of such Third-Party Prevailing Bid and was otherwise ready, willing and able to close thereunder. The Break-Up Fee shall be payable to Cronimet from the sale proceeds of the Transferred Assets at closing on the Third-Party Prevailing Bid after the payment to creditors holding valid and subsisting liens on some or all of the Transferred Assets, and is payable irrespective of the actual out-of-pocket costs and expenses incurred by Cronimet. To the extent the sale proceeds are insufficient to pay the Break-Up Fee in full or in the event a Break-Up Fee is due and owing pursuant to Section 9.02(b) and (c) of the Cronimet APA, then in such event, the Break-Up Fee or any unpaid portion thereof shall constitute an administrative expense in the Chapter 11 Case.

8. <u>Sale Hearing</u> - The Court will conduct a hearing to consider approval of the sale of the Transferred Assets and the Residual Assets on December 4, 2013, at 10:00 a.m. (Central time) in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 744, Chicago, Illinois 60604 (the "**Sale Hearing**"). The Sale Hearing may be adjourned, continued or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtor will request approval of the sale of the Transferred Assets and the Residual Assets, respectively, to the Bidder(s) submitting the Prevailing Bid(s) and the Back-Up Bidder(s), pursuant to the entry of final order(s) approving the sale of the Transferred Assets and the Residual Assets, respectively (the "**Sale Order(s)**").

9. <u>Objections</u> - Any objection to the sale of the Transferred Assets or the Residual Assets must be filed in writing with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 713, Chicago, Illinois 60604, **on or before 5:00 p.m. (Central time) on November 26, 2013** (the "**Sale Objection Deadline**"), with copies served upon, so as to be received on or before the Sale Objection Deadline by, the following parties: (i) counsel to the Debtor, Howard L. Adelman and Erich S. Buck, of Adelman & Gettleman, Ltd., 53 West Jackson Boulevard, Suite 1050, Chicago, Illinois, 60604; (ii) the Office of the United States Trustee, 219 S. Dearborn Street, Room 873, Chicago, Illinois 60604; (iii) counsel to the Lenders, Steven B. Towbin and Gordon E. Gouveia, Shaw Fishman Glantz & Towbin LLC, 321 N. Clark Street, Suite 800, Chicago, Illinois 60654; (iv) counsel to Cronimet, Robert A. Soriano, Greenberg Traurig, P.A., Courthouse Plaza, 625

East Twiggs Street, Suite 100, Tampa, Florida 33602; and (v) counsel to the Committee, David A. Agay and Sean D. Malloy, McDonald Hopkins LLC, 300 North LaSalle Street, Suite 2100, Chicago, Illinois 60654 (collectively, the "**Noticed Parties**").

10.   Assumption Notice - On or before November 16, 2013, the Debtor shall send a notice via facsimile or overnight delivery (the "**Assumption Notice**") to each non-debtor party to the executory contracts or unexpired leases (the "**Executory Contract(s)**") that the Debtor determines, in the exercise of its business judgment, may be necessary to maximize the value of the sale contemplated hereunder and which the Debtor may elect to assume and assign to a Qualifying Bidder (the "**Proposed Assumption/Assignment**"). The Assumption Notice shall state the cure amounts the Debtor believes are necessary to assume and assign the Executory Contracts pursuant to Section 365 of the Bankruptcy Code (the "**Cure Amount**"). In addition, if the Debtor identifies additional Executory Contracts that might be assumed by the Debtor and assigned to the Prevailing Bidder not set forth in the original Assumption Notice, the Debtor shall promptly send a supplemental notice to the applicable counterparties to such additional Executory Contracts.

11.   Assumption Objection - Any objection of a non-Debtor party to an Executory Contract to the Cure Amount set forth in the Assumption Notice or Supplemental Assumption, Notice, as the case may be, or to the proposed assumption and assignment of such Executory Contract (an "**Cure Amount/Assumption Objection**") must (a) be in writing, and (b) provide the basis for the objection, including any cure amount claimed to be due with supporting documentation. To be considered a timely Cure Amount/Assumption Objection, the Cure Amount/Assumption Objection must be filed with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Room 713, Chicago, Illinois, and served upon the Noticed Parties by the later of: (A) **5:00 p.m. (Central time) on December 2, 2013**; or (B) five (5) business days after service of the relevant Supplemental Assumption Notice.

12.   Assumption and Cure Objection Hearing - The Court shall resolve any and all timely filed Cure Amount/Assumption Objections at the Sale Hearing, or such other time as may be ordered by the Court.

13.   Copies - Copies of the Sale Motion and any exhibits thereto, the Cronimet APA, and/or the proposed Sale Order for the Transferred Assets will be made available upon written request directed to counsel for the Debtor at: Adelman & Gettleman, Ltd., Attn: Erich S. Buck, 53 West Jackson Blvd., Chicago, Illinois 60604 (ebuck@ag-ltd.com).

14.   Notice - This Notice is made expressly subject to the Bidding Procedures Order and the Bidding Procedures. To the extent that this Notice is inconsistent with the terms contained in the Bidding Procedures Order, the Bidding Procedures Order shall control.

4

PLEASE BE ADVISED THAT IN CONNECTION WITH THE PROPOSED SALE OF THE TRANSFERRED ASSETS AND THE RESIDUAL ASSETS, THE DEBTOR WILL SEEK THE ENTRY OF A SALE ORDER(S) THAT WILL, AMONG OTHER THINGS, ENJOIN ANY AND ALL CREDITORS AND OTHER PARTIES IN INTEREST OF THE ESTATE FROM PURSUING AGAINST THE PURCHASER OF THE ASSETS: (A) ANY CLAIMS AGAINST DEBTOR; OR (B) ANY LIENS OR ENCUMBRANCES AGAINST THE TRANSFERRED ASSETS AND/OR THE RESIDUAL ASSETS.

Dated: October 23, 2013

KEYWELL L.L.C.,
Debtor and Debtor-in-Possession

By: /s/ Erich S. Buck
One of Its Attorneys

Howard L. Adelman, Esq.
Erich S. Buck, Esq.
Alexander F. Brougham, Esq.
Adelman & Gettleman, Ltd.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
Phone: (312) 435-1050

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C., | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |
| | ) | |

### KEYWELL L.L.C. – BIDDING PROCEDURES

These Bidding Procedures describe the process by which the above-captioned debtor and the debtor-in-possession (the "**Debtor**") is authorized to conduct a sale by a public auction (the "**Auction**") of a substantial portion of its assets (the "**Transferred Assets**") subject to the Cronimet APA (as hereinafter defined) and other assets of the Debtor (the "**Residual Assets**") not subject to the Cronimet APA (individually or collectively, the "**Sale**"). These Bidding Procedures were approved by order dated October 21, 2013 (the "**Bidding Procedures Order**") of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Court**") pursuant to that certain Motion of the Debtor for the Entry of an Order: (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-up Fee and Form of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling a Public Auction And Authorizing the Sale of the Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases (the "**Sale Motion**"). Copies of the Sale Motion will be made available upon request as provided in the Notice of Sale to which these Bidding Procedures are attached (the "**Notice of Sale**").

(1) **Assets to be Sold**

These Bidding Procedures govern the procedure under which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest and best offer(s) for the Transferred Assets and/or the Residual Assets. The sale of the Transferred Assets shall be subject to the representations, warranties, covenants and other terms and conditions contained in that certain (a) Asset Purchase Agreement and (b) Term Sheet for Contingent Payments Agreement between Cronimet Holdings, Inc., a Delaware corporation, and the Debtor, and (c) that certain Rail Car Asset Purchase Agreement between Cronimet Corporation, a Pennsylvania Corporation, and the Debtor (Cronimet Holdings, Inc. and Cronimet Corporation are hereinafter referred to, collectively, as "**Cronimet**," and the a aforementioned agreements are collectively referred to as the "**Cronimet APA**"), except as provided therein, on an "as is, where is" and "with all faults" basis and without other representations and warranties, express, implied or statutory, written or oral of any kind, nature or description.

### (2) Bidding Procedures Notice

The Debtor has served by first-class mail the Bidding Procedures and the Notice of Sale on: (i) all creditors of the estate, and to counsel for the Official Committee of Unsecured Creditors (the "**Committee**"); (ii) all entities reasonably known by the Debtor (or its representatives and retained professionals) to have an Interest in the Transferred Assets or the Residual Assets to be sold; (iii) all parties to any executory contracts and unexpired leases that the Debtor may seek to be assumed and assigned; (iv) counsel to the Lenders; (v) counsel to Cronimet; (vi) the Office of the United States Trustee for this District; (vii) the District Director of the Internal Revenue Service for the Northern District of Illinois; (viii) the Office of the Attorney General or applicable taxing authority for each state where the Transferred Assets or the Residual Assets are located; (ix) all taxing authorities identified in the Bankruptcy Schedules filed in this proceeding; (x) all equity security holders of the Debtor; and (xi) all other entities that have filed requests for notice pursuant to Bankruptcy Rule 2002.

In addition, the Debtor has caused, or will cause, notice of the Auction to be published in one or more of the following: the national edition of The Wall Street Journal, the Chicago Tribune, and/or a nationally circulated trade publication.

### (3) Confidentiality Agreement and Selection of Bidders

Potential bidders (the "**Bidders**") for the Transferred Assets and/or the Residual Assets shall be required to complete and execute a confidentiality agreement substantially similar to the confidentiality agreement executed by Cronimet and to provide the Debtor with information about their financial qualifications including certified, audited financial statements for the preceding two years, and/or any other financial disclosures and information the Debtor may reasonably request. When making a bid for the Transferred Assets and/or the Residual Assets, all such bidders must abide by the various Bidding Procedures outlined herein. Only those bids that are in material compliance (in the Debtor's discretion) with the Bidding Procedures (each a "**Qualifying Bid**") will be eligible for consideration at the Auction. The Debtor shall require Bidders to present satisfactory financial qualifications before such bidder may be deemed to have submitted a Qualifying Bid.

### (4) Due Diligence

Upon execution of a confidentiality agreement, the Debtor will provide Bidders with reasonable access to the Debtor's books, records, and its CEO, CFO and such other representatives of the Debtor as may be reasonably required for the purpose of conducting due diligence prior to the Auction. Furthermore, Bidders shall be provided access to the results of the Phase I investigation results relating to the Transferred Assets conducted by Golder & Associates on behalf of Cronimet.

By participation in the Auction, all Bidders are deemed to acknowledge that they have had sufficient and reasonable access to the Debtor's books, records, and executives for the purposes of conducting due diligence and have had the opportunity to conduct such due diligence.

Each Bidder shall provide to the Debtor, within three (3) business days after the Debtor's request therefor, any information reasonably required by the Debtor in connection with its evaluation of such Bidder's bid.

### (5)   Submission of Bids

To become a Qualifying Bid, a Bidder submitting a Qualifying Bid must, among other things, comply with all of the following provisions of this section:

(a)   Any Bidder desiring to qualify for participation in the Auction must deliver its Qualifying Bid in writing to: (i) Keywell L.L.C., Attn: J. Mark Lozier, 11900 South Cottage Grove Avenue, Chicago, Illinois 60628; (ii) Eureka Capital Markets, LLC, Attn: Mark Hyman, 52 Vanderbilt Avenue, Suite 902, New York, NY 10017; and (iii) Howard L. Adelman and Erich S. Buck, Adelman & Gettleman, 53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604-3701, such that the Qualifying Bid is actually received by each of the foregoing persons not later than November 26, 2013, at 5:00 p.m. (Central) (the "**Bid Deadline**"). Qualifying Bids received after the Bid Deadline may be rejected in the sole discretion of the Debtor.

(b)   A Qualifying Bid for the Transferred Assets must include: (i) an executed Asset Purchase Agreement ("**APA**") substantially similar to the Cronimet APA; and (ii) a redlined version of the APA marked to show changes to the Cronimet APA. To the extent a Bidder seeks to bid on some or all of the Residual Assets, a Bidder may submit an executed APA that is not substantially similar to the Cronimet APA.

(c)   A Qualifying Bid must include an earnest money deposit in immediately available U.S. funds (each, a "**Deposit**"): (i) for the Transferred Assets, equal to One Million Dollars ($1,000,000); and/or (ii) for some or all of the Residual Assets, in an amount equal to ten percent (10%) of such bid. Prior to the Bid Deadline, the Deposit is to be delivered to the Debtor and shall be maintained in an interest-bearing escrow account unless impracticable, and shall be conclusively deemed subject to the exclusive jurisdiction of the Court upon receipt. Such Deposit shall be forfeited by a Bidder who submits the Prevailing Bid (as hereinafter defined), but fails to close in breach of the applicable APA.

(d)   Each Qualifying Bid must: (i) represent that the Bidder is prepared to initiate immediately all actions necessary to obtain all other applicable regulatory approvals, if any, for the Qualifying Bid; and (ii) provide its best estimate of the time within which such approvals will be obtained.

(e)   Each Qualifying Bid must (unless otherwise determined by the Debtor): (i) remain irrevocable until the approval of a Prevailing Bid, and, if applicable, a Back-Up Bid (as hereinafter defined), at the Sale Hearing; (ii) if approved at the Sale Hearing (as hereinafter defined) as either the Prevailing Bid or the Back-Up Bid, remain irrevocable until the earlier of (A) the closing of the transaction under the Prevailing Bid (the "**Prevailing Bid Closing**"); or (B) thirty-five (35) business days following the entry of

3

the Sale Order[1]; (iii) clearly state that all consideration to be paid shall be cash and assumed undisputed liabilities; (iv) not contain any financing contingency, or be subject to further due diligence review, board approval, or the receipt of any non-governmental consents; (v) give sufficient indicia that the Bidder or its representative is legally empowered, by power of attorney or otherwise, and financially capable, to both bid on behalf of the Bidder and also to complete and sign, on behalf of the Bidder, a binding and enforceable APA, including as such agreement may be amended at the Auction; (vi) identify each and every executory contract or unexpired lease, the assumption and assignment of which is a condition to closing, and provide evidence of the Bidder's ability to comply with Section 365 of the Bankruptcy Code; (vii) with respect to the Transferred Assets, be for all such assets as one (1) Lot, provided, however, that Lot bids will be permitted for the Residual Assets; and (viii) not request or entitle the Bidder to any termination or break-up fee, expense reimbursement or similar type of payment (except this requirement shall not apply to the Cronimet APA).

(f)     Each Qualifying Bid must disclose (i) the identity of the Bidder and each entity participating in connection with such Qualifying Bid, and the complete terms of such participation, and (ii) any other agreements, term sheets or other written or oral understandings between the Bidder and its affiliates, on one hand, and any current or former insider (as defined in 11 U.S.C. § 101(31)) of the Debtor, on the other hand.

(g)     Any party seeking to make a Qualifying Bid, in whole or in part, pursuant to rights provided under Section 363(k) of the Bankruptcy Code, must clearly indicate the amount of such bid which will constitute its credit bid.

(h)     With respect to the Transferred Assets, offer an aggregate consideration of at least Five Hundred Thousand Dollars ($500,000) (the "**Initial Overbid Amount**") greater than the Cronimet APA. The Cronimet APA is $12,500,000 in cash plus the value of the Contingent Payments[2], inclusive of any applicable Cure Amounts and Assumed Liabilities.

(i)     With respect to the Residual Assets, the Debtor, after consultation with the Lenders and the Committee, may offer a Qualifying Bidder overbid protection in an amount not in excess of seven percent (7%) of such bid, so that any subsequent bid for the Residual Assets at the Auction must be in excess of the purchase price thereof and the foregoing bid protections.

---

[1] The "**Sale Order**" is defined herein as the order of the Court approving the Sale of the Transferred Assets or the Residual Assets, as the case may be. With respect to the Transferred Assets, the Sale Order shall be substantially in the form attached as Exhibit D to the Cronimet APA.

[2] "**Contingent Payments**" are calculated as 30% of EBITDA generated solely from the toll processing business performed for Allegheny Technologies Inc., and its subsidiaries and affiliates for each of the four years immediately following the closing.

(6)     **Auction and Selection of Prevailing Bid and Back-Up Bid**

The Auction will be held on December 2, 2013 at 10:00 a.m. (Central) at the offices of Patzik, Frank & Samotny Ltd., 150 South Wacker Drive, Suite 1500, Chicago, Illinois 60606, or at such later time or other place as the Debtor shall advise all Qualifying Bidders. The Auction shall be conducted in the presence of a certified court reporter, who shall transcribe the proceedings for purposes of creating and preserving a record of the Auction.

The Debtor will not consider bids other than Qualifying Bids as described herein. The only persons who will be permitted to bid at the Auction are those bidders that have made Qualifying Bids (each a "**Qualifying Bidder**"). For Qualifying Bidders to participate at Auction, the Bidder(s) must appear in person at the Auction or through a duly authorized representative, unless alternative arrangements are made in advance with the Debtor. If multiple Qualifying Bids are received, each such bidder shall have the right to continue to improve its Qualifying Bid at the Auction. Prior to the Auction, the Debtor shall evaluate each Qualifying Bid that it has received and shall select the bid that it determines in good faith to be the highest and best offer and, as of the commencement of the Auction, this will constitute the opening bid for the Transferred Assets or the Residual Assets, as the case may be. The Debtor shall notify each party submitting a Qualifying Bid of the terms and conditions of the opening bid not less than twenty-four (24) hours prior to the commencement of the Auction.

Any Qualifying Bidder may be required to confirm that it has not engaged in any collusion with respect to the Bidding Procedures or the Sale.

The identity of each Qualifying Bidder at the Auction and the material terms of its Qualifying Bid will be fully disclosed to all other Qualifying Bidders at the Auction.

Bidding will commence with the announcement of the opening bids for the Transferred Assets and the Residual Assets, respectively, and will proceed with subsequent overbids of at least Fifty Thousand Dollars ($50,000). When bidding on the Transferred Assets at the Auction, Cronimet may receive, at the Debtor's option after consultation with the Committee and the Lenders, to be determined prior to the Auction, a cash credit in the amount of the Break-Up Fee[3]. In evaluating bids and determining the highest and best bid at any time in the Auction, the Debtor, in consultation with the Committee and the Lenders, shall consider the net value of bids to the Debtor's estate, including, with respect to the Transferred Assets, giving consideration to the requirement to pay a Break-Up Fee if Cronimet is not the successful bidder.

If no party makes the timely submissions required in Paragraph 5 herein and is determined to be a Qualifying Bidder, or if no Qualifying Bid (other than that of Cronimet) is received by the Bid Deadline, then the Debtor reserves the right (after consultation with the Committee) to cancel the Auction, and the Debtor shall, at the Sale Hearing, request: (x) that the

---

[3] In the event the Debtor closes on a Prevailing Bid (as hereinafter defined) for the Transferred Assets not made by Cronimet, then, in such event, Cronimet shall be entitled to receive a Break-Up Fee to compensate it for the time, energy and resources utilized to submit the Cronimet APA in the amount equal to Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00) (the "**Break-Up Fee**").

5

Cronimet APA be deemed the highest and best offer for the Transferred Assets and the Prevailing Bid for such assets; (y) authority to proceed to close the Sale to Cronimet pursuant to the Cronimet APA; and (z) entry of the Sale Order. The Cronimet APA will be deemed to constitute a Qualifying Bid for the Transferred Assets. Furthermore, in the event the Lenders desire to credit bid, then, in such event, the Lenders shall be conclusively deemed to have satisfied paragraph 3 (Credit Worthiness) and paragraph 5(c) (Deposit) of these Bidding Procedures.

The bid determined by the Debtor, in consultation with the Committee, to be the highest and best offer at the Auction for the Transferred Assets or the Residual Assets, as the case may be (each a "**Prevailing Bid**"), and the Back-Up Bid, if any, will be submitted by the Debtor for approval by the Court.

### (7)  Sale Hearing

Any Qualifying Bids that are accepted by the Debtor at the Auction as the Prevailing Bid and the Back-Up Bid will be subject to approval by the Court. Please be advised that the hearing to approve such bids will be held before the Honorable Eugene R. Wedoff, United States Bankruptcy Judge in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 744, Chicago, Illinois 60604 (the "**Sale Hearing**") on December 4, 2013, at 10:00 a.m. (Central), or such later time and place as the Debtor shall notify all Qualifying Bidders.

### (8)  Return of Deposits

Except as otherwise set forth herein, as soon as practicable after the conclusion of the Sale Hearing, the Debtor shall return to each unsuccessful Qualifying Bidder (other than the Prevailing Bidder and the Back-Up Bidder) the Deposit, together with any interest paid thereon, submitted by such a Qualifying Bidder.

Upon the completion of the Prevailing Bid Closing, the Debtor shall return to the Back-Up Bidder (as hereinafter defined) the Deposit submitted by the Back-Up Bidder. Upon the closing of the transaction under the Back-Up Bid, the Deposit of the Back-Up Bidder shall be applied against the purchase price to be paid by the Back-Up Bidder.

### (9)  Failure to Close

If the Prevailing Bidder fails to close in accordance with the terms of the Prevailing Bid within fifteen (15) business days from the entry of the Sale Order (a "**Failure to Close**"), such party's Deposit, together with any interest paid thereon, shall be forfeited to and retained irrevocably by the Debtor.

In the event of a Failure to Close, the Bidder of the next highest and best Qualifying Bid (the "**Back-Up Bid**") as determined by the Debtor in consultation with the Committee and approved by the Court (each a "**Back-Up Bidder**"), shall be required to consummate the transactions contemplated in the Back-Up Bid at the purchase price so offered without further

act, deed, or order of Court within the following fifteen (15) business days, unless the Debtor provides written notice to the Back-Up Bidder of its intent not to accept the Back-Up Bid (a "**Declination Notice**"). If, in the event of a Failure to Close, and absent a Declination Notice, the Back-Up Bidder fails to close timely and in accordance with the terms of the Back-Up Bid, the Back-Up Bid, together with any interest paid thereon, shall be forfeited to and retained irrevocably by the Debtor.

The Back-Up Bidder shall be obligated to hold open the Back-Up Bid until the completion of the earlier of: (A) the Prevailing Bid Closing; or (B) thirty-five (35) business days following the entry of the Sale Order.

(10) **Closing**

Following approval by the Court of the Prevailing Bid, the Debtor shall use its commercially reasonable efforts to consummate the Court-approved transaction within fifteen (15) business days after entry of the Sale Order. At the Prevailing Bid Closing, the Deposit of the Prevailing Bidder will be applied against the purchase price to be paid by the Prevailing Bidder.

(11) **Reservation of Rights**

Except as otherwise provided in the Bidding Procedures Order, the Debtor reserves the right, as it may reasonably determine to be in the best interests of its estate after consultation with the Committee and the Lenders, to: (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid or combination of Qualifying Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtor and its estate, provided, however, that no bid shall be rejected solely on the basis that it is a credit bid. Nothing contained herein shall prejudice or impair rights under Section 363(k) of the Bankruptcy Code. The Debtor further reserves all rights (in consultation with the Committee) to impose, at or prior to the Auction, additional terms and conditions on the sale of the Transferred Assets, to extend or adjourn any deadlines set forth herein, and to take any other actions with respect to the Auction, the Sale Hearing or the sale of the Transferred Assets and/or the Residual Assets which in its business judgment are reasonably necessary to preserve the bankruptcy estate or maximize the value thereof and which are not substantially inconsistent with these Bidding Procedures, the Cronimet APA or any order of the Bankruptcy Court.

(12) **Miscellaneous**

Nothing contained in the foregoing or in the Bidding Procedures Order shall create any rights in any other person or bidder (including without limitation rights as third-party beneficiaries or otherwise) other than the rights expressly granted to the Prevailing Bidder under the Bidding Procedures Order. In the event of any conflict or inconsistency between these Bidding Procedures and the Bidding Procedures Order, the terms of the Bidding Procedures

7

Order shall control. Except as provided in the Bidding Procedures Order and Bidding Procedures, the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bidding Procedures Order.

Dated: October 21, 2013