## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| KEYWELL L.L.C. | ) | Case No. 13-37603 |
| | ) | |
| Debtor. | ) | Honorable Eugene R. Wedoff |

**ORDER AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE
ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES
AND INTERESTS AND AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
ASSUMED CONTRACTS AND UNEXPIRED LEASES, AND RELATED RELIEF**

This matter having come before the Court on the motion (the "**Sale Motion**")[1] filed by

Keywell L.L.C., the debtor and debtor-in-possession in the above-caption case (the "**Debtor**"),

for entry of an order: (A) approving the asset purchase agreement by and between KW Metals

Acquisition LLC (the "**Buyer**"), and the Debtor, for the sale of a substantial portion of the assets

of the estate (the "**Purchased Assets**")[2]; (B) authorizing the sale of the Purchased Assets

pursuant thereto free and clear of liens, claims, encumbrances and interests; (C) authorizing the

assumption and assignment of Assumed Contracts (as hereinafter defined) and unexpired leases;

and (D) for related relief available under sections 363 and 365 of the Bankruptcy Code (the

"**Code**") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"); adequate and sufficient due written notice hereof having

been given to all parties listed on the official service list herein, and to the creditors, each non-

debtor party to an Assumed Contract, interested parties and all other entities entitled to notice; no

---

[1] The Sale Motion shall mean that certain *Motion of the Debtor for the Entry of an Order: (A) Approving the Sale Process, Bidding Procedures, Bid Protection, Break-Up Fee and Form of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling A Public Auction and Authorizing the Sale of the Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 23].

[2] All capitalized terms not otherwise defined herein shall have the meaning set forth in the APA.

further notice being required under the circumstances; an offer to purchase the Purchased Assets

having been submitted by Buyer pursuant to that certain Asset Purchase Agreement dated

December 12, 2013 (the "**APA**"), a true and correct copy of which is attached as <u>Exhibit A</u>

hereto and made a part hereof; the Court having reviewed and considered (i) the Sale Motion and

the APA , (ii) any written and oral objections thereto, (iii) the evidence proffered or adduced at

the hearings held on December 4, 2013 and December 12, 2013, before this Court on the Sale

Motion (collectively, the "**Sale Hearing**"), and (iv) the statements of counsel and other

interested parties present at the Sale Hearing or having appeared telephonically, and being

otherwise fully advised in the premises; and it appearing that the relief requested in the Sale

Motion is in the best interests of the Debtor, its estate and creditors and other parties in interest;

and after due deliberation thereon; and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

I.       On September 24, 2013 (the "**Petition Date**"), the Debtor filed a voluntary

petition under Chapter 11 of the Code (the "**Chapter 11 Case**"), and from and after said date has

been operating its business and managing its property under the jurisdiction of this Court as

debtor in possession pursuant to sections 1107(a) and 1108 of the Code.

II.      Pursuant to the applicable provisions of the Code, an Official Committee of

Unsecured Creditors has been appointed in this Chapter 11 Case (the "**Committee**"). No trustee

has been appointed in this Chapter 11 Case.

III.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact where appropriate. Fed. R. Bankr. P. 7052.

IV.     The statutory predicates for the relief requested herein are sections 105, 363 and

365 of the Code and Bankruptcy Rules 2002, 6004, 6006, 6007 and 9014.

**The Business of the Debtor**

V.     Based in Chicago, Illinois, the Debtor is a leading supplier of recycled titanium,

high-temperature alloys (HTA), and stainless steel in North America and has developed an

expertise in a range of services related to scrap processing, including but not limited to materials

recycling, toll processing, and purchasing services (collectively, the business and operations of

the Debtor shall be hereinafter referred to as the "**Business**").

VI.     The Debtor's customers include specialty steel mills and foundries, as well as

producers of titanium and other HTA.  As of the Petition Date, the Debtor operated nine (9)

processing and recycling facilities in the United States that were strategically located in six areas

near major customers and suppliers and employed approximately 119 employees.

**Prepetition Secured Indebtedness**

VII.     Prior to the Petition Date, the Debtor obtained loans and other financial

accommodations from NewKey Group, LLC ("**NewKey**") and NewKey Group II, LLC

("**NewKey II**"), pursuant to various notes, loans and loan documents (collectively, with all other

prepetition agreements and instruments between the Debtor and NewKey or NewKey II, the

("**Prepetition Loan Documents**").

VIII.   As of the Petition Date, the outstanding balance owed by the Debtor to NewKey

under the Prepetition Loan Documents was $4,553,320.34, including principal, interest and

attorneys' fees and costs, with interest continuing to accrue at a per diem rate of $2,333.33,

subject to § 506(b) of the Code, and the outstanding balance owed by the Debtor to NewKey II

under the Prepetition Loan Documents was $5,942,742.52, including principal, interest and

attorneys' fees and costs, with interest continuing to accrue at a per diem rate of $3,333.33,

subject to § 506(b) of the Code (collectively, the "**NewKey Prepetition Indebtedness**").

NewKey and NewKey II (collectively, the "**Secured Lenders**") filed proofs of claim in the

Chapter 11 Case asserting the NewKey Prepetition Indebtedness is secured indebtedness.

IX.     The Bankruptcy Schedules of the Debtor reflect that the following creditors also

hold prepetition secured indebtedness:

| SECURED CREDITOR | COLLATERAL | AMOUNT OF CLAIM(S) (per Amended Schedule D, filed 10/23/13, without deducting value of collateral) |
|---|---|---|
| PNC Bank, N.A. | 114 rail cars | $309,428.46 |
| PNC Equipment Finance, LLC | Miscellaneous equipment | $363,910.41 |
| Wells Fargo Bank, N.A. | Two forklifts | $45,521.61[4] |
| General Electric Capital Corp. *and/or* Banc of America Leasing & Capital, LLC | 93 railcars | $279,084.05 |

X.     In addition, the following creditors filed proofs of claim in the Chapter 11 Case

asserting secured claims:

| CREDITOR | ALLEGED COLLATERAL | ALLEGED CLAIM | CLAIM NUMBER |
|---|---|---|---|
| General Electric Capital Corp. | Railcars | $284,177.95 | 60 |
| B. Clinkston & Sons, Inc. | Stainless steel | $48,731.35 | 65 |
| TCF Equipment Finance, Inc. | Lift trucks and attachments/accessories | $333,442.77 | 66 |

XI.     The Debtor understands and believes that each of the above creditors are parties

which assert or have alleged that they hold valid, first priority, secured claims on certain assets of

the estate (collectively, the "**Secured Creditors**").  The Committee has filed objections

---

[4]  Pursuant to a settlement agreement between the Debtor, Wells Fargo Equipment Finance, Inc. and Wells Fargo Bank, N.A., approved by the Court pursuant to Fed. R. Bankr. P. 9019 [Docket No. 266], Wells Fargo Bank, N.A. has consented to the sale of its collateral free and clear of all liens, claims, interests, liabilities and encumbrances, with the claim amount noted above to be paid from the proceeds of the sale.

challenging the extent, validity and priority of the NewKey Prepetition Indebtedness [Docket Nos. 273 and 274] (collectively, the "**Committee Objections**"). This Sale Order is not making any determinations with regard to the extent, validity or priority of any of the claims of the Secured Creditors and is not in any way resolving or addressing the merits of the Committee Objections. Similarly, this Order is not making any determinations and is not in any way resolving or addressing the merits of any defenses to the Committee Objections.

### Debtor in Possession Use of Cash Collateral and Post-Petition Liens

XII.    On September 26, 2013, the Court entered that certain *Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection* [Docket No. 25].

XIII.    On October 17, 2013, the Court entered that certain *Final Order Authorizing Use of Cash Collateral and Providing Adequate Protection* [Docket No. 113] (the "**Final Cash Collateral Order**").

XIV.    Pursuant to the Final Cash Collateral Order, as adequate protection for any diminution in the value of the Secured Lenders' interests in any "Prepetition Collateral" (as defined in the Final Cash Collateral Order), the Secured Lenders were granted liens and security interests in and upon (a) the Prepetition Collateral subject to validly perfected liens or security interests; (b) any property that the Debtor acquires after the Petition Date that would be subject to the Secured Lenders' "Prepetition Security Interests" (as defined in the Final Cash Collateral Order) but for the filing of the Chapter 11 Case; and (c) any proceeds generated form such property.

### Retention of Investment Banker and Marketing of Assets

XV.    On or about October 16, 2013, the Debtor obtained court authorization to retain Eureka Capital Markets, LLC as its investment bankers in the Chapter 11 Case ("**Eureka**

**Capital**") to continue the marketing efforts it had commenced prior to the Petition Date for the solicitation of offers to purchase the Purchased Assets and other assets of the Debtor [Docket No. 109] (the "**Retention Order**").

XVI.    Beginning in May 2013, Eureka assisted the Debtor in establishing an on-line data room to facilitate due diligence review for potential investors/purchasers.

XVII.   From May through August, Eureka contacted 36 potential financial investors via email or telephone.  Concurrently, from May through the 3rd week of June, Eureka researched and identified 64 potential strategic purchasers.  During the last 2 weeks in June, Eureka contacted those 64 potential strategic purchasers via email, mail or telephone.  During the month of July, Eureka contacted and sent information to 8 additional potential strategic purchasers.

XVIII.  In July, Cronimet Holdings, Inc. ("**Cronimet**") submitted a letter of intent and over the course of the next few months negotiated and executed an asset purchase agreement which was subsequently approved by the Court as the stalking horse bid (the "**Stalking Horse APA**").

XIX.    Since the Petition Date, Eureka contacted 78 additional potential purchasers, 31 additional parties executed non-disclosure agreements and received access to the data room previously established by Eureka, and 6 parties conducted site visits.

XX.     In total, Eureka contacted 186 potential purchasers, 59 parties executed non-disclosure agreements, 41 of which also received access to the data room, and 9 parties conducted site visits.

XXI.    Pursuant to the Retention Order and the retention agreement thereby entered into by the Debtor, Eureka has earned a "Transaction Fee" from the Debtor's estate upon the closing of the transaction contemplated by the APA and as further detailed in the retention agreement

(the "**Commission**"). The payment of the Commission is subject to further order of Court as provided in the Retention Order.

### Asset Purchase Agreement and Court Approved Sale Process

XXII.   On October 21, 2013, the Court entered that certain *Order (A) Approving the Sale Process, Bidding Procedures, Break-Up Fee and Form of Asset Purchase Agreement for the Sale of Certain Assets of the Estate; (B) Scheduling a Public Auction and Authorizing the Sale of the Assets Free and Clear of Liens, Claims, Encumbrances and Interests; and (C) Authorizing Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 121] (the "**Bidding Procedures Order**"). Attached as Exhibit A to the Bidding Procedures Order were the approved bidding procedures for the sale of the assets of the Debtor (the "**Bidding Procedures**").

XXIII. The Debtor served a Notice of Sale and Intended Assumption and Assignment of Executory Contracts and Unexpired Leases (the "**Sale Notice**"), in substantially the form of the notice attached to the Bidding Procedures Order as Exhibit B, on all parties identified in: (a) the Affidavit of Service [Docket No. 145] and Certificate of Service [Docket No. 146] filed on October 25, 2013; (b) the Certificate of Service [Docket No. 169] filed on November 1, 2013; and (c) the Certificate of Service [Docket No. 279] filed on December 2, 2013.  Included as an exhibit to the Sale Notice was a copy of the Bidding Procedures.  With respect to the injunctive relief provided in this Sale Order, the Sale Notice expressly provided as follows:

> **PLEASE BE ADVISED THAT IN CONNECTION WITH THE PROPOSED SALE OF THE TRANSFERRED ASSETS AND THE RESIDUAL ASSETS, THE DEBTOR WILL SEEK THE ENTRY OF A SALE ORDER(S) THAT WILL, AMONG OTHER THINGS, ENJOIN ANY AND ALL CREDITORS AND OTHER PARTIES IN INTEREST OF THE ESTATE FROM PURSUING AGAINST THE PURCHASER OF THE ASSETS: (A) ANY CLAIMS AGAINST DEBTOR; OR (B) ANY LIENS OR**

**ENCUMBRANCES AGAINST THE TRANSFERRED ASSETS AND/OR THE RESIDUAL ASSETS**

XXIV. The Debtor served a Notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases (the "**Assumption Notice**"), in substantially the form of the notice attached to the Bidding Procedures Order as Exhibit C, on all parties identified in the Certificate of Service filed on November 15, 2013 [Docket No. 221]. Included as an exhibit to the Assumption Notice was a list of executory contracts and unexpired leases potentially to be assumed and assigned, with estimated cure amounts for each.

XXV. The Debtor, Eureka, the Committee, NewKey and NewKey II, all agreed that in light of the extensive marketing conducted both pre- and post-petition and the specialized industry of the business of the Debtor, publicizing any advertisements of the auction and sale in any newspapers, trade journals or other publications would not be productive or beneficial to the sale process or the estate. Accordingly, notice of the auction and sale was not published in any newspapers, trade journals or other publications.

XXVI. Prior to the bid deadline on November 26, 2013, as set forth in the Bidding Procedures Order, the Debtor received qualifying bids from four (4) bidders. The Debtor notified each party submitting a qualifying bid of the terms and conditions of each of the qualifying bids not less than twenty-four (24) hours prior to the commencement of the auction set for December 2, 2013 (the "**Auction**").

XXVII. On December 2, 2013, the Debtor conducted the Auction which lasted approximately eight (8) hours. At the Auction, the Buyer improved its initial bid of Thirteen Million Five Hundred Thousand Dollars ($13,500,000) to a final bid, as provided in the APA, in an amount of Fifteen Million Eight Hundred Thousand Dollars ($15,800,000)(the "**Gross Purchase Price**") to be paid as follows: (a) at closing, Buyer shall pay to Debtor an amount

equal to the Gross Purchase Price less (1) the aggregate amount of the Cure Costs, (2) the

Buyer's deposit in the amount of One Million Fifty Thousand Dollars ($1,050,000), and (3) Six

Hundred Thousand Dollars ($600,000)(the "**Deferred Purchase Price**"); and (b) the Deferred

Purchase Price shall be paid to Debtor in four (4) annual installments in the amount of One

Hundred Fifty Thousand Dollars ($150,000) each with the first installment due on the one (1)

year anniversary of the closing date of the APA.

XXVIII. After consultation with the Committee, NewKey and NewKey II, the Debtor

determined and selected the modified and improved bid of the Buyer at the Auction to be the

"Prevailing Bid" (as defined in the Bidding Procedures) for the Purchased Assets.

XXIX. After consultation with the Committee, NewKey and NewKey II, the Debtor

determined and selected the modified and improved bid of Cronimet at the Auction (the

"**Cronimet Improved Bid**") to be the "Back-Up Bid" (as defined in the Bidding Procedures) for

the "Transferred Assets" (as defined in the Bidding Procedures).

XXX.   Cronimet contends that the Cronimet Improved Bid is conditioned upon J. Mark

Lozier, President and Chief Executive Officer of the Debtor ("**Lozier**"), being bound by the non-

compete provisions contained in the Stalking Horse APA (the "**Lozier Non-Compete**

**Provisions**"). Lozier disputes Cronimet's contentions and further contends that: (a) based upon

the higher and better offer submitted by the Buyer prior to the commencement of the Auction,

Cronimet's stalking horse bid was no longer the highest and best offer for the Purchased Assets;

(b) if the Stalking Horse APA is not approved by the Court in its original form, then the Stalking

Horse APA and the Lozier Non-Compete Provisions contained solely therein are null and void;

(c) Lozier did not enter into any non-compete or other agreement with the Buyer to induce them

to make a higher and better offer for the Purchased Assets than Cronimet; (d) prior to the

commencement of the Auction, Lozier notified all interested parties, including Cronimet, that the

Lozier Non-Compete Provisions were inapplicable to any subsequent bid made by Cronimet at

the Auction, and that Lozier did not intend to enter into any non-compete agreement with

Cronimet in connection with any subsequent bid made by Cronimet at the Auction; (e) counsel to

Lozier reiterated on the record at the Auction that Lozier was not agreeing to enter into any non-

compete agreements with respect to the APA or the Cronimet Improved Bid; and (f) at the

Auction, Cronimet did not condition any of its bidding and its Back-Up Bid upon being bound

by the Lozier Non-Compete Provisions in the Stalking Horse APA thereby waived any such

condition.  Cronimet disputes the contentions of Lozier. In the event the Prevailing Bid does not

close and the Debtor intends to proceed with a closing on the Back-Up Bid of Cronimet, all

claims and defenses of all parties related to the Lozier Non-Compete Provisions are expressly

reserved and subject to determination, if necessary, by further order of Court.

XXXI. After consultation with the Committee, NewKey and NewKey II, the Debtor

determined and selected the modified and improved bid of PPL Group, LLC and Myron Bowling

Auctioneers, Inc. (collectively, the "**PPL Group**") at the Auction (the "**PPL Group Improved**

**Bid**") to be the "Back-Up Bid" (as defined in the Bidding Procedures) for the residual assets to

be transferred in the asset purchase agreement provided by the PPL Group in connection with its

initial bid (the "**PPL Residual Assets**").

### **Closing; Assumed Liabilities; Assumed Contracts; and Avoidance Actions**

XXXII.        Under and subject to the terms of the APA and as affirmed in open court,

Buyer has agreed to the terms and conditions of the sale as set forth in the APA and has agreed to

make the necessary payments and deliveries required thereunder at the closing contemplated

under the APA and authorized pursuant to this Sale Order (the "**Transaction**"), which is

scheduled to occur on or before December 31, 2013, or such later date as authorized under the APA (the "**Closing**").

XXXIII.        Subject to the terms of the APA, at the Closing Buyer shall assume certain "**Assumed Liabilities**" (as defined in the APA) of the Debtor, including, but not limited to, the Cure Costs set forth on the list attached hereto as detailed on <u>Exhibit B</u> and expressly made a part hereof.

XXXIV. Buyer has required the Debtor to assume and assign to Buyer at Closing those certain Assumed Contracts and unexpired leases between the Debtor and various other parties, all as more fully set forth on <u>Exhibit B</u> (collectively, the "**Assumed Contracts**"). Pursuant to the terms set forth in the APA, Buyer has assumed liability for payment of the Cure Costs associated with the Assumed Contracts, if any, and shall cause payment of same at the Closing.  Each of the Assumed Contracts has been lawfully assumed and assigned to Buyer and the counterparties to such Assumed Contracts have either consented to the assumption and assignment or there is no applicable law that prevents such assignments pursuant to section 365(c) of the Code.

XXXV.  The Purchased Assets do not include any claims of the Debtor arising under Chapter 5 of the Code (the "**Avoidance Actions**").

**NOW, THEREFORE, THE COURT MAKES THE FOLLOWING**

**CONCLUSIONS OF LAW:**

A.        This Court has jurisdiction over the subject matter of this Sale Order pursuant to 28 U.S.C. §§ 157 and 1344(b) and (c), and applicable local rules regarding the referral to this Court of cases under title 11 of the United States Code.  Venue of this Chapter 11 Case and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The entry of this Sale Order and all proceedings relating thereto collectively
constitute a "core proceeding" pursuant to, without limitation, 28 U.S.C. §§ 157(b)(2)(A), (M),
(N) and (O).  The statutory bases for relief sought in the Sale Motion are sections 105, 363 and
365 of the Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

C.      This Sale Order constitutes a final and appealable order within the meaning of 28
U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014, this Court expressly
finds that there is no just reason for delay in the implementation of this Sale Order, and expressly
directs entry of judgment as set forth herein.

D.      The Debtor is the legal and equitable owner of the Purchased Assets, all of which
are property of the Debtor's estate.

E.      As evidenced by, among other things, the certificates and proofs of service on file
with the Court, all interested persons and entities (including, the Office of the United States
Trustee, the Committee, Buyer, all bidders, secured creditors, governmental taxing authorities,
each non-debtor party to an Assumed Contract, all entities that claim any Lien on or other
interest in the Purchased Assets, all known creditors of the Debtor and all parties requesting
notice in this Case) had due, proper, timely, adequate and sufficient notice of the Sale Motion,
entry of the Bidding Procedures Order, the Auction, assumption and assignment of the Assumed
Contracts, and the Sale Hearing; and were given an adequate and reasonable opportunity to
present objections to the relief sought herein, or otherwise appear and be heard on the date
hereof. Accordingly, no other or further notice of the Sale Motion or the Sale Hearing is
necessary under the circumstances and no other or further notice shall be required.

F.      The Debtor: (i) has full corporate power and authority to execute the APA and all
other documents contemplated thereby; (ii) has all of the corporate power and authority

necessary to consummate the transactions contemplated by the APA; and (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtor of the transactions contemplated thereby.  Upon entry of this Sale Order, the Debtor shall have full authority to consummate the Transaction.

G.      As demonstrated by (i) the evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtor and its professionals diligently and in good faith have adequately marketed the Purchased Assets to secure the highest and best offer therefor.

H.      Buyer's offer to purchase the Purchased Assets pursuant to the APA constitutes the Prevailing Bid in accordance with the Bidding Procedures.

I.      Cronimet's offer to purchase the Transferred Assets pursuant to the Cronimet Improved Bid, subject to the resolution of any issues related to the Lozier Non-Compete Provisions, and the PPL Group's offer to purchase the PPL Residual Assets pursuant to the PPL Group Improved Bid constitute the respective Back-Up Bids in accordance with the Bidding Procedures.  Upon a closing with the Buyer of the transaction contemplated under the APA, Cronimet shall be entitled to payment of a break-up fee as provided in the Bidding Procedures Order.

J.      Acceptance of the APA and consummation of the sale pursuant thereto is in the best interests of the Debtor, its estate, creditors and other parties in interest. The Debtor has demonstrated good, sufficient and sound business purpose and justifications for the entry hereof pursuant to 11 U.S.C. § 363(b) prior to, and outside the context of, a plan of reorganization in that, among other things, certain of the Purchased Assets are deteriorating in value, the Debtor is unable to fund a restructuring of its operations and there is an immediate need for the sale of the

Purchased Assets to avoid irreparable diminution of the assets in this estate.  Further, the only

alternative to this Transaction is the orderly liquidation under Chapter 7 or Chapter 11 of the

Code, which may not result in distributions to general unsecured creditors of the estate.

K.    The consideration to be provided by Buyer for the Purchased Assets pursuant to

APA (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will

maximize the existing value of the Purchased Assets, (iv) will provide a greater recovery for the

Debtor's creditors and other interested parties than would be provided by any other practically

available alternative, and (v) constitutes reasonably equivalent value and fair consideration under

the Code, the Uniform Fraudulent Transfer Act and all other applicable laws of the United States

and the State of Illinois.  In addition to the purchase price provided in the APA, the consideration

provided by Buyer includes possible payments pursuant to the Contingent Payment Agreement,

as well as the indirect benefits of the sale for the Debtor, the vendors, suppliers, employees of the

Debtor, all relevant governmental and taxing authorities, and others directly or indirectly served

by the Business.

L.    Neither the Debtor nor Buyer entered into the APA for the purpose of hindering,

delaying or defrauding creditors under the Code or under all other applicable laws of the United

States or the State of Illinois.

M.    The sale of the Purchased Assets pursuant to the APA will be and shall constitute

a legal, valid, and effective transfer of the Purchased Assets, and, except as provided in the APA

(the "**Permitted Encumbrances**"), shall be free and clear of any and all liens, claims, interests,

liabilities and encumbrances whatsoever, including all covenants held by any party that would or

would tend to impair, restrict or adversely affect the Buyer's right upon closing to use, manage,

operate or enjoy the Purchased Assets, to the fullest extent permitted by section 363(f) of the

Code with respect to the operation of or related to the Business and/or the Purchased Assets prior to the date of the Closing, whether arising under any employment, pension, environmental, advertising, products liability or other similar laws or state successor liability claims or interests or otherwise, including, without limitation: (i) all "liens" as defined in section 101(37) of the Code and the APA, and whether consensual, statutory, possessory, judicial or otherwise ("**Liens**"); (ii) all "claims" as defined in section 101(5) of the Code ("**Claims**"); (iii) all encumbrances of any kind in favor of the Secured Creditors or any other known creditors of the Debtor ("**Encumbrances**"); and (iv) those interests, including but not limited to such interests (a) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's interest in the Purchased Assets, or any similar rights, and (b) relating to taxes arising under or out of, in connection with, or in any way relating to or arising under the operation of the Debtor's Business or the Purchased Assets prior to the consummation of Closing (all of the foregoing Liens, Claims, Encumbrances and interests shall hereinafter be collectively referred to as "**Interests**"). Any and all Liens, excepting only the Permitted Encumbrances, shall attach to the net proceeds of sale pursuant to section 363(f) of the Code, with the same validity and priority that existed immediately prior to the Closing.  Without limiting the generality of the foregoing, Buyer shall not have any liability as a successor to the Debtor for any tax or other obligations of the Debtor to the Illinois Department of Revenue, including those arising pursuant to any "bulk sales" act.

N.      Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Purchased Assets to Buyer and the assignment of the Assumed Contracts were not free and clear of all Interests of any kind or nature whatsoever (other than the

Permitted Encumbrances), or if Buyer would, or in the future could, be liable for any of the Interests not expressly assumed by Buyer pursuant to the terms of the APA.

O.        The Debtor may sell the Purchased Assets free and clear of all Interests of any kind or nature whatsoever because, and as applicable, one or more of the standards set forth in 11 U.S.C. § 363(f) have been satisfied.  With respect to each Interest in the Purchased Assets: (i) the holder of such Interest consents to the sale; and/or (ii) such Interest is a Lien and the price at which such property is to be sold is greater than the aggregate value of all Liens on the Purchased Assets; and/or (iii) such entity can be compelled to accept a money satisfaction of such Interest.  All parties with Interests in or against the Purchased Assets who did not object to the Sale Motion, to the entry of this Sale Order and the relief requested herein, who did not request adequate protection of any possessory right, or who withdrew their objection(s) to the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Code.

P.        All Liens in the Purchased Assets shall attach to the net sale proceeds realized by the Transaction with the same validity and priority that existed immediately prior to the Closing; provided, however, that the Assumed Liabilities are assumed by Buyer as set forth in the APA, the Permitted Encumbrances shall survive Closing, and certain proceeds of the sale shall be disbursed in accordance with the terms and conditions of the APA, this Sale Order and other orders of this Court.  This Court shall retain jurisdiction to determine the validity, extent and priority of the Interests, as well as the extent to which such Interests may attach to the net sale proceeds.  After the Closing, all net sale proceeds shall be held in escrow and shall not be distributed without the entry of an order of this Court.

Q.        To the greatest extent permitted under section 363(f) of the Code, the (i) transfer of the Purchased Assets to Buyer and (ii) assumption and assignment to Buyer of the Assumed

Contracts will not subject Buyer to any liability whatsoever with respect to, arising under, or on account of, the operation of the Business or the Purchased Assets prior to the Closing or by reason of such transfer under any applicable laws, whether based, in whole or part, directly or indirectly, on any theory of law or equity whatsoever.

R.     Sound business reasons exist for the Transaction. The Debtor has demonstrated that it is an exercise of its sound business judgment and it is in the best interests of the Debtor, all of its creditors, the Debtor's estate, and other parties in interest to enter into this sale transaction and APA, consummate the sale, and assume all of the Assumed Contracts identified herein in accordance with the terms of section 365(b)(1) of the Code, and assign all of the Debtor's right, title and interest in and to the Assumed Contracts to Buyer at the Closing free and clear of any and all Interests to the fullest extent permitted by section 363(f) of the Code and the APA, subject to the payment and/or adequate assurance of payment of the Cure Costs for all such Assumed Contracts at Closing or as soon thereafter as is practicable or provided in the APA.

S.     Buyer has provided adequate assurance of its ability to perform its obligations under each of the Assumed Contracts within the meaning of section 365(f) of the Code.

T.     The APA was negotiated, proposed and entered into by the Debtor and Buyer without collusion, in good faith, and at arm's length bargaining positions with assistance of their respective advisors and choice of legal counsel. The purchase price for the Purchased Assets set forth in the APA was not controlled by any agreement among any potential or actual bidders, and neither the Debtor nor Buyer have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Code.  All relationships between the Debtor and Buyer have been disclosed.  Specifically, Buyer has disclosed that J. Mark Lozier may become the

President of and an investor in Buyer or its affiliates.  Buyer is not an "insider" of the Debtor as

that term is defined in section 101(31) of the Code.

U.     Buyer negotiated the APA in good faith and is in all respects a good faith

purchaser and, as such, is entitled to all of the protections afforded by section 363(m) of the

Code.  Buyer will be acting in good faith within the meaning of section 363(m) of the Code in

consummating the Transaction.

V.     The Debtor has demonstrated that it is an exercise of its sound business judgment

to assume and assign the Assumed Contracts to Buyer in connection with the consummation of

the APA, and the assumption and assignment of the Assumed Contracts is in the best interests of

the Debtor, its estate, and its creditors.  The Assumed Contracts being assigned to, and the

corresponding liabilities being assumed thereunder by Buyer, are an integral part of the

Purchased Assets being purchased by Buyer and, accordingly, such assumption and assignment

is reasonable and enhances the value of the Debtor's estate.

W.     The consummation of the Transaction will be a legal, valid, and effective transfer

of the Purchased Assets to Buyer, and will vest Buyer with all right, title, and interest in and to

the Purchased Assets and the Assumed Contracts, free and clear of all Interests, other than

Assumed Liabilities and Permitted Encumbrances in accordance with section 363(f) of the Code.

X.     Notwithstanding anything to the contrary in the APA, the Debtor is not waiving or

releasing the Avoidance Actions.

Y.     The APA is a valid and binding contract between Debtor and the Buyer which is

and shall be enforceable according to its terms.  All of the provisions of the APA are non-

severable and mutually dependent.

Z.      The legal and factual bases set forth in the Sale Motion and at the Sale Hearing,

and the foregoing findings of fact and conclusions of law establish just cause for the relief

granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED EFFECTIVE IMMEDIATELY,**

**as follows:**

1.      The Sale Motion, the APA and the transactions contemplated thereby are hereby

granted and approved as modified by this Sale Order.

2.      All objections to the Sale Motion, the entry of this Sale Order and the relief

granted herein that have not been withdrawn, waived, or settled, and all reservations of rights

included therein, are hereby denied and overruled.

3.      The APA and all terms and conditions thereof are hereby approved, and the

Debtor be and is hereby authorized to accept the APA and Buyer's offer for the purchase of the

Purchased Assets pursuant thereto.

4.      The Bill of Sale attached to the APA, including the power of attorney granted to

Buyer therein, is hereby approved.

5.      Pursuant to sections 363(b), 363(f) and 365(b) of the Code, Debtor is authorized

to execute, deliver and perform under, consummate, and implement the APA together with all

additional instruments and documents that are required by Buyer and may be reasonably

necessary or desirable to implement the APA, and to take any and all actions as the Buyer and/or

Debtor deems necessary, appropriate, or advisable for the purpose of assigning, transferring,

granting, conveying, and conferring to Buyer or reducing to its possession, the Purchased Assets,

or as may be necessary or appropriate to the performance of the obligations as contemplated by

the APA, including, without limitation, any and all actions reasonably requested by Buyer which are consistent with the APA.

6.      Pursuant to sections 105(a), 363(f) and 365(b) of the Code, upon the Closing and without further notice or court order: (a) the transfer of the Purchased Assets to Buyer pursuant to the APA shall constitute a legal, valid and effective transfer of the Purchased Assets and shall vest Buyer with all right, title, and interest in and to the Purchased Assets; (b) the Purchased Assets shall be transferred to Buyer free and clear of any and all Liens, Interests and Encumbrances, other than the Permitted Encumbrances, against such assets, in accordance with section 363(f) of the Code, and with any and all Liens to attach to net proceeds of the Transaction with the same validity, force and effect held pre-petition and prior to this Sale Order, and pending further order of Court, subject to any rights, claims, and defenses Debtor and all interested parties may possess with respect thereto; and (c) each of the Assumed Contracts shall be deemed to be subsisting without default, assumed by the Debtor and assigned to Buyer upon the Closing Date of the Transaction as provided and contemplated, and required by, the APA.

7.      All titanium, nickel and other specialty steel based scrap materials (collectively, the "**ATI Materials**") which have been delivered to the Debtor by ATI Allvac, ATI Wah Chang (each a division of TDY Industries, LLC), Alleghany Technologies Incorporated or any affiliates thereof (collectively, "**ATI**") for processing services are the property of ATI. The ATI Materials shall not constitute "Purchased Assets", shall not be subject to sale, and the Buyer shall not acquire any right, title or interest in the ATI Materials.

8.      This Sale Order is and shall be effective as a determination that all Interests other than the Permitted Encumbrances shall be and are, without further action by any person or entity, released with respect to the Purchased Assets as of the Closing.

9.      The sale of the Purchased Assets to Buyer will constitute a transfer for reasonably equivalent value and fair consideration under the Code, the Uniform Fraudulent Transfer Act, and all other applicable laws of the United States and the State of Illinois.

10.     EXCEPT AS EXPRESSLY PERMITTED OR OTHERWISE SPECIFICALLY PROVIDED BY THE APA OR THIS SALE ORDER, TO THE GREATEST EXTENT POSSIBLE WITHIN THE REQUIREMENTS OF DUE PROCESS, AND PROVIDED FURTHER THAT THE CLOSING SHALL HAVE OCCURRED, ALL CREDITORS OF THE DEBTOR, INCLUDING, BUT NOT LIMITED TO, ALL GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, CUSTOMERS, EMPLOYEES, TRADE AND OTHER CREDITORS AND PARTIES IN INTEREST, HOLDING INTERESTS OF ANY KIND OR NATURE WHATSOEVER IN OR AGAINST THE DEBTOR OR THE PURCHASED ASSETS (WHETHER LEGAL OR EQUITABLE, SECURED OR UNSECURED, MATURED OR UNMATURED, CONTINGENT OR NON-CONTINGENT, SENIOR OR SUBORDINATED), ARISING UNDER OR OUT OF, IN CONNECTION WITH, OR IN ANY WAY RELATING TO, THE DEBTOR, THE PURCHASED ASSETS, OR THE TRANSFER OF THE PURCHASED ASSETS TO BUYER, HEREBY ARE FOREVER BARRED, ESTOPPED, AND PERMANENTLY ENJOINED FROM ASSERTING SUCH INTERESTS AGAINST BUYER, ITS PARENTS, AFFILIATES, SUBSIDIARIES, SUCCESSORS, ASSIGNS, REPRESENTATIVES, AGENTS AND EMPLOYEES, THE PROPERTY OF BUYER, OR THE PURCHASED ASSETS.

11.     Except for the Assumed Liabilities or as otherwise provided in the APA, Buyer is not assuming, nor shall it, in any way whatsoever, be deemed to be liable or responsible, as successor or otherwise, for any liabilities or Interests against the Debtor, or any liabilities or

Interests in any way whatsoever relating to or arising from the Debtor's assets, or by virtue of the conveyance of the Purchased Assets to Buyer or the assumption and assignment to Buyer of the Assumed Contracts.

12.     This Sale Order (a) is and shall be effective as a determination that, upon Closing, all Interests, Liens or other Encumbrances of any name or nature existing as to the Purchased Assets conveyed to Buyer have been and hereby are adjudged to be unconditionally released, discharged and terminated, with all such Interests, Liens or other Encumbrances attaching automatically to the net sale proceeds in the same manner and priority, and (b) shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to Buyer.  All Interests, Liens and other Encumbrances of record as of the date of this Sale Order (other than the Permitted Encumbrances) shall be removed and stricken as against the Purchased Assets in accordance with the foregoing.

13.     If any person or entity which has filed financing statements, mortgages, *lis pendens* or other documents or agreements evidencing Interests, Liens or other Encumbrances on the Purchased Assets shall not have delivered to the Debtor prior to Closing, in proper form for filing and executed by the appropriate parties, any termination statements, instruments of satisfaction, releases of liens and easements and other documents necessary for the purpose of documenting the release of all Liens or other Encumbrances which the person or entity has or

may assert with respect to the Purchased Assets, Buyer is hereby authorized upon Closing to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.  Upon Closing, and upon the request of Buyer, the Debtor and each of the Debtor's creditors and any other applicable person is authorized and directed to execute such documents and take all such actions as may be necessary to release their respective Liens against the Purchased Assets.

14.     Upon Closing the net sale proceeds resulting from the Transaction shall remain subject to the jurisdiction of this Court and shall not be disbursed except as provided by an order of this Court.

**Assumption and Assignment of Purchased Contracts**

15.     Pursuant to the terms of the APA, Buyer shall be responsible for curing all allowed Cure Costs relating to the Assumed Contracts, and for assumption of the Assumed Liabilities as provided in the APA.  Pursuant to section 365 of the Code, the Debtor is authorized to assume the Assumed Contracts, and to assign the Assumed Contracts to Buyer.

16.     Effective upon Closing the Assumed Contracts shall (a) be transferred to Buyer free and clear of all Interests, (b) be deemed subsisting without defaults (effective upon payment of the Cure Costs), and (c) remain in full force and effect for the benefit of Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract that prohibits, restricts, or conditions such assignment or transfer and, Buyer shall enjoy all the rights and benefits under each Assumed Contract without the necessity of obtaining each respective non-Debtor party's written consent to the Debtor's assumption and assignment thereof.  Pursuant to section 365(k) of the Code, the Debtor shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by Buyer.

17.     All defaults or other obligations of the Debtor under the Assumed Contracts arising or accruing prior to the Closing Date shall be deemed cured, subject to the satisfaction of the provisions of Paragraph 15 herein, and Buyer shall have no liability or obligation arising or accruing under the Assumed Contract prior to the Closing.  Debtor and Buyer have provided adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b) and (f) of the Code.

18.     Upon complete satisfaction of the Cure Costs, each non-debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from asserting against Buyer or the Assumed Contracts, any default existing as of the Closing Date or any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtor as of the Closing Date.  Further, each non-debtor party to an Assumed Contract that did not file a Cure Amount/Assignment Objection (as such term is defined in the Bidding Procedures Order) is hereby deemed to have consented to the assumption, assignment and/or transfer of such Assumed Contract, and is hereby forever barred and estopped from asserting or claiming against the Debtor or Buyer that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Assumed Contract.

19.     The failure of the Debtor or Buyer to enforce at any time one or more terms of conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's or Buyer's rights to enforce every term and condition of the Assumed Contracts.

20.     OPEN [Notwithstanding anything to the contrary contained in this Sale Order or the Assumption Notice, and subject to the Closing of the APA and the payment of the Cure Cost as detailed on Exhibit B owing to the Atlanta Landlord (defined below), to resolve the *Objection of Nadel Trust to Notice of Potential Assumption and Assignment of Executory Contracts and*

*Unexpired Leases* [Docket No. 276], the Debtor and The Child's Trust Created Under The Will of Janet Nadel For The Benefit Of Tina Nadel Gravley and the Child's Trust Created Under the Will of Janet Nadel For The Benefit Of Glen L. Nadel (the "**Atlanta Landlord**") have agreed to modify and amend that certain lease of real property located at 4650 Stacks Road, Atlanta, Georgia 30345, originally dated December 1, 1994, as amended from time to time thereafter (the "**Atlanta Lease**") as follows: (a) the term of the Atlanta Lease shall be extended for an additional three (3) year term, along with two (2) options to further extend the term of the Atlanta Lease with each such option providing for an extension of the term for two (2) additional years for each such option; and (b) the Rent (as such term is defined under the Atlanta Lease) for the first twelve months of the initial extended three (3) year term shall be increased to $4,200 per month with the rent increasing 3% annually thereafter (years 2 and 3).  If the first renewal option is exercised, the Rent will continue to increase 3% annually through the first renewal period (years 4 and 5).  Thereafter, should the second option be exercised (years 6 and 7), then the Rent shall be $5,500 per month for such years.  The Atlanta Lease shall be deemed assumed, as modified herein, and assigned to the Buyer at the Closing of the APA.]

**<u>Additional Provisions</u>**

21.     The purchase price and other consideration provided by Buyer for the Purchased Assets is fair and reasonable and the Transaction may not be avoided under section 363(n) of the Code.

22.     The Transaction has been, and is undertaken by the Debtor and Buyer in good faith, as that term is used in section 363(m) of the Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to Buyer, unless such authorization is

245562                                    25

duly stayed by Court order pending such appeal. Buyer is hereby granted and is entitled to all the protections provided to good faith purchasers under section 363(m) of the Code, and is in all respects a good faith purchaser.  In the event of any modification, reversal or vacation of this Sale Order, then notwithstanding any such modification, reversal or vacation, all obligations incurred by the Debtor under this Sale Order and the APA prior to the effective date of such modification, reversal or vacation will be governed in all respects by the original provisions of this Sale Order, and Buyer shall be entitled to the rights, privileges and benefits granted in this Sale Order with respect to all such obligations.

23.    This Court shall retain exclusive jurisdiction to:

a.  Implement, interpret and enforce the terms and provisions of this Sale Order and the APA, and any waivers and consents thereunder, and of each of the agreements executed in connection therewith to which the Debtor is a party or which have been assigned by Debtor to Buyer;

b.  Protect the Buyer and any of the Assumed Contracts or Purchased Assets against any alleged Interests (other than the Permitted Encumbrances and the Assumed Liabilities), as provided herein, and to enforce the injunctions provided herein with respect to the commencement or continuation of any action seeking to impose successor or other liability upon Buyer;

c.  Enter orders in aid or furtherance of the sale and the Transaction;

d.  Adjudicate all issues concerning any actual or alleged Interests in and to the Purchased Assets, including the extent, validity, enforceability, priority and nature of all such actual or alleged Interests;

e.  Adjudicate any and all remaining issues concerning Debtor's right and authority to assume and assign the Assumed Contracts and the rights and obligations of Buyer with respect to such assignment and the existence of any default (including any Cure Costs) under any such Assumed Contract; and

f.  Except as expressly provided for herein, adjudicate any and all issues and/or disputes relating to the Debtor and title or interest in the Purchased Assets and the proceeds of the sale, the Sale Motion and/or the APA;

<u>provided however</u>, that in the event the Court abstains from exercising or declines to exercise

such jurisdiction or is without jurisdiction with respect to the Transaction or this Sale Order, such

abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control,

prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with

respect to any such matter.

24.    The transactions contemplated under the APA do not amount to a consolidation,

merger, or *de facto* merger of Buyer and the Debtor and/or the Debtor's estate, there is no

substantial continuity between Buyer and the Debtor, there is no continuity of enterprise between

the Debtor and Buyer, Buyer is not a mere continuation of the Debtor or its estate, and Buyer

does not constitute a successor to the Debtor or its estate under applicable state law.  Other than

the Assumed Liabilities under the APA, Buyer shall not assume, nor be deemed to assume or in

any way be responsible for any liability or obligation of the Debtor or its estate, including, but

not limited to: (a) the Excluded Liabilities; (b) any employment or labor agreements, consulting

agreements, severance agreements, change-in-control agreements, or other similar agreements to

which the Debtor is or was a party; (c) any pension, welfare, compensation, deferred

compensation or other employee benefit plans, agreements, practices, and programs, including,

without limitation, any pension plan of the Debtor; (d) the cessation of the Debtor's operations,

dismissal of employees, or termination of employment or labor agreements or pension, welfare,

compensation or other employee benefit plans, agreements, practices and programs, and any

obligation with respect thereto that arise from or with respect thereto that arise from the

Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act,

Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967,

as amended, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the

Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment

and Retraining Notification Act; (e) workers' compensation, occupational disease or

unemployment or temporary disability insurance claims; (f) any bulk sales or similar law; (g) any

litigation by or against the Debtor; and (h) the laws of the United States, any state, territory or

possession thereof, or the District of Columbia, including any statute, rule, regulations, order,

decree, administrative or judicial doctrine or other laws based, in whole or in part, directly or

indirectly, in any theory of law or equity, including without limitation, any theory of equitable

law, including, without limitation, any theory of antitrust or successor or transferee liability. The

Purchaser is not a successor to the Debtor under any doctrine of successor liability. The Sale

Motion and notices provided by the Debtor with respect to the Sale Motion, the Bidding

Procedures, the Auction and the Sale Hearing contain sufficient notice of such limitation in

accordance with applicable Bankruptcy Rules.

25.    In resolution of the *Conditional Objection And Reservation Of Rights Filed By The*

*United Steelworkers To Debtor's Motion For An Order Authorizing The Sale of Assets Free And*

*Clear Of Liens, Claims, Encumbrances, and Interests Of the Debtor* (Docket No. 255), and in

connection with Article XXVI of the collective bargaining agreement between the Debtor and the

United Steelworkers ("**USW**") covering the Frewsburg and Falconer bargaining unit ("**New York**

**CBA**"), Buyer agrees that post-closing, contingent upon and at such time as former Debtor

employees make up a majority of the Buyer's workforce within the appropriate bargaining unit,

the Buyer, upon the USW's request, shall recognize the USW as the exclusive collective

representative for those employees and bargain in good faith.  Nothing herein shall be treated as

an assumption by the Buyer of the New York CBA or any other collective bargaining agreement

to which the USW and the Debtor are parties.  Buyer has advised that it presently intends to

establish the initial terms and conditions of employment on which employees will be hired.  In

addition, nothing herein shall be held to modify or, if the Buyer is deemed to be a successor

employer, to limit any right or obligation arising under federal labor law in relation to employees

at any of the Debtor's facilities or modify the Buyer's obligations post-closing as a successor

employer for purposes of federal labor law within either the bargaining unit covered by the New

York CBA or the bargaining unit at the West Mifflin, Pennsylvania facility.

26.     Nothing in this Sale Order or in any sale agreement entered into pursuant to this

Sale Order: (a) releases, nullifies, precludes or enjoins the enforcement of any liability (including

for penalties, damages, cost recovery or injunctive relief) to a governmental unit under

environmental statutes or regulations that any entity would be subject to as the owner or operator

of property that is sold or transferred pursuant to this Order; or (b) authorizes the transfer to the

purchaser of any governmental licenses, permits, registrations, authorizations or approvals under

environmental statutes or regulations without compliance with all applicable legal requirements

under the law governing such transfers.

27.     All persons or entities that are presently, or on the Closing Date may be, in

possession of some or all of the Purchased Assets, are hereby directed to surrender possession of

the Purchased Assets to Buyer on the Closing Date.

28.     From and after the date hereof, the Debtor is authorized to perform all acts and

requirements consistent with the terms of the APA.

29.     This Sale Order shall be binding in all respects upon all creditors of the Debtor

and all respective successors and assigns of Buyer and the Debtor.

30.     The terms and provisions of the APA, the ancillary agreements entered in

connection therewith and upon Closing, and this Sale Order shall be binding in all respects upon,

245562                                    29

and shall inure to the benefit of the Debtor and Buyer and their respective affiliates, successors

and assigns, and any affected third parties, notwithstanding any subsequent appointment of any

trustee(s) under any chapter of the Code or conversion of this case to a case under Chapter 7, as

to which trustee(s) such terms and provisions likewise shall be binding.  The APA and the

Transaction may be specifically enforced against, and shall not be subject to rejection or

avoidance by, the Debtor or any Chapter 7 or Chapter 11 trustee of the Debtor.

31.    The APA and any related agreements, documents, or other instruments may be

modified, amended, or supplemented by the parties thereto, in a writing signed by such parties,

and in accordance with the terms thereof, without further order of the Court, provided that any

such modification, amendment, or supplement does not have a material adverse effect on the

Debtor or the Debtor's estate.

32.    The failure to specifically include in this Sale Order any particular provisions of

the APA or any ancillary documents executed in connection therewith shall not diminish or

impair the effectiveness of such provisions, it being the intent of the Court that the APA and such

ancillary documents be authorized and approved in their entirety.

33.    OPEN: [For the avoidance of doubt, nothing contained in this Sale Order shall be,

or shall be deemed as, a release or waiver of claims held by the estate or the Committee's

objections, claims, lawsuits, or other actions relating to the Prepetition Loan Documents, the

NewKey Prepetition Indebtedness, the Secured Lenders, or directors, officers, employees,

owners, members, or other stakeholders of the Debtor or the Secured Lenders.  Similarly,

nothing contained in this Sale Order shall be, or shall be deemed as, a release or waiver of any

claims, arguments, defenses or affirmative defenses held by the Secured Lenders, or directors,

officers, employees, owners, members, or other stakeholders of the Debtor or the Secured

Lenders relating to any objections, claims, lawsuits, or other actions asserted by the Committee.]

34.     To the extent of any inconsistency among the provisions of this Sale Order, the

APA, and any document executed in connection therewith, the provisions contained in this Sale

Order shall govern.

35.     Buyer shall have an ongoing obligation after Closing to cooperate with the Debtor

and the Committee in making the Debtor's records and other information available upon

reasonable request to enable the orderly administration of the Debtor's estate.

36.     The Debtor is authorized to close on the Back-Up Bids consistent with the

Bidding Procedures and the Bidding Procedures Order, in the event Buyer fails to close.

37.     In the event that this Chapter 11 Case is dismissed or converted to a Chapter 7

case, or a trustee is appointed (whether under Chapter 11 or 7), neither the dismissal or

conversion of this case, nor the appointment of such a trustee, shall affect, in any manner the

rights of Buyer under the APA or this Sale Order or any other agreement executed by the Debtor

in conjunction with the sale or the Transaction, and all of the rights and remedies of Buyer under

this Sale Order, and such agreement shall remain in full force and effect as if the case had not

been dismissed or converted or a trustee had not been appointed.

38.     This Sale Order shall be effective and enforceable immediately upon entry and the

14-day stay period provided by Bankruptcy Rule 6004(h) and 6006(d) shall not apply so that the

sale may close immediately.

DATED:_____ ___, 2013        ENTER:


_____
UNITED STATES BANKRUPTCY JUDGE