Hearing date: January 12, 2016
Hearing Time: 1:00 pm
Hearing Place: Courtroom 619

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
In Re:

| | |
|---|---|
| **SGK Ventures, L.L.C.,** f/k/a Keywell, L.L.C., | Chapter 11 Case No. 13-37603 |
| **Debtor.** | |

## MOTION FOR ALLOWANCE AND PAYMENT TO THE FREWSBURG ADMININSTRATOR OF ADMINISTRATIVE EXPENSES UNDER 11 U.S.C. § 503(b)

The State of New York, and its executive agency, the Department of Environmental Conservation, ("State" or "DEC"), by and through New York State Attorney General, Eric T. Schneiderman (Stephen M. Nagle, Esq., of Counsel), hereby move this Court for an order pursuant to 11 U.S.C. § 503(b), allowing an administrative expense claim on behalf of the State ("State's Administrative Claim") and directing the Debtor and the Liquidating Trustee to pay once incurred the amount of the Administrative Claim to the Frewsburg Administrator to continue implementing the environmental remediation at the Frewsburg Property in conformance with the Plan, the 1996 DEC Order, and 28 U.S.C. § 959(b), and respectfully state as follows:

### FACTUAL BACKGROUND

1.  The Debtor filed its Chapter 11 Bankruptcy on September 24, 2013. No Trustee was appointed. The Order Confirming the Second Amended Plan (Plan) was signed and entered on September 3, 2014.

2.  The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.

3.  Pursuant to 11 U.S.C. § 503(a) and (b) an entity may timely file a request for the allowance or payment of an administrative expense. Pursuant to 11 U.S.C. § 101(15)

and (27), DEC is an entity which may seek the allowance of administrative expenses under 11 U.S.C. § 503(b).

4.  Pursuant to 11 U.S.C. § 503(b), after notice and a hearing, the Court may allow certain administrative expenses including, the actual, necessary costs and expenses of preserving assets of the estate.

5.  This motion is timely filed following the Court's denial of the Frewsburg Administrator's motion to abandon the Frewsburg Property, when the Frewsburg Administrator revealed that he sought to abandon the Property and would no longer continue the operation of hazardous waste remedial systems (the "Remedy") required under a 1996 DEC administrative order on consent ("1996 DEC Order"). The State received notice of the potential necessity for an allowance of administrative expenses only upon receipt and review of the Frewsburg Administrator's abandonment motion. The Remedy involved the installation of a subsurface slurry wall to stop the flow of contaminated groundwater directly into drinking water wells, the Conewango Creek, and surrounding areas and the long-term operation of a system of groundwater wells, which extracts and treats the contaminated groundwater that is collected behind the slurry wall. The Remedy also requires air sparging, soil vacuum extraction, sediment excavation, storm water controls, capping and long term monitoring. Additionally, the Frewsburg Administrator advised the Court in the abandonment motion that there were insufficient funds in the Frewsburg Property accounts for the continued operation and maintenance of the Remedy. The Frewsburg Administrator disclosed that the Liquidating Trustee had denied the Frewsburg Administrator's request for funds for the continued operation and maintenance of the Remedy. The actions of the Frewsburg Administrator and the Liquidating Trustee created an unexpected, post-confirmation need for a §503 motion for

2

the allowance of an administrative expense for the costs necessary to comply with the Plan, the 1996 DEC Order, 28 U.S.C. § 959(b) and continue the Remedy.

6.     DEC has a significant interest in this case as the agency with regulatory authority over the operations of the Debtor's business facilities and operations, including the Frewsburg Property where hazardous waste has been improperly disposed and released into the environment, and has migrated to adjacent areas (*See* Affidavit of DEC Engineering Geologist Maurice Moore, filed as Docket Document No. 1210-2, paragraphs 7 to 13, attached hereto as Exhibit A).  DEC is statutorily responsible for enforcing New York's environmental laws and regulations for the protection of human health and the environment. New York Environmental Conservation Law ("ECL") § 3-0301.

7.     The Debtor purchased the Frewsburg Property in 1987 and conducted environmental investigations in 1990 that disclosed the nature and extent of the hazardous waste contamination.  In 1991, the site was listed on the State Hazardous Waste Registry as a Class 2 site, meaning that it posed a significant threat to human health and the environment.  The primary contamination was hazardous waste that had been disposed and released to soils and groundwater.  The debtor entered into a series of Consent Orders with the DEC for Remedial Investigations, Feasibility Studies, and the implementation of Interim Remedial Measures and the final Remedy.  The Debtor conducted the Remedy at the Frewsburg Property under the 1996 Order and upon appointment, the Frewsburg Administrator continued the Remedy.  In April 2015, the Frewsburg Administrator submitted a Supplemental Investigation Work Plan, which was revised and resubmitted in July 2015.  DEC approved the Plan and the Frewsburg Administrator undertook the Supplemental Investigation at the Frewsburg Property.  That

3

Investigation revealed certain operational deficiencies in the Remedy. The Frewsburg Administrator then submitted to DEC a draft Remedial Design Work Plan on October 28, 2015 to address the deficiencies in the Remedy (Exhibit B). The remedial systems at the Frewsburg Property had deteriorated over time and required repair and maintenance. Additional steps were required to implement improvements in storm water management, infrastructure, and monitoring well placement to ensure that the original remedial systems remained effective in containing and treating the hazardous waste contamination. See Exhibit B

8. In the absence of the operation and maintenance of the Remedy, the Frewsburg Property is a significant threat to the groundwater, wetlands, and waterways of the State of New York, including the Conewango Creek, and the wells constituting the public water supply of the Town of Carroll, New York. (*See* Moore Affidavit at paragraphs 9 to 13). The Frewsburg Administrator, the Liquidating Trustee and the Debtor are obligated under the Plan to wind down and liquidate the assets in Debtor's estate, including the Frewsburg Property, and are obligated under the laws of the State of New York, the terms of the 1996 DEC Order, and 28 U.S.C. § 959(b), to continue the operation and maintenance of the environmental remediation systems at the Frewsburg Property. The 1996 DEC Order is attached hereto as Exhibit C

9. The Second Amended Plan provided for the liquidation of all assets of the estate, the creation of a Liquidating Trust, the appointment of a Liquidating Trustee and the Frewsburg Administrator. The Plan segregated a certain portion of the Debtor's liquidating estate, known as the "Frewsburg Assets," which remained with the Debtor and were managed by the Frewsburg Administrator. The Frewsburg Assets included the contaminated real property ("Frewsburg Property"). The Plan was primarily funded by

4

the Debtor's § 363 sale of the estate assets, but clearly anticipated further funding from the liquidation of the Frewsburg Assets. (*see* Plan, Art IV, §§4.4, 4.51) The Debtor and the Liquidating Trust financially benefited from the use and operation of the Frewsburg Property. Croniment's § 363 stalking horse bid was $12.5 million dollars, but did not require the use of the Frewsburg Property. KW Metals bid $15.8 million dollars, which was contingent on the Debtor's continued business operations at the Frewsburg site for a period of time under a Transition Services Agreement (TSA). The difference in the bids was $3.3 million dollars, exclusive of the funds generated by the Debtor's operation of the Frewsburg Property under the TSA.

10.     Under the Plan, the Frewsburg Administrator received a delegation of duties to manage, liquidate and wind down the Frewsburg Assets. The Plan and Disclosure Statement included in the term "wind down," which necessarily includes the operation of the Remedy, the removal of hazardous wastes and clean up costs. (Appendix B, Amended Disclosure Statement, Docket No. 758). These duties included the operation of the Remedy required under New York State law and the terms of a 1996 DEC Order. The Debtor through its Frewsburg Administrator operated the Remedy prior to and following Plan confirmation, and continued to do so as it operated the Debtor's business at the Frewsburg Property which was a condition of the § 363 sale. The Frewsburg Administrator allowed Frewsburg Assets to be sold or transferred, including certain equipment, stock, inventory and other assets as part of its liquidation of the debtor.[1] The Frewsburg Administrator transferred the value received for these assets to the Liquidating

---

[1] Certain machinery, equipment, rail cars, and other assets located at the Frewsburg property were sold pursuant to the § 363 order. Those Frewsburg assets were valued, as if liquidated, at $1.7 to $2.1 million (Docket No. 313, Asset Purchase Agreement Section 2.01(c) and Annex). Other valuable Frewsburg Assets located at the Frewsburg Property were not valued as a part of the sale, presumably were not sold, and remain at the Frewsburg Property.

5

Trust, without retaining funds sufficient to complete the wind down and liquidation of the Frewsburg Property.

11.     Upon information and belief, from 1996 through the date of the confirmation of its Plan, the Debtor maintained and operated the Remedy at the Frewsburg Property. Following Confirmation, the Debtor, through the Frewsburg Administrator, has been utilizing the services of environmental consultant Benchmark to maintain and operate the Remedy.

12.     The Frewsburg Administrator has represented that it no longer has sufficient funds to operate the Remedy . (See generally Frewsburg Motion to Abandon, Docket 1155, Stallkamp Affidavit, Docket 1155-1, Stallkamp Reply, Docket 1172). He further represented that he made a request to the Liquidating Trustee for additional moneys for these operations, but the Liquidating Trustee refused to provide such funds. (See Stallkamp Reply, Docket 1172 at paragraph 18)  The Liquidating Trustee thereby refused to allow the Frewsburg Administrator's and the Debtor's continued compliance with the wind down and liquidation provisions of the Plan and the 1996 DEC Order.

13.     After this Court denied the Frewsburg Administrator's motion to abandon the Frewsburg Property, the current Frewsburg Administrator advised DEC that he tendered his resignation effective December 31, 2015 (See Exhibit D). Upon information and belief, the Frewsburg Administrator, with funding from the Liquidating Trustee, has continued the services of its environmental contractor, Benchmark Environmental Engineering & Science PLLC (Benchmark), to operate the Remedy only until February 12, 2016.  On information and belief, the Debtor, the Frewsburg Administrator, and the Liquidating Trustee intend to cease operating the Remedy after that date.

14.     Prior to January 12, 2016, the DEC's role was as a regulatory agency and it has

not incurred any costs or expenses for the Frewsburg Assets which would constitute administrative claim in this proceeding.[2] DEC has no statutory role in undertaking the operation of the Remedy, and that responsibility rests solely with the Debtor.

15. Termination of the remediation will escalate the site to Class 2 (posing a significant threat to human health and the environment) due to the active and uncontrolled migration of contaminants in groundwater and soils that will occur if the Remedy is no longer operational, which will quickly affect the wells of the Town Public Water Supply and other areas. (*See* Moore Affidavit at paragraphs 8, 12 and 13 ) The cessation of the operation of the Remedy, including the groundwater remedial system, will be in violation of the Plan, the 1996 DEC Order, and New York law, including but not limited to ECL Articles 17 and 27 and the regulations promulgated thereunder, and may result in the imposition of fines and/or penalties against the Debtor and its successors and/or assigns.

16. The State has conducted an investigation of the costs that will necessarily be incurred by the Debtor and/or the Frewsburg Administrator to continue to comply with the terms of the 1996 DEC Order and the provisions of New York's environmental laws (See NY ECL Art 27, title 13; Art 17, title 8). The State seeks a determination of this Court that such expenses are allowed Administrative Expense Claims of this proceeding, and an Order directing payment of such costs from the Liquidating Trust Assets.

17. The Scope of Work and the Description of Necessary Services to allow the Debtor to comply with the 1996 DEC Order and New York law under 28 U.S.C. § 959 is

---

[2] During the bankruptcy case, DEC did file a proof of claim for costs associated with the Debtor's disposal of hazardous substances in separate property (a landfill). DEC's proof of claim was entirely unrelated to the compliance obligations associated with the Frewsburg Property under the 1996 DEC Order requiring operation of the remedial systems.

7

attached as Exhibit E. Debtor may elect to reduce or mitigate its expenses by engaging in a different type of environmental remediation, such as source removal, which involves the excavation and disposal of contaminated groundwater and soils, but only upon DEC approval.

18. Upon investigation, the DEC has calculated that the cost for the Remedy in 2016 is $192,935.87. Such costs will necessarily continue for an extended period of time. The Remedy must be continuously maintained and operated until such time that the data results demonstrate that the environmental concerns have been abated or remediated as required under State law.

19. For purposes of this Motion, and without waiving or modifying, in any way or aspect, DEC's rights to enforce its environmental laws in the future, the annual costs may continue for a period of thirty (30) years, for a total estimated cost of the Remedy of $5,788,076.01, exclusive of increases due to inflation or additional capital costs for the replacement of well pumps, heating systems and the like. The Liquidating Trustee is required to reserve this amount for purposes of compliance with the Plan, the 1996 DEC Order and 28 U.S.C. § 959(b).

### ARGUMENT

**THE COSTS ASSOCIATED WITH THE REMEDY ARE APPROPRIATE FOR ALLOWANCE AS AN ADMINISTRATIVE CLAIM BECAUSE THEY ARE NECESSARY TO COMPLY WITH THE 1996 DEC ORDER, NEW YORK LAW, AND THE PLAN**

20. The Debtor, the Frewsburg Administrator and the Liquidating Trustee are required to comply with the 1996 DEC Order and with New York's hazardous waste laws

by continuing to operate and maintain the Remedy at the Frewsburg Property. 28 U.S.C § 959(b). Nothing in the Code or the confirmed Plan relieves them from this compliance obligation. Indeed, both the Code and the Plan require compliance. The costs associated with post-petition and post-confirmation environmental compliance are administrative because the risk of environmental damage and the Debtor's and the Liquidating Trust's liability for non-compliance is eliminated. *Pennsylvania v. Conroy*, 24 F.3d 568, 570 (3d Cir. 1994); *In re Wall Tube & Metal Products, Co.,* 831 F.2d 118, 123-24 (6th Cir. 1987) *In re Hemingway Transport, Inc.,* 993 F.2d 915, 926-27 (1st Cir. 1993); *In re Chateaugay Corp.,* 944 F.2d 997, 1009-10 (2d Cir. 1991).

## THE ADMINISTRATIVE COSTS ARE PROPERLY PAID FROM LIQUIDATING TRUST ASSETS

**A.     Proper Wind Down Cost**

21.     The Plan's terms require the wind down of the Debtor and the liquidation of the Frewsburg property. In this proceeding, wind down is a defined term which includes hazardous materials removal and clean-up costs. (Amended Disclosure Statement, Appendix B, Docket 758). The Plan is binding on the Debtor, its successors and assigns including, without limitation, the Liquidating Trustee and the Frewsburg Administrator, (Plan 10.5) and compliance with non-bankruptcy law is required. 28 U.S.C. § 959(b). Courts have required receivers to comply with state law regardless of whether the receiver is liquidating an estate or actively managing it. *See In re Wall Tube & Metal Prods. Co.,* 831 F.2d 118,122 (6th Cir. 1987).

22.     The Plan provides that the Liquidating Trustee in cooperation with the Frewsburg Administrator shall cooperate to "take all necessary steps to effect the orderly wind down and dissolution of the Debtor." (Article IV, 4.2) Wind down includes hazardous waste

removal and clean-up costs.  (Amended Disclosure Statement, Appendix B, Docket 758).

**B.     Administrative Claim created by Liquidating Trustee**

23.     The Frewsburg Administrator's failure to retain, and/or the Liquidating Trustee's refusal to allow the Frewsburg Administrator to retain the proceeds from the sale of Frewsburg Assets will cause a violation of the 1996 DEC Order.  The Liquidating Trustee's refusal to apportion a sufficient amount of capital from the § 363 sale of the Debtor's assets to allow the Debtor, by its Frewsburg Administrator, to continue to comply with the 1996 DEC Order and state environmental laws has directly caused the Frewsburg Administrator to "run out" of funds prior to the liquidation and wind down of the Frewsburg Property.

24.     The Liquidating Trustee's exercise of discretion in refusing the Frewsburg Administrator's request for Trust Funds to pay for the Remedy has created an administrative claim against the Debtor.[3] Alternatively, the Frewsburg Administrator's decision to convey to the Liquidating Trust, rather than retain funds sufficient to meet its Plan and State law obligations, has created an administrative claim against the Debtor.

25.     Additionally, upon information and belief, the termination of the Remedy, triggers the Liquidating Trustee's indemnification obligations to the Frewsburg Administrator and to the Debtor's former management for their liability as parties responsible for compliance with the 1996 DEC Order.  The Liquidating Trustee could avoid such indemnification liability by directly funding the Remedy.

**C.     The Liquidating Trust Must Accept Both the Benefits and the Burdens  Associated**

---

[3] The environmental decisions to continue but then cease operation of the Remedy that were made by the Liquidating Trustee and the Frewsburg Administrator can reasonably be viewed as establishing operator liability under CERCLA. (*United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998))  Nevertheless, the Liquidating Trustee and the Frewsburg Administrator have an affirmative obligation to implement properly wind down the Frewsburg Property under the Plan and comply with non-bankruptcy laws.

**With the Frewsburg Assets**

26. The Liquidating Trust has benefited from the transfers of proceeds from the Frewsburg Assets to the Liquidating Trust, without shouldering the concurrent responsibility of compliance with the Plan and with the 1996 DEC Order.

27. The Liquidating Trust significantly benefited from additional sale proceeds generated by the sale of estate assets to a higher bidder, which was contingent on the on-going operations of the Frewsburg Property and the Remedy. The Liquidating Trust retained this $3.3 million dollar premium in the § 363 sale of the Debtor's property, without apportioning it in a way to fund a known environmental compliance obligations of the Debtor under both the Plan and State Law.

28. The Liquidating Trust has retained all of the benefits of the Debtor's property sold under § 363, <u>and</u> the Frewsburg Property operating proceeds under the TSA, while failing to meet the Debtor's obligations under the Plan, 28 U.S.C. § 959(b), the 1996 DEC Order, and State environmental law.

29. The State hereby requests that the Court allow an administrative expense claim in the amount of $5,788,076.01, and further requests that the Liquidating Trustee be directed to pay said claim from the Liquidating Trust to the Frewsburg Administrator when incurred in order to allow the Debtor to comply with its the Plan, 28 U.S.C. § 959(b), the 1996 DEC Order, and state environmental law obligations.

**WHEREFORE,** the State respectfully requests an order (1) allowing an administrative expense claim in the amount of $5,788,076.01 to assure the Frewsburg Administrator's continued operation and maintenance of the Remedy; (2) directing the Liquidating Trustee to reserve such amount and to pay said claim to the Frewsburg Administrator when incurred, to allow the Debtor to meet its legal obligations; and (3)

granting such other and further relief as may be appropriate.

Dated: January 4, 2016
Albany, New York

          Respectfully submitted,
          ERIC T. SCHNEIDERMAN
          Attorney General of the State of New York

BY: s/Stephen M. Nagle
    STEPHEN M. NAGLE
    Assistant Attorney General
    (Admitted *pro hac vice*)
    New York State Department of Law
    Environmental Protection Bureau
    The Capitol
    Albany, New York 12224
    (518) 776-2405
    Stephen.Nagle@ag.ny.gov